1  BEN H. LOGAN (S.B. #71711)
   blogan@omm.com
2  STEPHEN H. WARREN (S.B. #136895)
   swarren@omm.com
3  JUSTINE M. DANIELS (S.B. #241180)
   jdaniels@omm.com
4  O'MELVENY & MYERS LLP
   400 South Hope Street
5  Los Angeles, California 90071
   Telephone:  (213) 430-6000
6  Facsimile:   (213) 430-6407

7  Attorneys for Defendants
   Those Certain Underwriters At Lloyd's, London and
8  Catlin Insurance Company (UK) Ltd., Twin City Fire
   Insurance Company, and Continental Casualty Company
9
   (Additional counsel listed on next page)
10
11          **UNITED STATES DISTRICT COURT**

12          **CENTRAL DISTRICT OF CALIFORNIA**

13  In re                                    | Case No.
    INDYMAC BANCORP, INC., a                 | **CV11-02600 RGK**
14  Delaware corporation,
15                          Debtor.          | Bankr. Case No. 2:08-bk-21752-BB
16  ALFRED H. SIEGEL, solely as Chapter 7    | Adv. Pro. No.: 2:11-ap-01443-BB
    Trustee for Debtor INDYMAC
17  BANCORP, INC.,
18                          Plaintiff,       | **(1) NOTICE OF MOTION AND
                                             |    MOTION OF ABC CARRIERS
19  v.                                       |    TO WITHDRAW THE
                                             |    REFERENCE TO THE
20  CERTAIN UNDERWRITERS AT                  |    BANKRUPTCY COURT**
    LLOYDS OF LONDON, an
21  unincorporated association; ZURICH       | **(2) MEMORANDUM OF POINTS
    AMERICAN INSURANCE CO., a                |    AND AUTHORITIES**
22  corporation; TWIN CITY FIRE
    INSURANCE COMPANY, a
23  corporation; CONTINENTAL                 | Date:        May 9, 2011
    CASUALTY COMPANY, a corporation;         | Time:        10:00 a.m.
24  XL SPECIALTY INSURANCE                   | Courtroom:   850
    COMPANY, a corporation; ARCH
25  INSURANCE COMPANY, a
    corporation; ACE AMERICAN
26  INSURANCE COMPANY, a
    corporation; AXIS REINSURANCE
27  COMPANY, a corporation,
28                          Defendants.

1   THEODORE A. BOUNDAS (*admission pending*)
    tboundas@bswb.com
2   JEFFREY T. SHAW (*admission pending*)
    jshaw@bswb.com
3   W. JOEL VANDER VLIET (*admission pending*)
    wvandervliet@bswb.com
4   BOUNDAS, SKARZYNSKI, WALSH & BLACK, LLC
    200 East Randolph Drive, Suite 7200
5   Chicago, Illinois 60601
    Telephone:  (312) 946-4200
6   Facsimile:  (312) 946-4272

7   Attorneys for Those Certain Underwriters At
    Lloyd's, London and Catlin Insurance Company
8   (UK) Ltd., Subscribing to Policy No. QA011608

9   MICHAEL R. DELHAGEN (*admission pending*)
    mdelhagen@tresslerllp.com
10  TRESSLER LLP
    One Penn Plaza
11  Suite 4701
    New York, New York 10119
12  Telephone:  (646) 833-0900
    Facsimile:  (646) 833-0877
13
    Attorneys for Twin City Fire Insurance Company
14
15  WILLIAM E. SMITH (*admission pending*)
    wsmith@wileyrein.com
16  JOHN HOWELL (*admission pending*)
    jhowell@wileyrein.com
17  WILEY REIN LLP
    1776 K Street NW
18  Washington, D.C. 20006
    Telephone:  (202) 719-7000
19  Facsimile:  (202) 719-7049

20  Attorneys for Continental Casualty Company

21  BRIAN HARRISON (S.B. #157123)
    brian.harrison@sdma.com
22  ROBERT S. GEBHARD (S.B. #158125)
    robert.gebhard@sdma.com
23  VEENA A. MITCHELL (S.B. #161153
    veena.mitchell@sdma.com
24  SEDGWICK LLP
    One Market Plaza
25  Steuart Tower, 8th Floor
    San Francisco, California 94105
26  Telephone:  (415) 781-7900
    Facsimile:  (415) 781-2635

27  Attorneys for Zurich American Insurance Co.

28

ABC CARRIERS' MOT. TO
WITHDRAW REFERENCE

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendants Those Certain Underwriters At Lloyd's, London and Catlin Insurance Company (UK) Ltd., Subscribing to Policy No. QA011608 ("Underwriters") (erroneously sued as "Certain Underwriters at Lloyds of London, an unincorporated association"); Twin City Fire Insurance Company; Continental Casualty Company; and Zurich American Insurance Company (collectively, the "ABC Carriers") will and do hereby move this Court to withdraw the reference with respect to the above-captioned adversary proceeding Case No. 2:11-ap-01443-BB (the "Trustee's Coverage Action") pursuant to 28 U.S.C. § 157 (d), Federal Rule of Bankruptcy Procedure 5011, and Rule 6.1 of Chapter IV, Local Rules Governing Bankruptcy Appeals, Cases and Proceedings of the District Court for the Central District of California.

The Trustee's Coverage Action is a declaratory judgment suit filed by Alfred H. Siegel, as Chapter 7 Trustee (the "Trustee" or "Plaintiff") for IndyMac Bancorp, Inc. (the "Debtor" or the "Company") in which the Trustee seeks to determine whether certain directors and officers insurance policies issued by the ABC Carriers for policy year March 1, 2008 – April 1, 2009 (the "08-09 D&O Policies") provide coverage for claims that the Trustee himself asserted in an earlier action against certain of the Debtor's former directors (the "Directors"). The issues regarding coverage under the 08-09 D&O Policies are garden-variety state law insurance coverage contract disputes involving no issues of bankruptcy law. The Trustee's Coverage Action is not a core proceeding and should not be heard in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). Moreover, withdrawal of the reference will allow for the coordinated adjudication of several interrelated coverage disputes, thereby serving the interest of judicial efficiency and avoiding the risk of inconsistent rulings.

This motion is made following a series of discussions between counsel for the ABC Carriers and counsel for the Trustee that took place between March

ABC CARRIERS' MOT. TO
WITHDRAW REFERENCE

1  11, 2011 and March 16, 2011 pursuant to Local Rule 7-3. The parties were unable

2  to reach a resolution, necessitating the instant motion. The motion is based upon

3  this Notice of Motion and Motion; the accompanying Memorandum of Points and

4  Authorities; the accompanying Declaration of Justine M. Daniels (the "Daniels

5  Declaration") and exhibits attached thereto; the complete files and records in the

6  Trustee's Coverage Action; oral argument of counsel; and such other and further

7  matters as this Court may consider.

8         PLEASE TAKE FURTHER NOTICE that pursuant to Local Rule 7-9,

9  any written response to this motion must be filed and served no later than twenty-

10  one (21) days before the hearing date.

11

12  Dated:  March 28, 2011

13                             BEN H. LOGAN
                           STEPHEN H. WARREN

14                             JUSTINE DANIELS
                           O'MELVENY & MYERS LLP

15

16                          By: _B Logan / 90_____

17                             Ben H. Logan
                           Attorneys for Those Certain

18                             Underwriters At Lloyd's, London
                           and Catlin Insurance Company

19                             (UK) Ltd., Twin City Fire
                           Insurance Company, and

20                             Continental Casualty Company

21  Dated:  March 28, 2011               BRIAN D. HARRISON
                           ROBERT S. GEBHARD

22                             VEENA A. MITCHELL
                           SEDGWICK LLP

23

24

25                          By: _R Gebhard / 90_____

26                             Robert S. Gebhard
                           Attorneys for Zurich American
                           Insurance Co.

27

28

ABC Carriers' Mot. to
Withdraw Reference

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ......................................................................................... 1

II.  STATEMENT OF FACTS .......................................................................... 4

    A.   The Chapter 7 Bankruptcy Case. ..................................................... 4

    B.   The Trustee's Underlying Action Against the Directors. ................. 6

    C.   The Trustee's Coverage Action. ...................................................... 7

    D.   The Competing Coverage Actions Regarding the Insurance
        Proceeds. ........................................................................................... 9

    E.   The 08-09 D&O Policies................................................................. 10

III. ARGUMENT............................................................................................. 13

    A.   This Is a State Law Contract Dispute, Not a Core Proceeding........... 13

    B.   Whether the Proceeds of the 08-09 D&O Policies Might Be
        Property of the Bankruptcy Estate Is a Red Herring.  But, in Any
        Event, the Estate Has No True Interest in the Proceeds of the
        Policies. ........................................................................................... 15

        1.   Whether the Proceeds of These Policies Would Be
            Property of the Estate Is Irrelevant. .......................................... 15

        2.   If It Were Relevant, It Is Clear that the Estate Has No
            Interest in the Proceeds of the Side B Coverage. ..................... 16

        3.   The Proceeds of the Side A Coverage Are Unquestionably
            Not Property of the Estate........................................................... 19

    C.   Judicial Efficiency Supports Withdrawing the Reference.................. 22

    D.   None of the Other Relevant Factors Weighs Against
        Withdrawing the Reference................................................................ 23

        1.   Withdrawal Will Not Encourage Forum Shopping. ................. 23

        2.   Withdrawal Will Not Disrupt the Uniformity of
            Bankruptcy Administration......................................................... 24

        3.   Withdrawal Will Conserve Court and Party Resources. .......... 24

IV.  CONCLUSION .......................................................................................... 25

1

## TABLE OF AUTHORITIES

2

3                                                                    **Page**

## CASES

4  *Equipoint Fin. Network, Inc. v. Network Appraisal Servs., Inc.,*
5     2009 WL 2135873 (S.D. Cal. July 15, 2009)..................................25

*Fireman's Fund Ins. Co. v. City of Lodi,*
6     302 F.3d 928 (9th Cir. 2002) ................................................21

7  *GDF Int'l, S.A. v. Associated Elec. & Gas Ins. Servs. Ltd.,*
      2003 WL 926790 (N.D. Cal. March 4, 2003) ........................21
8
*Gumport v. Growth Fin. Corp. (In re Transcon Lines),*
9     121 B.R. 837 (C.D. Cal. 1990) ..........................................23

10 *Harleysville Mut. Ins. Co. v. Hill,*
      2010 WL 3783952 (W.D.N.C. Sept. 28, 2010) ...................15
11
*In re Addison,*
12    240 B.R. 47 (Bankr. C.D. Cal. 1999) ...............................13

13 *In re Allied Digital Tech. Corp.,*
      306 B.R. 505 (Bankr. D. Del. 2004)...............................17, 20
14
*In re ATG Catalytics,*
15    2004 WL 2609230 (N.D. Cal. July 19, 2004) ....................23

16 *In re Britt,*
      2007 WL 4867921 (9th Cir. B.A.P. Nov. 8, 2007) ............14
17
*In re Castlerock Properties,*
18    781 F.2d 159 (9th Cir. 1986) ................................14, 15, 23

19 *In re Cinematronics, Inc.,*
      916 F.2d 1444 (9th Cir. 1990) ..........................................14
20
*In re Com 21,*
21    2005 WL 1606357 (N.D. Cal. July 6, 2005) .....................13

22 *In re Downey Fin. Corp.,*
      428 B.R. 595 (Bankr. D. Del. 2010)..................................20
23
*In re Eastport Assocs.,*
24    935 F.2d 1071 (9th Cir. 1991) ..........................................14

25 *In re Ebaseone Corp.,*
      2006 WL 2405732 (Bankr. S.D. Tex. June 14, 2006)........15
26
*In re Fietz,*
27    852 F.2d 455 (9th Cir. 1988) ............................................21

*In re First Cent. Fin. Corp.,*
      238 B.R. 9 (Bankr. E.D.N.Y. 1999) ..............................11, 18

*In re Gruntz,*
      202 F.3d 1074 (9th Cir. 2000) ......................................13, 14

*In re HA 2003, Inc.,*
      2004 WL 609799 (N.D. Ill. March 24, 2004) ...................15

28

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Lawrence Group, Inc.,*
    285 B.R. 784 (N.D.N.Y. 2002)..................................................................16

*In re Medex Regional Laboratories, LLC,*
    314 B.R. 716 (Bankr. E.D. Tenn. 2004)....................................................18

*In re Mila, Inc.,*
    423 B.R. 537 (9th Cir. BAP 2010) ..............................................16, 18, 20

*In re Minoco Group of Companies, Ltd.,*
    799 F.2d 517 (9th Cir. 1986) ....................................................................18

*In re Mitchell,*
    206 B.R. 204 (Bankr. C.D. Cal. 1997) .....................................................22

*In re Nat'l Consumer Mortgage, LLC, Etc.,*
    2009 WL 2985243 (C.D. Cal. Sept. 14, 2009) .........................................13

*In re TIG Ins. Co.,*
    264 B.R. 661 (Bankr. C.D. Cal. 2001) .............................................15, 17

*In re Transcon Lines,*
    121 B.R. 837 (C.D. Cal. 1990) .................................................................23

*In re U.S. Brass Corp.,*
    110 F.3d 1261 (7th Cir. 1997) ..........................................................14, 15

*In re World Health Alternatives, Inc.,*
    369 B.R. 805 (Bankr. D. Del. 2007)...............................................17, 18, 20

*In re Zante, Inc.,*
    2010 WL 5477768 (D. Nev. Dec. 29, 2010) .............................................24

*Laguana Publishing Co. v. Employers Reinsurance Corp.,*
    617 F. Supp. 271 (C.D. Cal. 1985) ...........................................................21

*Mass Mutual Life Ins. v. Marinari,*
    2008 WL 1995126 (D.N.J. May 6, 2008)..................................................22

*Moiser v. Calister, Nebeker, & McCullough,*
    2007 WL 951549 (D. Utah Mar. 26, 2007)...............................................22

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,*
    458 U.S. 50 (1982) ....................................................................................16

*Pacor v. Higgins,*
    743 F.2d 984 (3d Cir. 1984) ...........................................................17, 18, 21

*Petition of McMahon,*
    222 B.R. 205 (S.D.N.Y. 1998) ..................................................................24

*Royal Indemnity Co. v. United Enterprises, Inc.,*
    162 Cal. App. 4th 194 (2008) ...................................................................21

*Security Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen
    & Helpers,*
    124 F.3d 999 (9th Cir. 1997) ...........................................................13, 23

*Solutia Inc. v. FMC Corp.,*
    2004 WL 1661115 (S.D.N.Y. July 27, 2004).............................................24

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Stone v. Ritter,*
        911 A.2d 362 (Del. 2006) ...................................................................9

*Veys v. Riske,*
        No. 2007 WL 4246172 (W.D. Wash. Nov. 28, 2007) ......................24

**STATUTES**

11 U.S.C. § 502 .............................................................................8, 19
11 U.S.C. § 541 ...................................................................................18
11 U.S.C. § 701 .....................................................................................4
11 U.S.C. § 702 .....................................................................................5
11 U.S.C. § 726 .............................................................................8, 19
28 U.S.C. § 1334 .................................................................................22
28 U.S.C. § 157 ..................................................................13, 14, 15
8 Del. C. § 145 ............................................................................9, 19
Cal. Ins. Code § 11580 .....................................................................21

**RULES**

Fed. R. Bankr. P. 5011 .......................................................................13
Fed. R. Civ. P. 42 ..............................................................................22

ABC CARRIERS' MOT. TO
WITHDRAW REFERENCE

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION[1]

The Trustee's Coverage Action seeks a declaration that the 08-09 D&O Policies provide coverage for the action styled *Siegel v. Caldera, et al.*, 2:09-ap-02645-BB (the "Trustee's Underlying Action"), an adversary proceeding that the Trustee himself brought in the Bankruptcy Court against the Directors. The Trustee's Coverage Action also seeks the same determination with regard to Side A policies issued for the policy period of March 1, 2008 to April 1, 2009 (the "08-09 Side A Only Policies").[2] Withdrawal of the reference for this case is appropriate for a number of reasons.

To begin with, the Trustee's Coverage Action is a textbook example of a non-core proceeding. The Trustee's Coverage Action seeks no substantive relief under any provision of Title 11 of the United States Code (the "Bankruptcy Code") and the sole claim for relief is grounded entirely upon state law, namely the interpretation of the insurance policies at issue, which are governed by California law. Under controlling Ninth Circuit law, the Trustee's Coverage Action is a non-core proceeding, which would be subject to *de novo* review by this Court were it to remain in the Bankruptcy Court.

The Trustee's purpose in filing his Coverage Action is obvious. He wants to enhance the prospects that he will have a source of payment, beyond the personal assets of the Directors, if he prevails in his Underlying Action. However, the law is clear that a plaintiff in an underlying action, such as the Trustee here,

---

[1] All capitalized terms not defined herein shall have the same meaning ascribed to them in the Notice of Motion and Motion of the ABC Carriers to Withdraw the Reference to the Bankruptcy Court. All exhibits cited herein are attached to the accompanying Daniels Declaration.

[2] The 08-09 Side A Only Policies were issued by XL Specialty Insurance Company, Arch Insurance Company, Ace American Insurance Company, and Axis Reinsurance Company (the "Side A Carriers," together with the ABC Carriers, the "Defendants"), also named defendants in the Trustee's Coverage Action. The Side A Carriers provided only excess Side A coverage (described below) for the 2008-2009 policy period.

1  cannot sue to establish coverage under a directors and officers policy.  As a result,

2  the Trustee attempts to create a nexus to the bankruptcy case by asserting that (i)

3  providing coverage to the Directors will avoid the bankruptcy estate (the "Estate")

4  having, in theory, to indemnify them, and (ii) *if* the Estate were ever to indemnify

5  the Directors, it could assert claims under Side B of the policies.  As a result, he

6  argues that this dispute involves property of the Estate.

7  　　　　Even if, *arguendo*, the proceeds of these policies were property of the

8  Estate, that would not make the Trustee's Coverage Action core or the Bankruptcy

9  Court the proper forum for that action.  The reference should be withdrawn so that

10 this non-core state law contract dispute may be determined by the District Court.

11 Moreover, although this Court does not need to reach this issue, the Trustee's

12 contention that the proceeds of the policies are property of the Estate is based on a

13 transparent fiction that the Estate may someday indemnify the Directors.  That

14 theory is belied by the facts that (i) the Estate has not indemnified the Directors for

15 their costs of defense (rather, insurance carriers have); (ii) while the Trustee's

16 Underlying Action is pending, the Estate is prevented from paying costs of defense;

17 (iii) if the Trustee prevails in his underlying action and establishes that the Directors

18 violated their duty of loyalty or failed to act in good, the Estate will not be able to

19 indemnify the Directors for any damages he establishes against them; and (iv) the

20 policies provide that their proceeds (whether under Side A or Side B) are for the

21 benefit of the Directors, not the Estate.

22 　　　　Moreover, withdrawal of the reference will allow for a coordinated

23 adjudication of interrelated coverage disputes.  The Trustee's Underlying Action is

24 but one of nearly a dozen underlying cases (the "Other Underlying Litigations")[3]

25 that are the subject of three overlapping lawsuits seeking declarations of coverage

26 _____

27 [3] The Other Underlying Litigations are described in the complaint for the FDIC
Coverage Action (defined *infra*).  *See* Ex. 7 FDIC Complaint ¶¶ 52-79.  Five of

28 these cases are currently pending in the District Court for the Central District of
California.  *Id.*

ABC Carriers' Mot. to
Withdraw Reference

1   for those cases under the 08-09 D&O Policies, the 08-09 Side A Only Policies, and

2   other directors and officers policies for the period of March 1, 2007 to March 1,

3   2008 (the "07-08 Policies").[4]   In addition to the Trustee's Coverage Action, the

4   Side A Carriers have brought a coverage action (the "Side A Coverage Action"),

5   currently pending before this Court; and the Federal Deposit Insurance

6   Corporation—in its capacity as the receiver for the parent of IndyMac MBS, Inc.—

7   has brought a coverage action (the "FDIC Coverage Action") that was recently

8   removed to the Bankruptcy Court.  All three coverage disputes involve overlapping

9   parties, insurance policies, questions of law and fact, and requests for

10  determinations of coverage.  Indeed, a central issue in the Trustee's, FDIC, and

11  Side A Coverage Actions is the application of an exclusion (the "*Tripp* Exclusion")

12  contained in the 08-09 D&O Policies for claims "based upon, arising out of,

13  directly or indirectly resulting from or in consequence of, or in any way involving

14  . . . any fact, circumstance, situation, event, transaction, or series of facts,

15  circumstances situations, events or transactions underlying or alleged in" *Wayman*

16  *Tripp and Sven Mossberg v. IndyMac Bancorp, Inc., Michael W. Perry and Scott*

17  *Keys*, case no. 2:07-cv-1635 filed in 2007 (the "*Tripp* Litigation").

18          But unlike the FDIC and Side A Coverage Actions, the Trustee's

19  Coverage Action is limited in scope and ignores the broader context that is

20  implicated in the other two cases.  The Trustee alleges a single count against the

21  ABC Carriers and Side A Carriers seeking to determine coverage under those

22  policies solely with respect to his Underlying Action.  On the other hand, the FDIC

23  and Side A Coverage Actions seek to determine coverage for Trustee's Underlying

24  Action and all the Other Underlying Litigations.  Additionally, the parties to the

25  Trustee's Coverage Action are only the Trustee and <u>some</u> of the relevant insurance

26  _____

27  [4] In the Trustee's, FDIC, and Side A Coverage Actions, the directors and officers
    policies issued for the March 1, 2007 to March 1, 2008 policy period are referred to
28  as the "First Tower."  The directors and officers policies for the March 1, 2008 to
    April 1, 2009 policy period are referred to as the "Second Tower."

ABC CARRIERS' MOT. TO
WITHDRAW REFERENCE

companies.[5]  In contrast, the parties to the FDIC and Side A Coverage Actions include the directors and officers who are the true parties in interest under the policies, as well as the Defendants in the Trustee's Coverage Action.  The Trustee is not a party to the other two coverage actions, and it would stretch bankruptcy jurisdiction beyond the breaking point for the Bankruptcy Court to try to adjudicate those cases.[6]

Leaving the Trustee's Coverage Action before the Bankruptcy Court would entail piecemeal litigation before several courts with the attendant risk of inconsistent results and waste of resources of the parties and the judiciary.  The Side A Coverage Action is already pending in this Court.  The ABC Carriers intend to bring a motion to withdraw the reference with respect to the FDIC Coverage Action—which is also a non-core state law contract dispute—so that it also will be before this Court.  The ABC Carriers then intend to file a motion to consolidate the three coverage disputes to provide for a sensible and coordinated adjudication of the relevant issues.

## II.   STATEMENT OF FACTS

### A.   The Chapter 7 Bankruptcy Case.

On July 11, 2008, the Office of Thrift Supervision seized IndyMac Bank, F.S.B. (the "Bank") and named the FDIC as conservator.  The Bank was a subsidiary of the Company.  On July 31, 2008, the Company filed a voluntary petition under Chapter 7 of the Bankruptcy Code (the "Bankruptcy Case") in the Bankruptcy Court.  Shortly thereafter, the Trustee was appointed as interim trustee in accordance with Bankruptcy Code § 701.  Subsequently, he was appointed the

---

[5] In addition to the Defendants, the Company obtained director and officer insurance policies for the 2007-2008 period from Federal Insurance Company, National Union Fire Insurance Company of Pittsburgh Pennsylvania, and Lexington Insurance Company (the "Other Insurers").  *See* Ex. 7 FDIC Complaint ¶¶ 18-22. The FDIC Action includes these parties as defendants.

[6] *See, e.g., In re TIG Ins. Co.*, 264 B.R. 661, 666-67 (Bankr. C.D. Cal. 2001) (discussed *infra* at 17.)

ABC CARRIERS' MOT. TO
WITHDRAW REFERENCE

permanent trustee pursuant to Bankruptcy Code § 702 and continues to serve in that capacity. Ex. 1, Complaint ¶¶ 4, 19-21.

In September and November 2008, several directors and officers of the Company filed motions with the Bankruptcy Court seeking access to the proceeds from certain insurance policies—including the 07-08 Policies, 08-09 D&O Policies, and the 08-09 Side A Only Policies—to pay for their costs of defense incurred in the Other Underlying Litigations and a number of government investigations. Ex. 4, Stipulation ¶¶ B, E. The Bankruptcy Court—apparently concerned that the Debtor's former directors and officers would not be afforded reasonable access to the insurance funds—ordered that they be able to access, in the short term, $1.5 million from the policies to cover their attorneys' fees. *Id.* ¶ D. The Bankruptcy Court further ordered the Trustee and the directors and officers to mediation in an effort to achieve a longer-term resolution. *Id.* Ultimately, the matter was resolved by a stipulation approved by the Bankruptcy Court on December 15, 2008 (the "Stipulation").

The Stipulation allowed the directors and officers to access the proceeds of the policies to cover their costs of defense.[7] *See* Ex. 4, Stipulation ¶ 1. It did not authorize the Estate to pay any costs of defense and allowed the directors and officers to access the policies without payment of a retention that would otherwise be required by the policies if the Estate was to indemnify them. Further, the Stipulation expressly reserved "all other rights, including but not limited to asserting that the <u>proceeds</u> of the Insurance Policies are, or <u>are not, property of the Debtor's estate</u> . . ." Ex. 4, Stipulation ¶ 17 (emphasis added).

---

[7] The Stipulation permitted the Debtor's former directors and officers to access up to $10 million in insurance proceeds from the carriers under the supervision of the mediator Judge Dickran Tevrizian (Ret.). *See* Ex. 4, Stipulation ¶¶ 1, 3. As this initial fund was depleted by carrier payments of defense expenses, the fund amount of insurance proceeds was increased in subsequent Bankruptcy Court-approved stipulations—first to $20 million on August 11, 2009 (Ex. 5, August '09 Order), and then to $30 million on June 2, 2010 (Ex. 6, June '10 Order).

In the over two years since the Bankruptcy Court entered the Stipulation, the insurers—who were not parties to and did not participate in the motion or the Stipulation—have advanced tens of millions of dollars under the 07-08 Policies for the directors' and officers' costs of defense. The Bankruptcy Court itself has not made any further decisions involving the issues at hand, other than to bring some other policies and underlying matters (not at issue here) within the scope of the Stipulation and to increase the amount of the policy proceeds that the Directors can access. *See, e.g.,* Ex. 5, August '09 Order and Ex. 6, June '10 Order. And its principal activity in 2008 was to encourage mediation to allow the directors and officers to access the proceeds of the policies.

Moreover, the Bankruptcy Court has not determined that the <u>proceeds</u> of the policies (as opposed to the policies themselves) are property of the Estate. *See* Ex. 4, Stipulation ¶ 17. Indeed, the entire premise behind the existing orders appears to be that the directors and officers will be advanced their costs of defense under the Side A coverage, in which the Estate has no interest, and that the directors and officers need not satisfy the retention out of their own pockets, which would be required if there were any real prospect of the Estate providing indemnification.

**B.      The Trustee's Underlying Action Against the Directors.**

On November 13, 2009—almost one year after the Stipulation was negotiated—the Trustee filed his Underlying Action against the Directors. *See* Ex. 1, Complaint, (Ex. J Trustee's Underlying Complaint). The complaint in the Trustee's Underlying Action details a set of factual allegations against the Directors, including assertions that they missed the "red flags" alleged in the *Tripp* Litigation.

The Trustee's first cause of action seeks to disallow these claims for indemnification on the grounds that (i) the claims for indemnification are "contingent or unmatured [*id.* (Ex. J Trustee's Underlying Complaint ¶ 245)]," (ii) the claims for indemnification "fail . . . to state 'a valid basis in law for a claim

ABC CARRIERS' MOT. TO
WITHDRAW REFERENCE

against the Estate [*id.* ¶ 247],'" and (iii) "to the extent any of the [Directors'] Proofs of Claim seek indemnification under the Company's articles of incorporation or by-laws, or under any agreements or governing laws, the indemnification does not extend [to] any of the [Directors] herein due to each of the [Directors'] lack of good faith and many breaches of their duties of loyalty [*id.* ¶ 249]."[8]  In the second and third causes of action, the Trustee seeks to subordinate any indemnification claims by the Directors that might survive to all other claims asserted in the Bankruptcy Case.  As a result, even if the indemnification claims were valid, it is essentially certain that the Directors will not be indemnified by the Estate for the claims asserted in the Trustee's Underlying Action.  The Trustee's other claims seek money damages for alleged breaches of duties owed by the Directors.

### C. The Trustee's Coverage Action.

On February 2, 2011, the Trustee filed his Coverage Action.  This action is centered on the Trustee's theory that the Estate may be called upon to indemnify the Directors (and therefore have an interest in either making sure that the carriers indemnify the Directors under Side A coverage or that the Estate has an interest in the proceeds of Side B coverage).  *See, e.g.*, Ex. 1, Trustee's Complaint ¶ 26.  This theory is inconsistent with reality.  It is also inconsistent with the law and the Stipulation, which does not authorize payments by the Estate.  *See* Ex. 4, Stipulation.

The Trustee's complaint contains partial quotations from the proofs of claim filed by the Directors in an apparent effort to create the impression that the prospect of their indemnification by the Estate is likely.[9]  *See* Ex. 1, Complaint ¶¶ 31-36.  But the parts the Trustee chose not to quote underscore that it is extremely unlikely that the Estate will ever be required to indemnify the Directors.  Each of

---

[8] As explained in note 11, *infra,* if the Trustee prevails in his Underlying Action, Delaware law likely will prohibit the Estate from indemnifying the Directors.

[9] These are the very proofs of the claim the Trustee seeks to disallow in his Underlying Action.

ABC CARRIERS' MOT. TO
WITHDRAW REFERENCE

the Directors' proofs of claim seeking indemnification from the Estate, other than the proof of claim filed by Michael W. Perry (the former Chairman of the Board and Chief Executive Officer), contains identical language that states:

> Although such amounts may be fully covered under existing insurance policies, Claimant submits this proof of claim <u>out of an abundance of caution</u> to ensure that any additional indemnification or reimbursement rights under applicable agreements or governing law are preserved <u>in the event there is a shortfall in such insurance coverage</u>.

Ex. 3, at 3, 9, 12, and 15 (emphasis added).  The proof of claim filed by Mr. Perry makes the same point phrased differently.  Mr. Perry's proof of claim provides that he:

> intends to waive all claims asserted herein if and when Debtor waives all claims, if any, it may have against Claimant, and <u>ceases all efforts to frustrate the rights of Claimant to the proceeds of certain liability insurance Policies maintained by Debtor for the benefit of Claimant</u> pursuant to [Perry's employment agreement].

Ex. 2, at 5, ¶ 4 (emphasis added).

Significantly, the Trustee does not allege that he or the Estate has made payments towards the Director's indemnification.  Nor can any such payments be made because the Trustee disputes the prepetition claims of the Directors for indemnification and these claims have not been allowed by the Bankruptcy Court.[10]  Ex. 1, Complaint (Ex. J Trustee's Underlying Complaint ¶¶ 245-49).

Of course, the Estate would be prohibited from indemnifying the

---

[10] Bankruptcy Code §§ 502(a), 726.

Directors if the Trustee prevails on his allegations that they did not act in good faith or breached their duty of loyalty to the Company.[11]  Moreover, the policies also provide that if the Estate were to indemnify the Directors, coverage would be subject to a $2.5 million retention.  *See* Ex. 1, Complaint (Ex. A Primary Policy at 3, Item D).

### D.   The Competing Coverage Actions Regarding the Insurance Proceeds.

On February 23, 2011, the FDIC Coverage Action, styled *IndyMac MBS, Inc. v. Ace American Ins. Co. et al.* case no. BC-455772, was filed in the Superior Court of the State of California for the County of Los Angeles.  *See* Ex. 7, FDIC Complaint.  The FDIC Coverage Action names as parties all the Defendants in the Trustee's Coverage Action, the Other Insurers (including the insurers that issued the 07-08 D&O Policies), the Directors, and officers of the Company or its subsidiaries.  *Id.* ¶¶ 9-46.  The Debtor is not named as a party.  *See id.*  The FDIC Coverage Action seeks a comprehensive adjudication of the coverage issues—including the applicability of the *Tripp* Exclusion—related to the Trustee's Underlying Action and the Other Underlying Litigations.  *Id.* ¶¶ 89-131.  On March 16, 2011, the FDIC Coverage Action was removed to the Bankruptcy Court by Mr. Perry, the Company's former Chairman.  Daniels Decl. ¶ 10.[12]

On March 10, 2011, the Side A Carriers filed a complaint styled *XL Specialty Insurance Co. et al v. Michael W. Perry et al.* case no 11-cv-02078 in this Court.[13]  Ex. 8, Side A Complaint.  The Side A Coverage Action seeks a

---

[11] The Company is incorporated under the laws of Delaware that preclude indemnification if a director fails to act in good faith.  8 Del. C. § 145(b); Ex. 1, Complaint ¶ 4.  Good faith is an element of the duty of loyalty.  *Stone v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006).

[12] Given the action's tenuous (at best) connection to the bankruptcy case, the ABC Carriers anticipate filing a motion to withdraw the reference so that further proceedings are heard by the District Court.

[13] Defendant Ace American Insurance Company previously filed an action in state court seeking a declaration of non-coverage with respect to several lawsuits filed in California state and federal courts, including the Trustee's Underlying Action, and a

ABC Carriers' Mot. to
Withdraw Reference

1   determination of coverage as to the 08-09 Side A Only Policies with respect to the

2   Trustee's Underlying Action and some of the Other Underlying Litigations,

3   including the enforceability of the *Tripp* Exclusion. *Id.* ¶¶ 90-138.

4            As discussed above, the Trustee's Coverage Action is the narrowest of

5   the three coverage actions currently pending.[14]  It only seeks a determination of

6   coverage as to the Trustee's Underlying Action and does not address the Other

7   Underlying Litigations.  *See* Ex. 1, Complaint at 14.  Moreover, the Trustee's

8   Coverage Action seeks relief that is diametrically opposed to the relief sought in the

9   FDIC and Side A Coverage Actions with respect to the Trustee's Underlying

10  Action.  The Trustee's Coverage Action seeks a determination that his Underlying

11  Action is covered by the 08-09 D&O and 08-09 Side A Only Policies, while both

12  the FDIC Coverage Action and the Side A Coverage Action seek exactly the

13  opposite determination.  *Compare* Ex. 1, Complaint at 14 *with* Ex. 7, FDIC

14  Complaint ¶ 99 *and* Ex. 8, Side A Complaint ¶¶ 108-12.

15       **E.    The 08-09 D&O Policies.**

16            The insurance policies that are the subject of these competing coverage

17  cases include the 08-09 D&O Policies issued by the ABC Carriers.  The 08-09

18  D&O Policies are comprised of a primary policy issued by the Underwriters (the

19  "Primary Policy") and excess policies issued by the other ABC Carriers.  The 08-09

20  D&O Policies each has a $10 million limit of liability, inclusive of defense costs.

21  *See* Ex. 1 Complaint (Exs. A-D).  The 08-09 D&O Policies afford three types of

22  coverage.

23

24  payment demand made by the FDIC.  That action was removed to federal court on
    February 10, 2011 and voluntarily dismissed by ACE on March 3, 2011.  *See*

25  Daniels Decl. ¶ 8.

26  [14] The Trustee's Coverage Action requests declaratory relief for hypothetical claims
    that are not current injuries in fact.  For that reason, the Trustee's Coverage Action

27  should be dismissed and the ABC Carriers have recently filed a motion to do so.
    The motion to dismiss requests that the Bankruptcy Court defer ruling until a

28  determination is made on this motion to withdraw the reference.  The Bankruptcy
    Court has set a hearing on the motion to dismiss for May 18, 2011.

First, Clause I.A. provides specified coverage, subject to the Policies' terms, conditions and exclusions, for Loss incurred by the insured individuals, the directors and officers—typically called "Side A" coverage. *See* Ex. 1, Complaint (Ex. A Primary Policy at 5 § I.A).

Second, Clause I.B. provides specified coverage, subject to the Policies' terms, conditions and exclusions, "on behalf of" the Debtor *if* the Debtor is "required or permitted" to pay indemnification to the <u>directors and officers</u>. *Id.* (Ex. A Primary Policy at 5 § I.B). This coverage is typically called "Side B" coverage. It is often referred to as "indirect" coverage since the true beneficiaries of the proceeds are the directors and officers and any payments will be made for their benefit; the company's benefit is simply in relieving it of having to make these payments to the insured directors and officers.[15]

Third, Clause I.C provides specified direct coverage, subject to the Policies' terms, conditions and exclusions, to the Debtor—but only for Claims for an "act, error, omission, misstatement, misleading statement, neglect or breach of duty by [the Company] involving a Securities Law Violation." *Id.* (Ex. A Primary Policy at 5 § I.C, 6 § II.F). This coverage is typically referred to as "Side C"

---

[15] Indeed as one court noted:

<u>D & O policies are obtained for the protection of individual directors and officers. Indemnification coverage does not change this fundamental purpose.</u> There is an important distinction between the individual liability and the reimbursement portions of a D & O policy. The liability portion of the policy provides coverage directly to officers and directors, insuring the individuals from personal loss for claims that are not indemnified by the corporation. Unlike an ordinary liability insurance policy, in which a corporate purchaser obtains primary protection from lawsuits, a corporation does not enjoy direct coverage under a D & O policy. It is insured indirectly for its indemnification obligations. <u>In essence and at its core, a D & O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.</u>

*In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999(emphasis added).

ABC CARRIERS' MOT. TO
WITHDRAW REFERENCE

1   coverage.  It is not at issue in the Trustee's Coverage Action or the Trustee's

2   Underlying Action.

3           The policies give priority to Side A coverage.  The Primary Policy

4   states:

5           Underwriters shall pay Loss in the order in which Loss is

6           incurred.  However, if Loss payable under Insuring

7           Clause I.A. and one or more of the other Insuring Clauses

8           is incurred contemporaneously, Underwriters first shall

9           pay Loss payable under Insuring Clause I.A.

10   *Id.* (Ex. A Primary Policy at 14 § IV.E).

11           The 08-09 D&O Policies also include a $2.5 million retention

12   applicable to Side A and Side B coverage.[16]  *Id.* (Ex. A Primary Policy at 3, Item

13   D).  In other words, if the Estate is able to indemnify the Directors, no one can

14   access the policies until the Estate has actually paid the $2.5 million in covered

15   losses.

16           Additionally, there are a series of Side A Only Policies issued by the

17   Side A Carriers.  *See* Ex. 1, Complaint, Exs. E-H.  The Side A Only Policies afford

18   excess coverage only to the directors and officers, but afford no coverage for the

19   Debtor.  *See id.*  Like the 08-09 D&O Policies, the Side A Only Policies are subject

20   to the *Tripp* Exclusion.  Ex. 1, Complaint ¶ 29; *see also id.* (Ex. A Primary Policy at

21   33).

22

23

24

25   [16] The Declaration page provides that Side B coverage is subject to a $2.5 million

26   retention for each claim.  Section IV of the Primary Policy provides that this $2.5 million retention is also applicable to Side A coverage "if indemnification by the

27   Company is required by law or is legally permissible to the fullest extent permitted by law, regardless of whether or not actual indemnification is made, unless the

28   Company is unable to make such actual indemnification by reason of its insolvency."  Ex. 1 Complaint (Ex. A Primary Policy at 13 § IV.A).

# III.  ARGUMENT

The District Court has discretion to withdraw any case or proceeding referred to the Bankruptcy Court on its own motion or on timely motion of any party for cause shown. *See* 28 U.S.C. § 157(d); Fed. R. Bankr. P. 5011.  Though the statute does not expressly define the meaning of "cause," the Ninth Circuit has instructed that the District Court "should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Security Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997).  This Court has further found that in determining whether to withdraw the reference, a district court "should first evaluate whether the claim is core or non-core, since it is upon this issue that the questions of efficiency and uniformity will turn." *In re Nat'l Consumer Mortgage, LLC*, 2009 WL 2985243, at *2 (C.D. Cal. Sept. 14, 2009).

The relevant factors weigh strongly in favor of withdrawing the reference.[17]

## A.  This Is a State Law Contract Dispute, Not a Core Proceeding.

The Ninth Circuit has adopted a "relatively narrow interpretation" of what matters constitute "core proceedings." *In re Com 21*, 2005 WL 1606357, at *4 (N.D. Cal. July 6, 2005).  A "core proceeding" "is one that 'invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'" *In re Gruntz*, 202 F.3d 1074, 1081 (9th Cir. 2000).  "'Non-core proceedings' are those not integral to the restructuring of debtor-creditor relations and not involving a cause of action arising under title

---

[17] This motion is timely.  The Trustee's Coverage Action was filed February 2, 2011 and served by mail on February 4, 2011.  This motion is made before any material decisions have been made by the Bankruptcy Court and within the period that has been found timely by this Court. *Cf. In re Addison*, 240 B.R. 47, 49 (Bankr. C.D. Cal. 1999) (finding motion to withdraw to be timely where filed within two months of the filing of the complaint).

ABC CARRIERS' MOT. TO
WITHDRAW REFERENCE

1    11." *Id.*

2           Section 157(b) of the Judicial Code provides a non-exhaustive list of

3    matters that are "core proceedings." None of the specifically enumerated categories

4    listed in section 157(b) applies to the Trustee's Coverage Action. The Ninth Circuit

5    has held that, "state law contract claims that do not specifically fall within the

6    categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)-(N)" are, at

7    most, non-core "related proceedings" under 28 U.S.C. § 157(c). *In re Castlerock*

8    *Properties*, 781 F.2d 159, 162 (9th Cir. 1986); *see also In re Britt*, 2007 WL

9    4867921, at *3 (9th Cir. BAP Nov. 8, 2007) ("State Law contract claims asserted

10   against a non-debtor are noncore matters."); *In re Cinematronics, Inc.*, 916 F.2d

11   1444, 1449-50 (9th Cir. 1990) (holding claims against a non-debtor for, *inter alia*,

12   breach of contract were non-core). Indeed, where a lawsuit "could just as easily

13   have been brought in state court," it is not a core proceeding. *In re Eastport*

14   *Assocs.*, 935 F.2d 1071, 1077 (9th Cir. 1991); *see also In re U.S. Brass Corp.*, 110

15   F.3d 1261, 1268 (7th Cir. 1997) (holding that an insurance-coverage action was

16   non-core because the "claimed right to insurance coverage is a creation of state

17   contract law and one that could be vindicated in an ordinary breach of contract

18   suit"). [18]

19          The Trustee cites sections 157(b)(2)(A) and (O) as the sole basis for

20   his assertion that the Coverage Action is core. In *Castlerock Properties*, the Ninth

21   Circuit rejected a similar attempt to shoehorn state law claims into the so-called

22   "catch-all" core matters identified in 28 U.S.C. §§ 157(b)(2)(A) and (O)—matters

23   that concern the administration of the bankruptcy estate and "other proceedings

24   affecting the liquidation of the assets of the estate or the adjustment of the debtor-

25

26   [18] Not only <u>could</u> the Trustee have brought this proceeding in state court, another
     declaratory judgment action <u>was</u> brought in state court concerning the coverage
27   issues that are the subject of this action—as well as coverage for numerous other
     matters tendered under the 08-09 D&O Policies and the Side A Only Policies—the
28   FDIC Coverage Action.

1   creditor or the equity security holder relationship." The Ninth Circuit recognized

2   that, if interpreted expansively, these catch-alls could swallow the rule. *In re*

3   *Castlerock Properties*, 781 F.2d at 162 (holding that state law contract claims are

4   not core proceedings "even if they arguably fit within the literal wording of the two

5   catch-all provisions, sections § 157(b)(2)(A) and (O)" because "[t]o hold otherwise

6   would allow the bankruptcy court to enter final judgments that this court has held

7   unconstitutional.").

8          Numerous courts have concluded that insurance coverage disputes of

9   the sort at issue here are non-core. *See, e.g., In re TIG Ins. Co.*, 264 B.R. 661, 665-

10  67 (Bankr. C.D. Cal. 2001) (finding an insurance coverage action non-core); *see*

11  *also In re U.S. Brass Corp.*, 110 F.3d at 1268 (holding that a "claimed right to

12  insurance coverage is a creation of state contract law and one that could be

13  vindicated in an ordinary breach of contract suit" and therefore is a non-core

14  proceeding); *Harleysville Mut. Ins. Co. v. Hill*, 2010 WL 3783952, *3-4 (W.D.N.C.

15  Sept. 28, 2010) (holding a breach of contract action for failure to provide insurance

16  coverage to be a non-core proceeding, and listing cases holding same); *In re*

17  *Ebaseone Corp.*, 2006 WL 2405732, at *3 (Bankr. S.D. Tex. June 14, 2006)

18  (holding declaratory-relief action regarding director and officer insurance to be

19  non-core, and recommending that the reference be withdrawn); *In re HA 2003, Inc.*,

20  2004 WL 609799, *2 (N.D. Ill. March 24, 2004) (holding that an action seeking

21  declaration of insurance coverage is a non-core proceeding). The same conclusion

22  is required here.

23  **B.   Whether the Proceeds of the 08-09 D&O Policies Might Be
          Property of the Bankruptcy Estate Is a Red Herring. But, in Any**
24  **     Event, the Estate Has No True Interest in the Proceeds of the
          Policies.**
25
26  **     1.   Whether the Proceeds of These Policies Would Be Property
                of the Estate Is Irrelevant.**

27          In disputes of this sort, debtors sometimes try to obscure the relevant

28  issues by arguing that the policies in question are property of the bankruptcy estate.

- 15 -

1    Such arguments are an exercise in misdirection.

2           The "core versus non-core" distinction has its genesis in the Supreme

3    Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,

4    458 U.S. 50 (1982). *Marathon* involved an action by a debtor to recover on a

5    contract claim. If the debtor had succeeded, the estate would have been enhanced

6    by the resulting judgment proceeds that would have been property of the estate.

7    But the Supreme Court concluded that such state law contract claims may not be

8    finally adjudicated by a non–Article III judge. *Id.* at 84, 87. Congress responded

9    by creating the jurisdiction system where core matters are entrusted to final

10   decisions by bankruptcy courts and non-core matters are subject to *de novo* review

11   by the district court.

12          Even if one were to ignore the fact that this Estate has no conceivable

13   interest in the proceeds of the 08-09 D&O Policies, a contrary conclusion would not

14   result in transforming these state law contract claims into core matters. As one

15   court explained, the mere fact that an insurance coverage dispute may bring

16   proceeds into the estate is not a sufficient basis to conclude that the coverage

17   dispute is core. Such a conclusion "would swallow the rule" established by the

18   Supreme Court in *Marathon*. *In re Lawrence Group, Inc.*, 285 B.R. 784, 788

19   (N.D.N.Y. 2002).

20          **2.    If It Were Relevant, It Is Clear that the Estate Has No
            Interest in the Proceeds of the Side B Coverage.**

21          The Trustee stresses that the Bankruptcy Court already has found that

22   "the Debtor's interests in the insurance <u>policies</u> [at issue] are property of the

23   estate." *See* Ex. 1, Complaint ¶ 27 (emphasis added). However, as the Trustee

24   essentially concedes in ¶ 26 of his complaint, the real question is whether the policy

25   <u>proceeds</u> that he seeks are Estate property. *Cf. In re Mila, Inc.*, 423 B.R. 537, 542-

26   45 (9th Cir. BAP 2010) (holding that, even though the policy was property to the

27   estate, the more important issue was whether insurance proceeds were property of

28

- 16 -

estate); *see also In re World Health Alternatives, Inc.*, 369 B.R. 805, 808 (Bankr. D. Del. 2007) ("It is clear that insurance policies purchased and paid for by a debtor are property of the estate . . . . [but] [t]he more important question here is whether the proceeds of the policy are property of the estate . . . ."). The Stipulation entered by the Bankruptcy Court expressly reserved on whether the proceeds the policies are property of the Estate. *See* Ex. 4, Stipulation ¶ 17.[19]

Numerous courts have held that a debtor's interest in proceeds of Side B coverage of the type at issue here is ephemeral. Particularly "when a suit is brought on behalf of the debtor, the courts generally hold that the debtor is merely an indirect insured and the proceeds are not property of the estate." *In re Allied Digital Tech. Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004). Indeed, in *In re TIG Insurance Co.*, the Bankruptcy Court ruled that a coverage dispute should be remanded since the Bankruptcy Court lacked subject-matter jurisdiction to determine direct coverage issues involving the plaintiff's underlying claims. *See* 264 B.R. at 666-67. The Bankruptcy Court observed that these determinations might lead to equitable indemnification claims against the debtor over which the Bankruptcy Court would have jurisdiction, but that even so, these issues should be determined by another court given the "numerous parties in interest, only one of which appears to be a debtor in possession." *Id.* at 667.[20] In *In re Minoco Group of*

---

[19] The ABC Carriers are mindful of proceedings (alluded to earlier) before the Bankruptcy Court in late 2008, in which Defendants did not participate, during which the Bankruptcy Court expressed the tentative view that the insurance proceeds would also be property of the Estate. However, the Stipulation subsequently entered by the Bankruptcy Court reserved that issue, and the circumstances facing the Bankruptcy Court at the time of its comments were very different. *See* Ex. 4, Stipulation ¶ 17. For one thing, the 08-09 Policies were still in effect, and so the prospect that the Debtor actually could face covered-securities-claims exposure remained a theoretical possibility, albeit a far-fetched one given the bankruptcy. In fact, at that point in time the Debtor was a named defendant in some securities actions. The Debtor is no longer named in any securities actions (other than the 2007 *Tripp* Litigation, which indisputably is not covered under the 08-09 D&O Policies) and the policies expired years ago.

[20] The Bankruptcy Court was guided by the Third Circuit's seminal decision in *Pacor v. Higgins*. 743 F.2d 984 (3d Cir. 1984). *Pacor* is the leading case for an expansive definition of "related to" bankruptcy jurisdiction. But when faced with

1   *Companies, Ltd.*, the Ninth Circuit held that a directors and officers insurance

2   policy was property of the estate, such that the carrier could not cancel it without

3   violating the automatic stay.  799 F.2d 517, 518-19 (9th Cir. 1986).  But the court

4   went on to explain that if the carrier ever made payments on the Side B coverage

5   provided under that policy, the proceeds would probably not be property of the

6   estate.  *Id.* at 520.  Instead the proceeds would be held for the benefit of the

7   directors and officers pursuant to Bankruptcy Code § 541(b).  *Id.*; *see also In re*

8   *Mila*, 423 B.R. at 543 (holding that proceeds of Side A and Side B coverage are not

9   property of the estate).

10          Moreover, when the Estate is suing and the carriers are paying costs of

11  defense, it would ignore reality to assert that the Estate might have a right to seek

12  indemnification coverage from the carriers.  Such indemnification claims by an

13  estate are not "real or actual."  Rather, the "Trustee could only show hypothetical or

14  speculative indemnification claims . . . since neither [the debtor] nor the estate has

15  paid anything to" the director.  *Id.* at 544-45.[21]  As another court put it, "[i]f entity

16  coverage is hypothetical and fails to provide some palpable benefit to the estate, it

17  cannot be used by a trustee to lever himself into a position of first entitlement to

18  policy proceeds."  *In re First Cent. Fin. Corp.*, 238 B.R. at 18. .

19          It is essentially certain that this Estate will never pay any

20  indemnification claims to the Directors for a variety of reasons:

21          • In his Underlying Action, the Trustee has objected to the Directors'

22  claims for indemnification.  Ex. 1, Complaint (Ex. J Trustee's Underlying

23  Complaint ¶¶ 245-29).  While the Underlying Action is pending, these claims will

24

25  an argument that a direct claim against a non-debtor would logically lead to an
    indemnification claim against the debtor, the court concluded that this ephemeral
26  prospect was insufficient to convey even "related to" jurisdiction on the bankruptcy
    court.  *Id.* at 995.

27  [21] See, also, *In re Medex Regional Laboratories, LLC*, 314 B.R. 716, 722 (Bankr.
    E.D. Tenn. 2004) (same); *In re World Health Alternatives*, 369 B.R. at 808-09
28  (Bankr. D. Del. 2007) (determining that proceeds of a directors and officers policy
    were not property of the debtor's estate).

ABC CARRIERS' MOT. TO
WITHDRAW REFERENCE

1  not be allowed, and the Trustee will be prevented from paying any claims for

2  indemnification, including costs of defense, even if the Estate had sufficient

3  resources to make such payments *pro rata* with other creditors.  11 U.S.C.

4  §§ 502(a) and 726.

5          • The carriers under the 07-08 D&O Policies, rather than the Estate,

6  are advancing the Directors' costs of defense.  Exs. 4-6.

7          • If the Trustee prevails in his Underlying Action, and establishes that

8  the Directors breached their duty of loyalty or failed to act in good faith, the Estate

9  likely will not be able to indemnify the Directors.  *See, e.g.*, 8 Del. C. § 145(b).

10          • The policies do not provide for payment of Side B coverage to the

11  Estate.  Rather, they provide for payment on behalf of the Estate to the directors and

12  officers.  *See* Complaint Ex. 1 (Ex. A Primary Policy at 5 § I.B).

13          • If the Directors were entitled to indemnification from the Estate, a

14  $2.5 million retention would apply before they could access Side A coverage.  *See*

15  *id.* (Ex. A Primary Policy at 3, Item D).  All parties have recognized the reality that

16  no such indemnification will be paid when they allowed the directors and officers to

17  access Side A coverage for costs of defense without any retention.  *See* Ex. 4

18  Stipulation (not providing for the payment of the retention).

19          • If one ignored all of the above facts, before coverage was available

20  to the Estate to reimburse it for indemnification claims that it paid to the Directors,

21  the Estate would have to pay $2.5 million per claim and the coverage would be

22  lower in priority than all Side A payments.  *See* Complaint Ex. 1 (Ex. A Primary

23  Policy at 3, Item D and 14 § IV.E).

24        **3.**    **The Proceeds of the Side A Coverage Are Unquestionably**
                **Not Property of the Estate.**

25  

26          The Trustee does not assert that the proceeds of the Side A coverage

27  are property of the Estate.  *See* Ex. 1, Complaint ¶ 26.  He could not credibly do so.

28  The directors and officers are the insureds under the Side A coverage.  Where a

- 19 -

1   "liability insurance policy only provides direct coverage to the [debtor]'s directors

2   and officers, courts generally hold that the proceeds are not property of the estate."

3   *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010); *see also In re*

4   *Allied Digital Tech. Corp.*, 306 B.R. at 512 ("[W]hen the liability insurance policy

5   only provides direct coverage to the directors and officers the proceeds are not

6   property of the estate."); *In re World Health Alternatives, Inc.*, 369 B.R. at 810

7   ("[W]hen a policy provides coverage only to directors and officers, courts will

8   generally rule that the proceeds are not property of the estate."). Because the debtor

9   has no direct right to the proceeds of the Side A Only Policies, such proceeds are

10   not property of the Estate.

11          In his Coverage Action, the Trustee asserts that "a judicial

12   determination that coverage is not available under any one of the policies

13   comprising the Second Tower in respect of the claims asserted in the [Underlying]

14   Action would . . . reduce the amounts that are available directly to the Estate to

15   satisfy any . . . allowed indemnity obligation." Ex. 1, Complaint ¶ 31. In making

16   this allegation, the Trustee revealed what is really going on—he is concerned that if

17   there is no coverage and he prevails in his Underlying Action, the assets of the

18   Directors may be insufficient to satisfy a judgment. In other words, he is concerned

19   not as a beneficiary of the policy, but as a "plaintiff seeking to <u>recover from</u> the

20   D&O Policy rather than as a potential defendant seeking to be <u>protected by</u> the

21   D&O Policy. In this way, Trustee is no different than any third-party plaintiff suing

22   defendants covered by a wasting policy." *In re Allied Digital Tech. Corp.*, 306

23   B.R. at 513 (emphasis in original). As the Ninth Circuit Bankruptcy Appellate

24   Panel recently recognized, when this is the Trustee's real agenda, his supposed

25   interest in the proceeds of the policy is an illegitimate subterfuge. *In re Mila*, 423

26   B.R. at 544.

27          This conclusion is consistent with black-letter California insurance

28   law. The general rule under California law is that a plaintiff in an underlying case

- 20 -

ABC CARRIERS' MOT. TO
WITHDRAW REFERENCE

has no direct action against an insurance carrier. *See, e.g., Royal Indemnity Co. v. United Enterprises, Inc.*, 162 Cal. App. 4th 194, 205 (2008). There are certain limited exceptions, but none is applicable here. For example, the California Insurance Code provides for a direct action by a "judgment creditor" injured in an action "based upon bodily injury, death, or property damage." Cal. Ins. Code § 11580 (emphasis added). Claims brought under a directors and officers insurance policy do not qualify for they are not based on bodily injury, death, or property damage. *See. e.g., GDF Int'l, S.A. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 2003 WL 926790, at *3-4 (N.D. Cal. March 4, 2003) (denying coverage as a matter of law because "judgment in the underlying action was not based upon bodily injury, death, or property damage."). Even if one were to ignore this insurmountable problem, the Trustee would need to have obtained a final judgment —i.e., be a judgment creditor—in order to avoid the prohibition on direct actions. *See, e.g., Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 956 (9th Cir. 2002) (holding that Cal. Ins. C. § 11580 prevents third-party claimants from suing another policyholder's insurer without a judgment in the underlying action); *Laguana Publishing Co. v. Employers Reinsurance Corp.*, 617 F. Supp. 271, 272-73 (C.D. Cal. 1985) ("[U]nder the law of California . . . a direct action against the insurer is not allowable until after the claimant shall have secured a final judgment against the insured . . . .").[22]

As a result, the outcome of an action to determine Side A coverage could not "alter the debtor's rights, liabilities, options or freedom of action" or "impact[] upon the handling and administration of the bankrupt estate." *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor*, 743 F.2d at 994) (setting forth the test for the bankruptcy court's "related to" jurisdiction under 28 U.S.C.

---

[22] The other exceptions under California law to the prohibition on direct actions are for medical payments to the injured party and to assignees of the insured's claims. *See, e.g., Royal Indemnity, Inc.*, 162 Cal. App. 4th at 205-06.

ABC CARRIERS' MOT. TO
WITHDRAW REFERENCE

§ 1334(b)).

## C.   Judicial Efficiency Supports Withdrawing the Reference.

Judicial efficiency and rational adjudication of the relevant issues would be greatly enhanced by withdrawing the reference. The only sensible way to adjudicate the coverage issues raised in the Trustee's, FDIC's, and Side A Coverage Actions is to consolidate them before the District Court. All three coverage actions involve overlapping parties, insurance policies, questions of law and fact, and requests for determinations of coverage. *Cf.* Fed. R. Civ. P. 42 (authorizing consolidation when actions "involve a common question of law or fact"). As a result, judicial efficiency and avoiding inconsistent results from multiple courts argue strongly for withdrawal of the reference followed by consolidation of the three coverage cases. *See, e.g.*, *Moiser v. Calister, Nebeker, & McCullough*, 2007 WL 951549, at *6-*7 (D. Utah Mar. 26, 2007) (withdrawing reference because, among other reasons, the claim in question was already before the court in a related proceeding and consolidation promoted judicial efficiency); *Mass Mutual Life Ins. v. Marinari*, 2008 WL 1995126, at *3-*4 (D.N.J. May 6, 2008) (withdrawing reference and consolidating with related matter—arising from the same facts pending in the district court—to preserve judicial economy and avoid risk of inconsistent outcomes).

Moreover, as explained above, the nexus between the Trustee's Coverage Action and the Bankruptcy Case is extremely tenuous. The Trustee's Coverage Action predominantly concerns the interpretation of California law, which does not require or implicate the expertise of the Bankruptcy Court. *Cf. In re Mitchell*, 206 B.R. 204, 213 (Bankr. C.D. Cal. 1997) (finding that a lawsuit involving contract and other state-law issues "as to which bankruptcy judges have no special expertise" was properly heard in the district court, which "is better qualified to decide these issues" than the bankruptcy court). Where, as here, "non-core issues predominate," judicial efficiency is enhanced by withdrawing the

reference. *Security Farms*, 124 F.3d at 1008; *see also In re ATG Catalytics*, 2004 WL 2609230, at *1 (N.D. Cal. July 19, 2004) ("Judicial efficiency is enhanced by withdrawing the reference because [*inter alia*] non-core issues predominate . . . ."). This is a non-core proceeding "that could have been brought in a district court or a state court," so the Bankruptcy Court has no jurisdiction to enter a final judgment. *Castlerock Properties*, 781 F.2d at 162. Accordingly, any decision in the Bankruptcy Court would be subject to *de novo* review in this Court. *See id.* at 161. Because "a bankruptcy court's determinations on non-core matters are subject to de novo review by the district court, unnecessary costs could be avoided by a single proceeding in the district court." *Security Farms*, 124 F.3d at 1009.[23]

**D.    None of the Other Relevant Factors Weighs Against Withdrawing the Reference.**

### 1.    Withdrawal Will Not Encourage Forum Shopping.

The Bankruptcy Court has not made any substantive determinations in this coverage proceeding. Moreover, any decision by the Bankruptcy Court in this matter will be subject to *de novo* review in this Court, so withdrawal of the reference will achieve the converse of forum shopping. *See Security Farms*, 124 F.3d at 1009 (stating that the argument that withdrawal encourages forum shopping "misstates the effect of the district court's decision to withdraw the reference" because, "without regard to withdrawal, the bankruptcy court's order . . . inevitably was subject to the approval of the district court").

---

[23] The ABC Carriers reserve the right to demand a jury trial. The time to make that demand is not ripe since the ABC Carriers have not yet filed their answer. If they make a jury demand, the Bankruptcy Court will be unable to conduct a trial without the consent of the parties, and this will be an additional, and very strong basis for withdrawal of the reference. *In re Transcon Lines*, 121 B.R. 837, 838 (C.D. Cal. 1990) ("Due to the fact that a District Court Judge must eventually preside over the jury trial in this matter, it would constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over the issues presented in this litigation.").

## 2. Withdrawal Will Not Disrupt the Uniformity of Bankruptcy Administration.

The Trustee's Coverage Action involves only the application of state contract law principles and does not turn on the Bankruptcy Code. Accordingly, withdrawal will not disrupt the uniformity of bankruptcy administration. *See Veys v. Riske*, No. 2007 WL 4246172, at *3 (W.D. Wash. Nov. 28, 2007) (granting motion to withdraw the reference of non-core claim that was "largely independent from issues of bankruptcy administration"). As one district court explained "[w]here an action involves garden variety breach of contract matters that are non-core, uniformity in bankruptcy law 'compels withdrawal' of those claims." *Solutia Inc. v. FMC Corp.*, 2004 WL 1661115, at *4 (S.D.N.Y. July 27, 2004); *see also Petition of McMahon*, 222 B.R. 205, 208 (S.D.N.Y. 1998) (granting motion to withdraw where "uniformity in the administration of bankruptcy law will not be [a]ffected as the breach of contract claim does not turn on questions of bankruptcy law").

## 3. Withdrawal Will Conserve Court and Party Resources.

The ABC Carriers bring this motion to withdraw the reference so that all pending coverage actions can be heard by one court, avoiding the risks of duplicative litigation and inconsistent rulings. Because the FDIC and Side A Coverage Actions involve numerous parties—none of which is the Debtor—the Bankruptcy Court should not be the forum. Withdrawing the reference will avoid the costs of multiple courts addressing essentially identical coverage issues. It also will "save time and money" because "all of the claims in the adversary proceeding are non-core and will have to be finally determined de novo by the [District] Court after a second round of briefing in response to the bankruptcy court's eventual recommendation." *In re Zante, Inc.*, 2010 WL 5477768, at *7 (D. Nev. Dec. 29, 2010). Simply put, withdrawal will conserve the resources of the courts, the Defendants, and the Estate because "unnecessary costs can be avoided by a single

1   proceeding in the district court." *Equipoint Fin. Network, Inc. v. Network*

2   *Appraisal Servs., Inc.*, 2009 WL 2135873, at *3 (S.D. Cal. July 15, 2009).

3   **IV.   <u>CONCLUSION</u>**

4           This state law dispute brought by the Trustee does not properly belong

5   in Bankruptcy Court.  Allowing the Trustee to proceed there would lead to

6   inefficient, duplicative and potentially inconsistent adjudication of a portion of the

7   coverage issues that he and the plaintiffs in the other pending coverage actions seek

8   to determine.  As a result, the relevant factors weigh strongly in favor of

9   withdrawal, and the ABC Carriers respectfully request that this Court withdraw the

10  reference of this matter to the Bankruptcy Court.

11

12  Dated:   March 28, 2011

13                              BEN H. LOGAN
                                STEPHEN H. WARREN
14                              JUSTINE DANIELS
                                O'MELVENY & MYERS LLP
15

16                              By: *B Logan / pp*
17                                  Ben H. Logan
                                    Attorneys for Those Certain
18                                  Underwriters At Lloyd's, London
                                    and Catlin Insurance Company
19                                  (UK) Ltd., Twin City Fire
                                    Insurance Company, and
20                                  Continental Casualty Company

21  Dated:   March 28, 2011

22                              BRIAN D. HARRISON
                                ROBERT S. GEBHARD
23                              VEENA A. MITCHELL
                                SEDGWICK LLP
24

25                              By: *B Gebhard / pp*
26                                  Robert S. Gebhard
                                    Attorneys for Zurich American
27                                  Insurance Co.

28