# Exhibit 1

David M. Stern (Cal. Bar No. 67697)
dstern@ktbslaw.com
Lee R. Bogdanoff (Cal. Bar No. 119542)
lbogdanoff@ktbslaw.com
Matthew C. Heyn (Cal. Bar No. 227474)
mheyn@ktbslaw.com
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067
Telephone:   (310) 407-4000
Facsimile:    (310) 407-9090

Andrew L. Sandler (admitted *pro hac vice* per L.R. 8018-11)
asandler@buckleysandler.com
Benjamin B. Klubes (admitted *pro hac vice* per L.R. 8018-11)
bklubes@buckleysandler.com
Benjamin P. Saul (admitted *pro hac vice* per L.R. 8018-11)
bsaul@buckleysandler.com
BUCKLEYSANDLER LLP
1250 24th Street N.W., Suite 700
Washington, District of Columbia 20037
Telephone:   (202) 349-8000
Facsimile:    (202) 349-8080

Attorneys for Alfred H. Siegel, Solely as Chapter 7 Trustee

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| In re: INDYMAC BANCORP, INC.,<br><br>Debtor.<br><hr>ALFRED H. SIEGEL,<br><br>Plaintiff,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYDS OF LONDON, ZURICH AMERICAN INSURANCE CO., TWIN CITY FIRE INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY, XL SPECIALTY INSURANCE COMPANY, ARCH INSURANCE COMPANY, ACE AMERICAN INSURANCE COMPANY, and AXIS REINSURANCE COMPANY,<br><br>Defendants. | Civil Case No. 11-02605-RGK<br><br>Bankruptcy Case No. 2:08-bk-21752-BB<br><br>Adversary Proc. No. 2:11-ap-01443-BB<br><br>**CHAPTER 7 TRUSTEE'S CONSOLIDATED OPPOSITION TO THE INSURERS' MOTIONS TO WITHDRAW THE BANKRUPTCY COURT REFERENCE**<br><br>**Hearing**<br>Dates:    May 2, 2011<br>Time:     9:00 a.m.<br>Judge:    Hon. R. Gary Klausner<br>Place:    Roybal Federal Building<br>         255 East Temple Street<br>         Courtroom 850<br>         Los Angeles, California 90012 |

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................ 1

II.   RELEVANT BACKGROUND .................................................................. 4

      A.    General Background.......................................................................... 4

      B.    Bancorp's Directors, Officers, And Company Insurance. ......... 4

      C.    The Bankruptcy Court's Extensive Prior Involvement Regarding
            The D&O Insurance. ........................................................................ 5

      D.    The Securities Fraud Actions. ........................................................ 7

      E.    The "Tripp Exclusion" And Interrelated Wrongful Acts Exclusion. ........ 7

      F.    The D&O Proofs Of Claim. ........................................................... 8

      G.    The Trustee Action. ......................................................................... 9

      H.    The Trustee's Declaratory Relief Insurance Action. .............. 10

      I.    The Other Declaratory Relief Actions. ...................................... 10

III.  ARGUMENT ............................................................................................. 12

      A.    Although The Determination Should Be Made By The Bankruptcy
            Court In The First Instance, This Litigation Involves "Core"
            Bankruptcy Matters. ..................................................................... 14

            1.    This Litigation Requires A Determination Of The Nature,
                  Scope, And Extent Of The Estate's Property Interests................ 16

            2.    This Litigation Affects The Pool Of Claims Against The
                  Estate, As Well As The Trustee's Ability To Pay Those
                  Claims. ................................................................................. 18

            3.    This Litigation Implicates The Automatic Stay. ........................ 23

      B.    Withdrawal Of The Reference Would Be Inefficient And Contrary
            To Judicial Economy In Several Different Respects. .............. 24

      C.    The Motions Are An Effort To Forum Shop. ............................ 29

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

i

D. The Remaining Factors Also Weigh Against Permissive Withdrawal. ...................................................................31

IV. CONCLUSION ...................................................................34

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

# **TABLE OF AUTHORITIES**

**CASES**

*ACandS, Inc. v. Aetna Cas. & Sur. Co.*,
    666 F.2d 819 (3d Cir. 1981) ............................................................. 23

*Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.)*,
    258 B.R. 119 (D.N.J. 2000) ............................................................. 20

*Am. Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp.*,
    198 B.R. 55 (S.D.N.Y. 1996) ........................................................... 29

*Bank of the West v. Bradley Chevrolet (In re Britt)*,
    2007 WL 4867921 (B.A.P. 9th Cir. Nov. 2007) ............................... 21

*BFP v. Resolution Trust Corp.*,
    511 U.S. 531, 114 S. Ct. 1757, 128 L. Ed. 2d 556 (1994) .......................... 21, 22

*Boucher v. Shaw*,
    572 F.3d 1087 (9th Cir. 2009) ......................................................... 24

*Brogan v. Ascher*,
    128 B.R. 639 (Bankr. N.D. Ill. 1991) .............................................. 16

*Centrix Fin. Liquidating Trust v. Nat'l Union Fire Ins. Co. (In re Centrix Fin., LLC)*,
    No. 09-01542, 2011 U.S. Dist. LEXIS 3247 (D. Colo. Jan. 7, 2011) .... 25, 30, 33

*Chrysler Credit Corp. v. Fifth Third Bank (In re Onyx Motor Car Corp.)*,
    116 B.R. 89 (S.D. Ohio 1990) ......................................................... 13

*Cohen v. Nat'l Union Fire Ins. Co. (In re Cnty. Seat Stores)*,
    No. 01-2966, 2002 U.S. Dist. LEXIS 1555 (S.D.N.Y. Jan. 25, 2002) ....... *passim*

*Cohen v. Nat'l Union Fire Ins. Co. (In re Cnty. Seat Stores, Inc.)*,
    280 B.R. 319 (Bankr. S.D.N.Y. 2002) ............................................. 32

*Crawford v. Bell*,
    599 F.2d 890 (9th Cir. 1979) ........................................................... 25

*Daewoo Motor Am., Inc. v. Gulf Ins. Co. (In re Daewoo Motor Am., Inc.)*,
    302 B.R. 308 (C.D. Cal. 2003) ................................................... 12, 14

*Dionne v. Simmons (In re Simmons)*,
    200 F.3d 738 (11th Cir. 2000) ......................................................... 13

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

iii

1
2
3
4
5
6
7
8
9
10
11
12

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Enron Corp. v. Telplexus, Inc. (In re Enron Corp.)*,
    No. 04-7693, 2004 U.S. Dist. LEXIS 25259 (S.D.N.Y. Dec. 10, 2004) ..........30

*EquiMed, Inc. v. Steadfast Ins. Co. (In re EquiMed, Inc.)*,
    254 B.R. 347 (D. Md. 2000).................................................................................26

*Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co.*,
    873 F.2d 229 (9th Cir. 1989)..............................................................................22

*Exec. Risk Indem., Inc. v. Brooks (In re Jackson Brook Inst., Inc.)*,
    280 B.R. 779 (D. Me. 2002)...............................................................................26

*Exec. Risk Indem., Inc. v. Boston Reg'l Med. Ctr., Inc. (In re Boston Reg'l Med. Ctr., Inc.)*,
    285 B.R. 87 (Bankr. D. Mass. 2002)............................................................20, 22

*Fed. Ins. Co. v. Sheldon*,
    167 B.R. 15 (S.D.N.Y. 1994).........................................................................26, 29

*Foothill Capital Corp. v. Clare's Food Mkt. (In re Coupon Clearing Serv.)*,
    113 F.3d 1091 (9th Cir. 1997)............................................................................14

*FTC v. First Alliance Mortg. Co. (In re First Alliance Mortg. Co.)*,
    282 B.R. 894 (C.D. Cal. 2001)...........................................................................13

*Gecker v. Marathon Fin. Ins. Co.*,
    391 B.R. 613 (N.D. Ill. 2008).............................................................................27

*Groshong v. Sapp (In re MILA, Inc.)*,
    423 B.R. 537 (B.A.P. 9th Cir. 2010)...................................................................19

*GTS 900 F, LLC v. Corus Constr. Venture, LLC (In re GTS 900 F, LLC)*,
    No. 10-06693, 2010 U.S. Dist. LEXIS 129112
    (C.D. Cal. Nov. 23, 2010) ............................................................................31, 33

*GunnAllen Fin., Inc. v. U.S. Specialty Ins. Co. (In re GunnAllen Fin., Inc.)*,
    No. 10-2855, 2011 U.S. Dist. LEXIS 14997 (M.D. Fla. Feb. 3, 2011) .......20, 33

*Harris v. Wittman (In re Harris)*,
    590 F.3d 730 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 3413 (2010) .................23

*Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc.*,
    355 B.R. 214 (D. Haw. 2006).....................................................................*passim*

iv

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

*Houston v. Edgeworth (In re Edgeworth)*,
  993 F.2d 51 (5th Cir. 1993) .................................................................... 17

*In re Canter*,
  299 F.3d 1150 (9th Cir. 2002) .......................................................... 24, 25

*In re Castlerock Props.*,
  781 F.2d 159 (9th Cir. 1986) .................................................................. 23

*In re Cinematronics, Inc.*,
  916 F.2d 1444 (9th Cir. 1990) ............................................................... 21

*In re Circle K Corp.*,
  121 B.R. 257 (Bankr. D. Ariz. 1990) ............................................... 17, 19

*In re Cybermedica, Inc.*,
  280 B.R. 12 (Bankr. D. Mass. 2002) ...................................................... 19

*In re Daisy Sys. Sec. Litig.*,
  132 B.R. 752 (N.D. Cal. 1991) .............................................................. 13

*In re First Assured Warranty Corp.*,
  383 B.R. 502 (Bankr. D. Colo. 2007) ..................................................... 16

*In re Fisher*,
  67 B.R. 666 (Bankr. D. Colo. 1986) ....................................................... 16

*In re Hardesty*,
  190 B.R. 653 (D. Kan. 1995) ................................................................. 31

*In re Int'l Nutronics, Inc.*,
  28 F.3d 965 (9th Cir. 1994) ................................................................... 15

*In re Leslie Fay Cos.*,
  207 B.R. 764 (Bankr. S.D.N.Y. 1997) .................................................... 19

*In re Lissner Corp.*,
  115 B.R. 604 (N.D. Ill. 1990) ................................................................ 28

*In re Mercury Masonry Corp.*,
  114 B.R. 35 (Bankr. S.D.N.Y. 1990) ...................................................... 27

*In re Sacred Heart Hosp.*,
  182 B.R. 413 (Bankr. E.D. Pa. 1995) ............................................... 17, 19

v

*In re TM Carlton House Partners*,
    93 B.R. 859 (Bankr. E.D. Pa. 1988)................................................................24

*John Hancock Mut. Life Ins. Co v. Watson (In re Kincaid)*,
    917 F.2d 1162 (9th Cir. 1990)...................................................................16

*Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.)*,
    136 B.R. 59 (S.D.N.Y. 1992).....................................................................27

*Kolinsky v. Russ (In re Kolinsky)*,
    100 B.R. 695 (Bankr. S.D.N.Y. 1989).........................................................29

*Knopfler v. Schraiber (In re Schraiber)*,
    97 B.R. 937 (Bankr. N.D. Ill. 1989)...........................................................16

*Kunkel v. Cont'l Cas. Co.*,
    866 F.2d 1269 (10th Cir. 1989).................................................................23

*Mellon v. Del. & Hudson R.R. (In re Del. & Hudson R.R.)*,
    122 B.R. 887 (D. Del. 1991) .....................................................................29

*Metro. Inv. Sec., Inc. v. Cauvel (In re Metro. Mortg. & Sec. Co.)*,
    325 B.R. 851 (Bankr. E.D. Wash. 2005)......................................17, 20, 32

*Minoco Grp. of Cos. v. First State Underwriters Agency of New England Reinsurance Corp. (In re Minoco Grp. of Cos.)*,
    799 F.2d 517 (9th Cir. 1986)...................................................................17

*Montana v. Goldin (In re Pegasus Gold Corp.)*,
    394 F.3d 1189 (9th Cir. 2005)...................................................................29

*Morris v. Nat'l Union Fire Ins. Co. (In re Eastwind Grp., Inc.)*,
    303 B.R. 743 (Bankr. E.D. Pa. 2004)........................................................17

*Official Comm. of Unsecured Creditors v. Lay (In re Enron Corp.)*,
    295 B.R. 21 (S.D.N.Y. 2003).................................................................31, 33

*Official Comm. of Unsecured Creditors v. Neumann (In re Neumann Homes, Inc.)*,
    414 B.R. 383 (N.D. Ill. 2009).....................................................................13

*PBGC v. Cont'l Airlines, Inc. (In re Cont'l Airlines)*,
    138 B.R. 442 (D. Del. 1992) ......................................................................16

*Phillips v. Congelton, L.L.C. (In re White Mt. Mining Co., L.L.C.)*,
    403 F.3d 164 (4th Cir. 2005).....................................................................27

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

*Pierce v. Conseco Fin. Serv. Corp. (In re Lockridge)*,
    303 B.R. 449 (Bankr. D. Ariz. 2003) ................................................. 21

*Pintlar Corp. v. Fid. & Cas. Co. (In re Pintlar Corp.)*,
    124 F.3d 1310 (9th Cir. 1997) ..................................................... 17

*Ponce Marine Farm v. Browner (In re Ponce Marine Farm)*,
    172 B.R. 722 (D.P.R. 1994) ........................................................ 32

*Rare, LLC v. Marciano (In re Rare, LLC)*,
    298 B.R. 762 (Bankr. D. Colo. 2003) .......................................... 16

*Rubins Contractors, Inc. v. Lumbermens Mut. Ins. Co.*,
    821 F.2d 671 (D.C. Cir. 1987) .................................................... 23

*Safeco Ins. Co. v. Farmland Indus., Inc. (In re Farmland Indus., Inc.)*,
    296 B.R. 793 (B.A.P. 8th Cir. 2003) ........................................... 29

*Sasson v. Sokoloff (In re Sasson)*,
    424 F.3d 864 (9th Cir. 2005) ...................................................... 29

*Sec. Farms v. Int'l Bd. of Teamsters*,
    124 F.3d 999 (9th Cir. 1997) ...................................................... 12

*Siegel v. Caldera*,
    No. 10-00179-RGK, 2010 U.S. Dist. LEXIS 34355
    (C.D. Cal. Mar. 19, 2010) ..................................................... 9, 13

*Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*,
    504 F.3d 775 (9th Cir. 2007) ........................................ 13, 31, 33

*Straton v. New*,
    283 U.S. 318, 51 S. Ct. 465, 75 L. Ed. 1060 (1931) ................... 22

*Toprak Co. v. Global Printing Equip., Inc. (In re Global Printing Equip., Inc.)*,
    No. 10-826, 2010 U.S. Dist. LEXIS 89936 (D.N.J. Aug. 31, 2010) ............... 14

*Travelers Cas. & Sur. Co. v. Dunmore* (*In re Dunmore Homes, Inc.*),
    No. 09-499, 2009 U.S. Dist. LEXIS 29083 (E.D. Cal. Apr. 1, 2009).......... 15, 33

*Travelers Cas. & Sur. Co. v. Skinner Engine Co. (In re Am. Capital Equip., LLC)*,
    325 B.R. 372 (W.D. Pa. 2005) .................................................... 26

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

*Trs. of UMW Combined Benefit Fund v. Westmoreland Coal Co. (In re Westmoreland Coal Co.)*,
   221 B.R. 512 (D. Colo. 1998) ........................................................... 31

*United States v. Sims (In re Feiler)*,
   218 F.3d 948 (9th Cir. 2000) ........................................................... 19

*Willms v. Sanderson Cmtys., Inc.*,
   No. 07-2366, 2009 U.S. Dist. LEXIS 24990 (E.D. Cal. Mar. 19, 2009) .......... 15

*Zond Minn. Const. Co. v. Marathon Elec. Mfg. Corp. (In re Enron Corp.)*,
   No. 04-7950, 2005 U.S. Dist. LEXIS 2132 (S.D.N.Y. Feb. 14, 2005) ............. 15

## STATUTES

11 U.S.C. § 362(a)(3) ........................................................................... 24

11 U.S.C. § 541(a)(1) ........................................................................... 17

11 U.S.C. § 541(a)(6) ........................................................................... 17

28 U.S.C. § 157(a) ............................................................................... 12

28 U.S.C. § 157(b)(2) ...................................................................... 23, 24

28 U.S.C. § 157(b)(3) ................................................................... *passim*

28 U.S.C. § 157(c) ......................................................................... 3, 14, 28

28 U.S.C. § 157(d) ....................................................................... *passim*

28 U.S.C. § 1334 ........................................................................... 12, 29

28 U.S.C. § 1367(a) ............................................................................. 29

Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067-6049
Telephone: (310) 407-4000

1    Alfred H. Siegel (the "Trustee"), solely in his capacity as Chapter 7 Trustee of

2    the estate (the "Estate") of IndyMac Bancorp, Inc. ("Bancorp"), respectfully submits

3    this consolidated opposition to four motions (the "Motions") filed by two groups of

4    Bancorp's insurance carriers (collectively, the "Insurers") to withdraw the reference of

5    (1) Adversary Proceeding No. 2:11-ap-01443-BB (the "Trustee's Insurance Action")

6    and (2) Adversary Proceeding No. 2:11-ap-01820-BB (the "FDIC's Insurance Action"

7    and together with the Trustee's Insurance Action, the "Adversary Proceedings").[1]

8                    **I.    INTRODUCTION**

9        The Motions reflect a misguided effort to avoid adjudication of the Trustee's

10   insurance coverage by the court that is overwhelmingly best situated to resolve it: the

11   United States Bankruptcy Court for the Central District of California (the "Bankruptcy

12   Court").  Each of the Adversary Proceedings is one patch of a multifaceted and

13   interrelated litigation quilt with which the Bankruptcy Court is already quite familiar.

14   The Insurers' desire to rip patches from that quilt and hope they get picked up by

15   another court not only falls far short of establishing the "cause" required by section

16   157(d) of title 28 of the United States Code (the "Judicial Code"), but also flies in the

17   face of policies Congress intended to advance by codifying a comprehensive system of

18   bankruptcy jurisdiction.  There are many reasons why the Motions should be denied.

19   _____

20   [1]    The motions in Case No. 11-02600 and Case No. 11-02950 were filed by the so-
     called "ABC Carriers"; the motions in Case No. 11-02605 and Case No. 11-02998
21   were filed by the so-called "A-Side Insurers."  Because the arguments and
     authorities in the Motions are very similar, the Trustee addresses them via one
22   consolidated opposition.  In order to avoid 80-100 pages of partially overlapping
     briefing, the Trustee has filed herewith an *ex parte* motion to allow this single 34
23   page brief.  References to the ABC Carriers' first pleading appear as "ABC Tr.
     Mot.," and references to their second pleading appear as "ABC FDIC Mot."
24   Similarly, the A-Side Insurers' two pleadings are cited as "A-Side Tr. Mot." and
     "A-Side FDIC Mot."  To avoid duplication, the Trustee refers to certain documents
25   already in the record by citation to the "Lewis Decl." exhibits submitted in Case
     No. 11-02605 or to the "Daniels Decl." exhibits submitted in Case No. 11-02600.
26   References to "RJN" are to exhibits of the *Request for Judicial Notice* that the
     Trustee has filed with and in support of this consolidated opposition.
27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

First, the Insurers failed to satisfy Judicial Code section 157(b)(3), which requires them to seek a core/non-core determination from the Bankruptcy Court *before* bringing their Motions. Although this failure alone is reason to deny the Motions, it is clear why the Insurers ignored section 157(b)(3)'s requirements: this litigation contains profoundly "core" bankruptcy proceedings. Specifically, by his *Complaint for Declaratory Relief*, the Trustee seeks to define the legal nature, scope, and extent of the Estate's property – insurance policies for which Bancorp paid over $7.5 million. The Insurers' position on the merits is that (i) two exclusions, in effect, render the policies valueless and (ii) despite paying *millions* to provide coverage for it and its officers and directors, Bancorp has no interest whatsoever in the policies. The parties' ongoing disputes about whether Bancorp has *any* property interests in the policies and, if so, their precise scope and nature, are exactly the sort of disputes that the nation's bankruptcy courts consider and resolve every day. Bankruptcy cases would grind to a halt if the intervention of a separate court were appropriate every time disagreements arose about the nature of debtors' property interests. Thus, the Ninth Circuit Court of Appeals and many other courts have reached the logical and obvious conclusion that federal bankruptcy courts' "core" functions and powers encompass such disputes.

Beyond this bedrock jurisdictional principle, this litigation exhibits other "core" traits. For example, the Adversary Proceedings are connected to a core, underlying adversary proceeding before the Bankruptcy Court that the Trustee brought against Bancorp's former CEO and directors and that includes, among other claims, multiple counts under the Bankruptcy Code, objections to those individuals' indemnity and other claims against the Estate, and causes of action to subordinate those claims, to the extent allowed. In light of this action, as to which this Court already denied a motion to withdraw the reference, it is clear that the insurance policies are likely to comprise a significant portion of the funds that will be available to distribute to Bancorp creditors.

Second, even if some aspects of the Adversary Proceedings are non-core (which they are not), principles of judicial economy favor letting the litigation proceed in the

Bankruptcy Court.  The Bankruptcy Court is already very familiar with the claims in the Trustee's underlying action; thus, it is best situated to decide if those claims are covered under the relevant insurance policies.  The Bankruptcy Court, the Trustee, and the other parties to the Adversary Proceedings, moreover, have all devoted substantial attention to the details of the insurance policies at issue, including litigating how the policies operate and negotiating and approving multiple stipulations to allow for sizable distributions from the "Side A" parts of the policies.  Thus, even if the Bankruptcy Court is required to submit a report and recommendation under Judicial Code section 157(c) (as is the standard procedure when non-core matters are decided by bankruptcy courts), this Court and all the parties will nevertheless benefit immensely from the Bankruptcy Court's expertise, years of acquired knowledge, and understanding of the relevant claims, parties, insurance policies, and legal authorities.  This is precisely why the plaintiff in the FDIC's Insurance Action (subject to the two Motions in Cases Nos. 11-02950 and 11-02998), which overlaps materially with the Trustee's Insurance Action (subject to the two Motions in Cases Nos. 11-02600 and 11-02605), consented to the Bankruptcy Court's entry of a final order in its lawsuit.

Third, the Motions are an attempt to forum shop.  Despite the benefits for all parties if the Adversary Proceedings remain before the Bankruptcy Court, the Insurers have rushed headlong to try to divert all coverage matters away from that court.  Rewarding their end run around an apparently disfavored court will encourage wasteful behavior and further clog this Court's already busy docket.  Congress did not intend for district courts to be an "escape hatch" litigants can use whenever they fear how a bankruptcy court might rule on matters properly before it.  This Court should follow the many others that have denied motions brought by similarly motivated litigants.

Fourth, the remainder of the "cause" factors either further tilt the scales against withdrawal or are neutral.  There is no fair balancing of the factors that supports removing the Adversary Proceedings from the Bankruptcy Court.  As a result, the Insurers are unable to meet their affirmative burden under Judicial Code section 157(d).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

For these and other reasons described below, the Motions should be denied.

## II.   RELEVANT BACKGROUND

### A.   General Background.

Bancorp was the corporate parent of IndyMac Bank, F.S.B. (the "Bank").  On July 11, 2008, the Office of Thrift Supervision seized the Bank and named the FDIC as receiver for the Bank.  *See* RJN Ex. "A," p. 7 ¶ 3.  On July 31, 2008, Bancorp filed a petition for relief under chapter 7 of the Bankruptcy Code.  *Id.*

### B.   Bancorp's Directors, Officers, And Company Insurance.

In 2007, Bancorp purchased directors, officers, and company insurance ("D&O Insurance") in the total amount of $80 million in coverage.  This coverage was spread among eight policies, each with a face limit of $10 million.  The policy year for these policies was March 1, 2007 to March 1, 2008.  These policies collectively are referred to as the "First Year Tower."  The premiums for the First Year Tower policies totaled over $1,777,920.  *See* RJN Ex. "A," p. 2 ¶ 5 & p. 10.

Prior to the expiration of the First Year Tower policies, Bancorp purchased eight replacement or renewal policies, which also provided a total of $80 million in coverage.  In exchange for this D&O Insurance coverage, Bancorp paid $6,113,281 in premiums, reflecting an increase of *over 300%* or $4 million more than the premiums charged for the First Year Tower.  *See* RJN Ex. "A," p. 2 ¶ 5 & p. 10.  The policy year for these policies was March 1, 2008 to April 1, 2009.  *See id.*  These eight insurance policies are collectively referred to as the "Second Year Tower" or "Second Year Tower Policies" (copies of the actual policies are attached as exhibits A through H to both Lewis Decl. Exhibit 1 and Daniels Decl. Exhibit 1).

Both the First Year Tower and the Second Year Tower are comprised of:

a.   The primary policy and the first three layers of excess policies, which collectively provide $40 million of insurance with three types of coverage:

    (1)   coverage for losses resulting from claims against directors and officers for "an individual act," also known as "Side A" coverage;

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

4

(2)   coverage for Bancorp's losses as a result of indemnifying officers and directors for losses, also known as "Side B" coverage; and

(3)   coverage for losses sustained by Bancorp as a result of securities law violations, also known as "Side C" coverage.

b.   The fourth, fifth, sixth, and seventh layers of excess policies, which collectively provide a total of $40 million of "Side A" coverage only. RJN Ex. "A," p. 3 ¶ 9.

In both the First Year Tower and the Second Year Tower, the eight policies provide nearly identical coverage, with the exception that the fourth, fifth, sixth, and seventh layers of excess policies in both towers provide only Side A coverage. Each policy references Bancorp by name as among the "Assureds," as the "Named Insured" or otherwise "Insured" party, as the "Named Entity," or as the "Policyholder." *See* the accompanying *Declaration of Julia J. Rider* ¶ 3. All policies in the First Year Tower and the Second Year Tower include the "Interrelated Wrongful Acts" exclusion, and all policies in the Second Year Tower also contain the "Tripp Exclusion," both of which are discussed in greater detail below. *Id.* ¶ 4.

The policies are depleting insurance policies. The $10 million of coverage for each policy represents the applicable insurer's maximum liability (except if the insurers are liable for bad faith denial of coverage), irrespective of whether, in the case of the primary policy and first three excess policies, the covered losses arise under "Side A," "Side B," or "Side C." *Id.* ¶ 5. When the Insurers pay defense costs, it exhausts available coverage. Regardless of the party receiving such payments, all payments made on account of losses under the policies, including attorneys' fees and court costs, reduce the available aggregate insurance for all of the insureds. *Id.*

**C.   The Bankruptcy Court's Extensive Prior Involvement Regarding The D&O Insurance.**

Since the bankruptcy case was filed in 2008, the Bankruptcy Court has presided over numerous contested matters, discovery disputes, and adversary proceedings related

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1    to Bancorp's bankruptcy.  *See* RJN Ex. "B" (ECF docket sheet for the main Bancorp

2    chapter 7 case).  Much of that work has been directly related to the D&O Insurance.

3        Following Bancorp's bankruptcy petition, several former Bancorp directors and

4    officers filed two motions for relief from the automatic stay to seek to access several

5    of Bancorp's insurance policies, describing the importance of the insurance money for

6    funding their defense.  *See* RJN Exs. "C" & "D."  After partially denying the first

7    motion based on its specific determination and finding that the D&O Insurance

8    policies are property of the Estate, *see* RJN Ex. "E" ¶ 2, the Bankruptcy Court ordered

9    the parties to mediation before a former judge of this Court, the Hon. Dickran

10   Tevrizian (Ret.).  *See* RJN Ex. "F."  As a result of that mediation, the parties entered

11   into several stipulations, which were approved by the Bankruptcy Court, granting the

12   former Bancorp directors and officers limited relief from the automatic stay to receive

13   reimbursement of their defense costs under the D&O Insurance policies.

14       Under the Bankruptcy Court's close supervision and pursuant to Bankruptcy

15   Court orders entered in December 2008, August 2009, and June 2010, over *$30

16   million* of funds have been released from the insurance policies to allow the covered

17   individuals to defend themselves in various litigations (including those discussed

18   below).  *See* Daniels Decl. Exs. 4, 5 & 6.  As required by the Bankruptcy Court's

19   orders, Retired Judge Tevrizian has reviewed all of the associated legal bills, and has

20   thereby assisted the Bankruptcy Court's efforts to mitigate depletion of these valuable

21   Estate assets.  On several occasions, Bancorp's former directors and officers have

22   requested further relief from the Bankruptcy Court to access the policies, and the

23   Bankruptcy Court has issued appropriate orders ruling on the parties' ability to access

24   the policies for various lawsuits.  *See, e.g.*, RJN Exs. "G" & "H."  Indeed, in the last

25   two weeks, the Trustee, the former Bancorp directors and officers, and the FDIC have

26   submitted a further stipulation for the Bankruptcy Court's approval, which stipulation

27   provide for relief from the automatic stay so that the Insurers may pay an additional

28   $10 million in defense costs.  *See* RJN Ex. "I."  Not one of the Bankruptcy Court's

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1   decisions in connection with Bancorp's insurance policies has been appealed.

2   **D.   The Securities Fraud Actions.**

3   Six securities class actions were filed between June 6, 2008 and August 1, 2008

4   relating to the collapse of Bancorp and the Bank.  Five of the six securities class

5   actions were consolidated into *Daniels v. IndyMac Bancorp, Inc.*, Case No. 2:08-cv-

6   03812-GW-VBK (C.D. Cal.).  The other securities class action, the "*Tripp* Litigation,"

7   was not consolidated.  Those actions have generally been stayed while the parties

8   thereto attempt to reach a global settlement regarding all lawsuits that would implicate

9   the D&O Insurance.  *See, e.g.*, RJN Ex. "J."  The plaintiffs in these class action

10  lawsuits agreed to stay their litigations in the interests of maximizing the value

11  available to all parties in a global settlement as part of a mediation ordered by the

12  Bankruptcy Court, which is described in greater detail below.

13  **E.   The "Tripp Exclusion" And Interrelated Wrongful Acts Exclusion.**

14  In early 2008, Bancorp obtained policies to replace the expiring First Year

15  Tower and provide coverage for the 2008-2009 period.  Each of the Second Year

16  Tower Policies is subject to an exclusion in respect of the *Tripp* Litigation, generally

17  referred to as the "Tripp Exclusion," for claims that are:

18  "based upon, arising out of, directly or indirectly resulting from or in

19  consequence of, or in any way involving the following:

20  1.   The litigation styled *Wayman Tripp and Sven Mossberg v. IndyMac*

21  *Bancorp, Inc. Michael W. Perry and Scott Keys,* initiated 12 March 2007 in the

22  United States District Court for the Central District of California under the

23  caption *Claude A. Reese v. IndyMac Financial, Inc., Richard A. Wohl and Scott*

24  *Keys*, Case No. 2:07-cv-1635-GW-VBK ("the Tripp Litigation"); or

25  2.   Any fact, circumstance, situation, event, transaction or series of facts,

26  circumstances, situations, events or transactions underlying or alleged in the

27  Tripp Litigation

28  regardless of any legal theory upon which such Claim is predicated."

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1    Each of the Second Year Tower Policies also includes an exclusion for claims

2    that are "Interrelated Wrongful Acts" – or "Wrongful Acts" that "have as a common

3    nexus any fact, circumstance, situation, event, transaction or series of acts,

4    circumstances, situations, events or transactions" – with respect to acts that were the

5    basis of coverage notices given prior to the Second Year Tower's policy period.

6    **F.     The D&O Proofs Of Claim.**

7    The coverage under the insurance policies is an asset of the Estate because,

8    among other reasons, Bancorp's former CEO and several of its former directors filed

9    proofs of claim in the Bankruptcy Court implicating coverage under the policies.[2]

10    On November 24, 2008, Mr. Perry, former Bancorp CEO and director, filed a

11    proof of claim in the Bancorp bankruptcy case for unpaid prepetition compensation,

12    termination damages, and indemnification pursuant to a certain employment

13    agreement attached as Attachment B thereto.  *See* Daniels Decl. Ex. 2.  With respect

14    to indemnification, the Perry proof of claim broadly asserts unliquidated rights "to

15    defense costs and indemnity in connection with claims filed against [Perry] for his

16    actions or inactions as an officer or director of [Bancorp] or any affiliate," including

17    pursuant to Bancorp's organic documents.  *See id.* ¶¶ 8-9.

18    The Trustee is informed and believes that, in addition to the Trustee Action

19    (defined below), Mr. Perry is a defendant in several other civil proceedings, including

20    the securities cases discussed above, *MBIA Insurance Co. v. IndyMac ABS, Inc., et al.*,

21    No. BC422358 in Los Angeles Superior Court, and *Assured Guaranty Municipal*

22    *Corp. v. UBS Securities LLC, et al.*, No. BC445785 in Los Angeles Superior Court.

23    On November 26, 2008, five former Bancorp directors each filed a proof of

24    claim in the bankruptcy case for indemnification.  *See* Daniels Decl. Ex. 3.  Each of

25    these proofs of claim asserts, *inter alia,* rights of indemnification for claims asserted

26    against these individuals in their capacity as directors of Bancorp "pursuant to any

27    [2]  Those claimants include Louis E. Caldera, Lyle E. Gramley, Hugh M. Grant,
     Patrick C. Haden, Terrance G. Hodel, Robert L. Hunt II, Lydia H. Kennard, Bruce
28    G. Willison, and Michael W. Perry (collectively, the "D&O Defendants").

1  applicable indemnity agreements with the Debtor, the Debtor's articles of

2  incorporation and by-laws, and by operation of governing law." Thus far, these

3  individuals have been sued only in the Trustee Action.

4          **G.     The Trustee Action.**

5          On November 13, 2009, the Trustee filed an adversary proceeding against the

6  D&O Defendants in the Bankruptcy Court: *Siegel v. Caldera, et al. (In re IndyMac*

7  *Bancorp, Inc.)*, Adv. Pro. No. 2:09-ap-02645-BB (the "Trustee Action"). *See* Ex. J to

8  both Lewis Decl. Ex. 1 & Daniels Decl. Ex. 1 (Trustee's complaint). The Trustee

9  Action objects to proofs of claim filed against the Estate by the D&O Defendants,

10 including indemnity claims, and seeks equitable subordination of such claims. *See id.*

11 ¶¶ 239-255. In addition, the Trustee Action alleges counterclaims for breaches of the

12 duties of care, loyalty, and good faith, and for corporate waste. *See id.* ¶¶ 265-302.

13         The counterclaims in the Trustee Action seek damages arising from the D&O

14 Defendants' wrongful downstreaming from Bancorp to the Bank of $355 million

15 between September 2007 and May 2008. Those downstream transfers violated

16 Bancorp's policies requiring (i) advance approval of transactions by Bancorp's board

17 of directors and (ii) that Bancorp maintain adequate cash reserves. *See id.* ¶¶ 202-213.

18         The amount of damages asserted in the Trustee Action in respect of the

19 downstream transfers ($355 million) exceeds the total amount of insurance provided

20 under the First Year Tower and the Second Year Tower combined ($160 million).

21 The Insurers have denied coverage under the Second Year Tower Policies for all of

22 the claims against the D&O Defendants in the Trustee Action.

23         The D&O Defendants attempted to have the reference of the Trustee Action

24 withdrawn on both "mandatory" and "permissive" grounds under Judicial Code

25 section 157(d). Their efforts failed. *See Siegel v. Caldera*, No. 10-00179-RGK, 2010

26 U.S. Dist. LEXIS 34355 (C.D. Cal. Mar. 19, 2010). Of relevance here, the Court

27 considered and rejected the argument that the pending securities fraud lawsuits

28 justified withdrawal of the Trustee Action from the Bankruptcy Court. *See id.* at *12.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1      After this Court denied the D&O Defendants' motion to withdraw the reference

2  of the Trustee Action, the Bankruptcy Court ordered the Trustee and the D&O

3  Defendants to mediation and appointed the Hon. Daniel Weinstein (Ret.) as mediator.

4  *See* RJN Ex. "K."  Nearly all other parties with claims that implicated the First Year

5  Tower or the Second Year Tower, including the FDIC and plaintiffs in the *Tripp*

6  Litigation and other securities lawsuits, have participated in ongoing mediation for the

7  past six months.  The Insurers have also been parties to that mediation, and their

8  coverage position has stalled that global mediation.  *See* RJN Ex. "L."

9      **H.    The Trustee's Declaratory Relief Insurance Action.**

10      The Trustee maintains that the Insurers' position regarding the nature, extent,

11  and scope of the insurance coverage under the Second Year Tower – coverage that

12  Bancorp paid a substantial sum to acquire before its bankruptcy – is wrong.

13  Accordingly, on February 2, 2011, the Trustee filed the Trustee's Insurance Action in

14  the Bankruptcy Court, seeking a declaration that the claims asserted in the Trustee

15  Action are covered by the Second Year Tower Policies.

16      On March 21, 2011, the Insurers filed two motions to dismiss the Trustee's

17  Insurance Action in the Bankruptcy Court, which that court has not yet heard.  *See*

18  RJN Exs. "M" & "N."  Then, on March 28, 2011, the Insurers filed two of the four

19  instant Motions to withdraw the reference to the Bankruptcy Court.

20      **I.    The Other Declaratory Relief Actions.**

21      In addition to the Trustee's Insurance Action, two other pending matters relate

22  to the D&O coverage provided under the insurance policies Bancorp purchased.

23      First, on February 23, 2011, IndyMac MBS, Inc. ("MBS"), an affiliate of the

24  Bank that the FDIC controls, filed a declaratory relief action against certain insurers

25  and former Bancorp officers and directors in the Los Angeles County Superior Court.

26  On March 16, 2011, Michael Perry removed that action to the Bankruptcy Court

27  where it is pending as the FDIC's Insurance Action.  *See* Lewis Decl. Ex. 3 & Daniels

28  Decl. Ex. 7 (MBS's underlying complaint).  On March 31, 2011, the complaint in the

FDIC's Insurance Action was amended to include the Trustee as a party defendant, and MBS consented to entry of a final order by the Bankruptcy Court.  *See* RJN Ex. "O."  The relief requested in the FDIC's Insurance Action is directly inconsistent with the relief requested in the Trustee's Insurance Action, which the Trustee intends to address by way of cross- and counter-claims to MBS's amended complaint in that litigation.  On April 7 and April 8, 2011, the Insurers filed the other two of the four instant Motions to withdraw the reference.

Second, on January 12, 2011, in a blatant effort to shop for an alternative forum, ACE American Insurance ("ACE") commenced a declaratory relief action against certain former Bancorp officers and directors (but *not* the Trustee) in the Los Angeles County Superior Court.  This action sought a judicial determination that ACE had no obligation to provide coverage under the Second Year Tower Policies in respect of the claims in the Trustee Action or otherwise.  On February 2, 2011, the Trustee's counsel transmitted correspondence advising ACE's counsel that filing the complaint violated the automatic stay arising in Bancorp's bankruptcy case and requesting that the complaint be dismissed.  *See* the accompanying *Declaration of Martin R. Barash* ("Barash Decl.") ¶ 2 & Ex. "Y."

On February 20, 2011, the Bancorp directors named as defendants in the ACE action filed a notice of removal, removing that action to Bankruptcy Court as Adversary Proceeding number 2:11-ap-01511-BB.  *See* RJN Ex. "P" (notice of removal and the underlying complaint).  On March 3, 2011, ACE filed a notice of voluntary dismissal of the removed adversary proceeding.  RJN Ex. "Q."

Within seven days of that dismissal, ACE and certain other "Side A-only" insurance carriers filed a *Complaint for Declaratory Relief* in the District Court for the Central District of California, thereby commencing Case No. 11-02078-GHK-JCG (the "Side A Coverage Action").  *See* Lewis Decl. Ex. 2 & Daniels Decl. Ex. 8.  The Side A Coverage Action seeks essentially the same relief as did ACE's prior state court action.  On March 15, 2011, the Trustee's counsel transmitted correspondence

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

advising that the filing of the Side A Coverage Action violated the automatic stay and requesting that the complaint be dismissed.  *See* Barash Decl. ¶ 3 & Ex. "Z." Notwithstanding this notice of stay violation, the Side A Coverage Action remains pending.  The Trustee has moved to intervene in the Side A Coverage Action and to refer it to the Bankruptcy Court pursuant to Judicial Code section 157(a) and this Court's General Order No. 266.  RJN Exs. "R" & "S."  District Judge King recently entered an order staying briefing on the Trustee's motions, expressing concerns about the Side A Coverage Action plaintiffs possibly forum shopping, and requiring that the plaintiffs show cause for why their action should not be dismissed.  *See* RJN Ex. "T."

## III.   ARGUMENT

Judicial Code sections 157 and 1334 establish the legal structure for federal bankruptcy jurisdiction.  These sections invest district courts with jurisdiction over all bankruptcy cases, as well as disputes "arising in" or "related to" such cases, but permit district courts to order "that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 *shall be referred* to the bankruptcy judges for the district."  28 U.S.C. § 157(a) (emphasis added).  This Court has implemented such automatic and mandatory referral of all bankruptcy cases and all bankruptcy-related matters with its General Order No. 266.

Pursuant to Judicial Code section 157(d), this "court *may* withdraw, in whole or in part, any case or proceeding referred under this section . . . *for cause shown*."  28 U.S.C. § 157(d) (emphasis added).  The statute does not define what constitutes "cause" to withdraw the reference.  *See Sec. Farms v. Int'l Bd. of Teamsters*, 124 F.3d 999, 1008-09 (9th Cir. 1997).  Instead, Ninth Circuit courts weigh several factors in evaluating whether "cause" exists, including: (i) whether the action is core or non-core, (ii) the efficient use of judicial resources, (iii) guarding against forum shopping, (iv) delay and costs to the parties, and (v) uniformity of bankruptcy administration. *See id.*; *see also, e.g.*, *Daewoo Motor Am., Inc. v. Gulf Ins. Co. (In re Daewoo Motor Am., Inc.)*, 302 B.R. 308, 310 (C.D. Cal. 2003) (reciting similar list of factors).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

When applying these factors, "[t]he burden of persuasion is on the party seeking withdrawal." *FTC v. First Alliance Mortg. Co. (In re First Alliance Mortg. Co.)*, 282 B.R. 894, 902 (C.D. Cal. 2001). The need for the Insurers to present compelling "cause" is "not an empty requirement." *Dionne v. Simmons (In re Simmons)*, 200 F.3d 738, 741 (11th Cir. 2000). To the contrary, because the Motions seek to circumvent the Judicial Code's carefully crafted system of bankruptcy jurisdiction, the Insurers' showing of "cause" must include "truly exceptional and compelling circumstances." *Chrysler Credit Corp. v. Fifth Third Bank (In re Onyx Motor Car Corp.)*, 116 B.R. 89, 91 (S.D. Ohio 1990). Withdrawal of the reference is a notable "exception to the rule," one not intended to be an "escape hatch" out of bankruptcy courts. *See, e.g.*, *Official Comm. of Unsecured Creditors v. Neumann (In re Neumann Homes, Inc.)*, 414 B.R. 383, 387 (N.D. Ill. 2009). This is because, as the Ninth Circuit has repeatedly instructed, federal bankruptcy courts are best suited to resolve any bankruptcy-related matters. *See Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 787-88 (9th Cir. 2007) ("As has been explained before, this system promotes judicial economy and efficiency by making use of the bankruptcy court's unique knowledge of Title 11 and familiarity with the actions before them.").

Here, *none* of the relevant factors weigh in favor of permissive withdrawal of the reference,[3] and there are no "truly exceptional and compelling circumstances" presented. In fact, as shown below, the factors balance strongly against the Motions.

---

[3] The A-Side Insurers make a half-hearted suggestion that *mandatory* withdrawal is required because the FDIC's Insurance Action "*appears* to allege that federal securities law *may* require that the plaintiffs in the underlying securities action prove" certain things. *See* A-Side FDIC Mot. at 8 n.3 (emphasis added). This flimsy assertion fails to make a threshold showing of "the required minimum likelihood that resolution of the claims begs for more than straight forward application of facts to well-established federal law," and thus does not compel mandatory withdrawal. *Siegel v. Caldera*, 2010 U.S. Dist. LEXIS 34355, at *11. *In re Daisy Sys. Sec. Litig.*, 132 B.R. 752, 756 (N.D. Cal. 1991), which is cited by the A-Side Insurers, is inapposite because that case did not involve a dispute over coverage but over the relative merits of two securities and derivative lawsuits.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

**A.     Although The Determination Should Be Made By The Bankruptcy Court In The First Instance, This Litigation Involves "Core" Bankruptcy Matters.**

Whether a particular matter is "core" or "non-core" is perhaps the most important element in a court's consideration of whether to withdraw the reference, and it often is the first factor considered. *See, e.g.*, *Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc.*, 355 B.R. 214, 223 (D. Haw. 2006). Furthermore, because "core" proceedings go to the heart of the administration of bankruptcy cases, district courts are rightfully disinclined to withdraw their reference of such matters. *Id.*

Here, the core/non-core element is *the* central focus of all four Motions. *See* ABC Tr. Mot. at 13:17-15:22; A-Side Tr. Mot. at 7:16-9:5; ABC FDIC Mot. at 7:23-12:15; A-Side FDIC Mot. at 9:1-14:13. In fact, the Insurers' analysis of other relevant factors rests on and reduces to this one element. *See, e.g.*, ABC Tr. Mot. at 22:20-25:2 (judicial economy, forum shopping, uniformity, and conservation arguments all premised on assumed "non-core" status); A-Side Tr. Mot. at 16:10-19:6 (same). The Insurers' emphasis on this issue is surprising, though, because the core/non-core element is both procedurally and substantively fatal to the Motions.[4]

At the outset, the Motions are procedurally defective because the Bankruptcy Court has not yet made the required threshold determination whether the Adversary Proceedings are core or non-core. *See, e.g.*, 28 U.S.C. § 157(b)(3) (providing that "*the bankruptcy judge shall determine*, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding" (emphasis added)); *Foothill Capital*

---

[4]   Although the Insurers focus on the substantive question of core versus non-core, the case law is clear that non-core status alone is insufficient to meet the Insurers' burden of proving "cause" for withdrawal. *See, e.g.*, *Toprak Co. v. Global Printing Equip., Inc. (In re Global Printing Equip., Inc.)*, No. 10-826, 2010 U.S. Dist. LEXIS 89936, at *4 (D.N.J. Aug. 31, 2010); *Daewoo Motor Am.*, 302 B.R. at 313. Indeed, the structure of Judicial Code section 157(c) itself evidences a default expectation that *both* core and non-core matters will usually be adjudicated in a bankruptcy court. Thus, the Insurers' decision to put essentially all their eggs in the "non-core" basket cannot carry the Motions in any event.

14

*Corp. v. Clare's Food Mkt. (In re Coupon Clearing Serv.)*, 113 F.3d 1091, 1097 (9th Cir. 1997) ("The bankruptcy court makes the initial determination whether a case is a core proceeding or an otherwise related proceeding."); *In re Int'l Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994) (noting how core/non-core analysis is "a determination to be made in the first instance by the bankruptcy court"); *Travelers Cas. & Sur. Co. v. Dunmore (In re Dunmore Homes, Inc.)*, No. 09-499, 2009 U.S. Dist. LEXIS 29083, at *16 (E.D. Cal. Apr. 1, 2009) (declining to withdraw reference where the bankruptcy court had not made this initial determination); *Willms v. Sanderson Cmtys., Inc.*, No. 07-2366, 2009 U.S. Dist. LEXIS 24990, at *3-4 (E.D. Cal. Mar. 19, 2009) (same).

Judicial Code section 157(b)(3)'s statutory requirement that the Bankruptcy Court make the core/non-core determination in the first instance exists to enable that specialized court to treat similarly situated claims in a consistent manner, prevent the risk of inconsistent decisions, and promote the efficient use of both judicial and estate resources by having the court most familiar with a case decide this often complex issue. *See, e.g.*, *Zond Minn. Const. Co. v. Marathon Elec. Mfg. Corp. (In re Enron Corp.)*, No. 04-7950, 2005 U.S. Dist. LEXIS 2132, at *11-12 (S.D.N.Y. Feb. 14, 2005) (denying motion to withdraw the reference as premature and detailing why bankruptcy courts should make the initial core/non-core determination, including those courts being "better situated to assess whether [the subject] proceeding is independent of the bankruptcy proceeding"). Thus, at a bare minimum, the Court should deny the procedurally improper Motions until after the Bankruptcy Court has determined whether the Adversary Proceedings are core.

More fundamentally, assuming the Court is willing to consider the issue at this early juncture, this litigation involves "core" bankruptcy matters in many respects.[5]

---

[5]  Because the FDIC/MBS is adverse to the Trustee regarding whether the insurance policies and proceeds are property of the Estate, and further is not sensitive to the Trustee's need to administer that Estate, it is not surprising that the complaint in the FDIC's Insurance Action alleges that the matter is non-core. This allegation certainly is not binding on the Trustee, and, as detailed in the text, it is incorrect.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

**1.    This Litigation Requires A Determination Of The Nature, Scope, And Extent Of The Estate's Property Interests.**

A central question to be resolved in the Adversary Proceedings is the extent to which the relevant insurance policies and/or their proceeds are property of the Bancorp Estate. Ninth Circuit case law makes clear that "determining the nature and extent of property of the estate is also a fundamental function of a bankruptcy court. . . . [and] fundamental to the administration of a bankruptcy case," which makes such determinations "core" under the Judicial Code. *John Hancock Mut. Life Ins. Co v. Watson (In re Kincaid)*, 917 F.2d 1162, 1165 (9th Cir. 1990) (quoting *In re Kincaid*, 96 B.R. 1014, 1017 (B.A.P. 9th Cir. 1989)); *see also, e.g.*, *PBGC v. Cont'l Airlines, Inc. (In re Cont'l Airlines)*, 138 B.R. 442, 445 (D. Del. 1992) ("The determination of the property of the estate is one of the core proceedings arising under title 11.").

In fact, "determination of what constitutes property of the bankruptcy estate is inherently an issue to be determined by the bankruptcy court," *In re Fisher*, 67 B.R. 666, 668 (Bankr. D. Colo. 1986), and implicates modes of analysis with which bankruptcy courts are quite familiar.[6] The fact that resolution of these ownership issues may require some reference to state law does not, as the Insurers repeatedly suggest, alter this conclusion. *See, e.g.*, 28 U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."); *Knopfler v. Schraiber (In re Schraiber)*, 97 B.R. 937, 940-41 (Bankr. N.D. Ill. 1989) (explaining, in context of finding proceedings to be "core," that "analysis of state law issues to decide cases within our

---

[6]    *See, e.g.*, *In re First Assured Warranty Corp.*, 383 B.R. 502, 541 (Bankr. D. Colo. 2007) ("Generally, a dispute over whether an asset is property of a debtor's estate should and must be resolved in favor of this Court's jurisdiction."); *Rare, LLC v. Marciano (In re Rare, LLC)*, 298 B.R. 762, 764 (Bankr. D. Colo. 2003) ("[I]t lies within the exclusive province of the bankruptcy courts to determine what interests are part of the estate."); *Brogan v. Ascher*, 128 B.R. 639, 643 (Bankr. N.D. Ill. 1991) ("[A] determination of what is property of the estate and concurrently, of what is available for distribution to creditors of that estate, is precisely the type of proceeding over which the bankruptcy court has exclusive jurisdiction.").

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

jurisdiction is an integral part of the daily work of the Bankruptcy Court" and noting that "much of its work would grind to a halt" under a contrary rule).

The Insurers argue vehemently and at some length that the relevant insurance policies are not Bancorp's property or are of very limited scope. *See, e.g.*, ABC Tr. Mot. at 16:20-22:1; A-Side Tr. Mot. at 9:6-13:10; ABC FDIC Mot. at 13:1-17:2; A-Side FDIC Mot. at 11:5-13:2. Although it should not be germane at this juncture because the question before this Court is only *whether* a dispute exists on the question of core versus non-core and on the underlying merits (both issues that should be addressed first by the Bankruptcy Court), the Trustee strongly disagrees with these assertions, interpretations, and conclusions.[7] The important point is that there is a

---

[7] As the Bankruptcy Court already correctly found, the Estate has property interests in all the D&O insurance *policies* – contracts for which Bancorp paid and to which it is a party. *See, e.g.*, *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir. 1993) ("Insurance policies are property of the estate because, regardless of who the insured is, the debtor retains certain contract rights under the policy itself."); *Morris v. Nat'l Union Fire Ins. Co. (In re Eastwind Grp., Inc.)*, 303 B.R. 743, 746 (Bankr. E.D. Pa. 2004) ("Because corporations pay for and own insurance policies, courts considering the question have concluded that the *policies* are property of the estate pursuant to 11 U.S.C. § 541(a)(1)."). As explained in the text, the Estate also has an interest in the *proceeds* of those policies, both as a matter of statutory bankruptcy law, *see* 11 U.S.C. § 541(a)(6), and because, *inter alia*, there are scenarios in which the Estate will be more valuable with the proceeds than without. *See, e.g.*, *Minoco Grp. of Cos. v. First State Underwriters Agency of New England Reinsurance Corp. (In re Minoco Grp. of Cos.)*, 799 F.2d 517, 519-20 (9th Cir. 1986); *Metro. Inv. Sec., Inc. v. Cauvel (In re Metro. Mortg. & Sec. Co.)*, 325 B.R. 851, 856-57 (Bankr. E.D. Wash. 2005); *In re Sacred Heart Hosp.*, 182 B.R. 413, 419-21 (Bankr. E.D. Pa. 1995); *In re Circle K Corp.*, 121 B.R. 257, 260-61 (Bankr. D. Ariz. 1990). Contrary to the Insurers' suggestion, the decision in *Pintlar Corp. v. Fidelity & Casualty Co. (In re Pintlar Corp.)*, 124 F.3d 1310 (9th Cir. 1997), is not dispositive of this issue because the holding in that case turned on the subsequent replacement of the debtor by a third party trust, a fact-pattern not presented here. *See id.* at 1313. Moreover, *Pintlar Corp.* did not include the presence of indemnity claims against an estate. *See also* RJN Ex. "R" at 19 n.7 (further discussing different posture of *Pintlar*). In all events, the Bankruptcy Court is already familiar with these substantive issues and opinions and is the proper court to resolve their application here.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1    very deep, unresolved, and substantive dispute over what is or is not property of the

2    Bancorp Estate, as well as about the legal nature and scope of that property.  These

3    substantive issues should not be resolved in the context of a procedural motion, such

4    as the instant Motions to withdraw the reference.  Even more importantly, judicial

5    consideration of the parties' conflicting positions and resolution of the issues

6    presented regarding Bancorp's asserted property interests is a deeply "core" task, one

7    that rightfully belongs in the Bankruptcy Court.

8              **2.     This Litigation Affects The Pool Of Claims Against The Estate,**

9                    **As Well As The Trustee's Ability To Pay Those Claims.**

10          These actions are further "core" because they substantially and directly affect

11    the Trustee's ability to address and satisfy claims against Bancorp's Estate.

12          <u>First</u>, as District Judge Koeltl explained in the context of a strikingly similar

13    dispute about withdrawal of a trustee's insurance coverage action, resolution of this

14    core "dispute will determine whether the debtor will be subject to the indemnification

15    claims of the Directors and Officers, potentially reducing the estate for other creditors,

16    or whether the insurance proceeds will fund such indemnification expenses."  *Cohen*

17    *v. Nat'l Union Fire Ins. Co. (In re Cnty. Seat Stores)*, No. 01-2966, 2002 U.S. Dist.

18    LEXIS 1555, at *15-16 (S.D.N.Y. Jan. 25, 2002) (hereinafter, "*County Seat Stores*").

19          The Insurers engage in some remarkable mental gymnastics in their efforts to

20    conjure up scenarios – unsupported by evidence – in which D&O coverage *might* not

21    affect the Estate's indemnification obligations to the D&O Defendants.  *See* ABC Tr.

22    Mot. at 18:10-19:23; A-Side Tr. Mot. at 11:6-13:4; ABC FDIC Mot. at 14:3-17:2.  As

23    with the underlying substantive questions about what is "property of the estate," the

24    Motions are an inappropriate vehicle by which to address these complex issues.

25    Nevertheless, the Insurers' speculative positions are incorrect.

26          The "ABC" policies directly cover Bancorp itself for indemnity claims the

27    D&O Defendants *have already asserted* in their proofs of claim against the Estate in

28    connection with the pending securities class action suits and other litigations; thus,

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

they are extremely likely to eliminate or reduce the size of those indemnity claims. The fact that such claims have not yet been adjudicated or paid is irrelevant. *See, e.g.*, *In re Leslie Fay Cos.*, 207 B.R. 764, 785 (Bankr. S.D.N.Y. 1997) ("[T]he debtors have an interest in those proceeds because of the possibility that the class action might deplete the policy and theoretically force claims for indemnification to fall upon the estate."); *In re Sacred Heart Hosp.*, 182 B.R. at 420 (holding that estate had an "indemnification interest in proceeds" where "payment of either type of claim would have diminished the pot, and arguably exposed the debtor to claims which otherwise might have been paid by the insurer"); *In re Circle K Corp.*, 121 B.R. at 261-62 (finding proceeds to be estate property due to possible indemnity coverage, even though "the insurers have reserved their rights not to defend or pay" and even though the debtor had not yet made payments; the key fact was that "[i]n certain instances, debtor can make a claim for reimbursement for indemnification claims paid"). Contrary to the Insurers' suggestions (for example, in ABC FDIC Mot. at 14:3-17:11), even if the Trustee's asserted interests in the Side B or Side C proceeds somehow were characterized as "novel" or "contingent," this would not exclude such interests from Congress' broad definition of estate property, let alone from the even broader matters that could *affect* the Estate. *See, e.g.*, *United States v. Sims (In re Feiler)*, 218 F.3d 948, 955-56 (9th Cir. 2000).[8]

Moreover, there is nothing "theoretical" or "speculative" about the fact that the

---

[8]  Importantly, virtually all of the cases relied upon for this point involve the entirely different issue of *bankruptcy courts* granting relief from the automatic stay *notwithstanding* the estate's interest in the proceeds. For example, in *Groshong v. Sapp (In re MILA, Inc.)*, 423 B.R. 537, 544-45 (B.A.P. 9th Cir. 2010), the panel affirmed, under an abuse of discretion standard, the bankruptcy court's granting of relief from stay where the debtor's interests in Side B coverage were remote. This equitable balancing of harm applies *only where the interests are estate property in the first instance*. *See, e.g.*, *In re Cybermedica, Inc.*, 280 B.R. 12, 16-20 (Bankr. D. Mass. 2002) (finding both D&O policies and all proceeds to be estate property, but nevertheless granting relief from stay based upon relative hardships). The Insurers' attempt to conflate analytically distinct issues is regrettable.

19

1   Estate is facing indemnification claims, and the precise timing of payment in no way

2   diminishes the Estate's core interests in the proceeds.  *See, e.g.*, *In re Metro. Mort. &*

3   *Sec. Co.*, 325 B.R. at 857 (finding proceeds to be estate property despite the non-

4   occurrence of contingencies required to reduce coverage to a monetary amount).  The

5   fact that these claims were nominally filed out of an asserted "abundance of caution"

6   (*see, e.g.*, ABC FDIC Mot. at 5:18-22) does nothing to diminish the fact that massive

7   indemnity claims have actually been asserted.  Similarly, the fact that proceeds may

8   be payable to the D&O Defendants as well does not diminish the Estate's rights.  *See,*

9   *e.g.*, *Exec. Risk Indem., Inc. v. Boston Reg'l Med. Ctr., Inc. (In re Boston Reg'l Med.*

10  *Ctr., Inc.)*, 285 B.R. 87, 92 n.5 (Bankr. D. Mass. 2002) (rejecting suggestion that

11  indemnity coverage was not a corporate protection based upon who received

12  payments; noting that "the coverage is the entity's, and it inures in no small part to the

13  entity itself by protecting the assets of the entity"); *Aetna Cas. & Sur. Co. v. Jasmine,*

14  *Ltd. (In re Jasmine, Ltd.)*, 258 B.R. 119, 128 (D.N.J. 2000) (similarly rejecting this

15  argument where debtor "had an indemnification interest in the proceeds, and the

16  proceeds are property of the estate and subject to the authority of the trustee").

17          Likewise, even assuming that distributions from the "Side A-only" policies do

18  not immediately affect the size of the D&O Defendants' remaining indemnity claims

19  – a result contrary to the terms and intended function of those policies – interpretation

20  of the Tripp Exclusion and the Interrelated Wrongful Acts exclusion could

21  nevertheless increase the Estate's exposure to the D&O Defendants' indemnification

22  claims.  This is because the Estate has coverage for claims against it under the 2007-

23  2008 policies that *also* provide Side B and Side C coverage (i.e., the first $40 million

24  of coverage under the First Year Tower).  The Side A-only insurers claim that the

25  D&O Defendants' claims for *all* pending litigation must be covered under the 2007-

26  2008 policies, not the 2008-2009 policies.  Funding defense costs, settlements, and

27  judgments from the 2007-2008 policies undermines the Estate's coverage as an

28  insured because the policies are depleting.  *Cf. GunnAllen Fin., Inc. v. U.S. Specialty*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

20

*Ins. Co. (In re GunnAllen Fin., Inc.)*, No. 10-2855, 2011 U.S. Dist. LEXIS 14997, at *10-11 (M.D. Fla. Feb. 3, 2011) (finding that estate representative had standing to sue insurers and that reference should not be withdrawn where "it appears possible that [the debtor] could recover under the insurance policies"). It is misleading for any of the Insurers to suggest that their coverage will have *no* ramifications on the size and nature of indemnification claims remaining against the Estate. It remains to be seen precisely how all of the litigation and claims against Bancorp and the directors and officers will be resolved, which makes the Insurers' broad assertions about what will occur under *16 different policies* covering multiple years rank speculation at best.[9]

Second, as was also true in *County Seat Stores*, D&O Insurance proceeds used to pay judgments against the D&O Defendants in the underlying Trustee Action "may also be the most important asset of the estate." *See* 2002 U.S. Dist. LEXIS 1555, at *16. Thus, recovery of those proceeds directly and materially impacts the Estate and the Trustee's concomitant ability to make distributions to creditors. These are very "core" tasks. *See, e.g.*, *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 563, 114 S. Ct.

---

[9] The Insurers make much of the fact that the FDIC's Insurance Action includes claims against non-debtors, in addition to claims directly against the Trustee. *See* ABC FDIC Mot. at 11:5-12; A-Side FDIC Mot. at 1:18-22. Yet an action may be core even when the *only parties* to it are non-debtors. *See, e.g.*, *Pierce v. Conseco Fin. Serv. Corp. (In re Lockridge)*, 303 B.R. 449, 456 (Bankr. D. Ariz. 2003). As Judicial Code section 157(b)(3) makes clear, an action can obviously be core when the estate itself is a party, even on state law causes of action. Faced with this fact, the Insurers cite various inapposite cases to support their assertions that connections between the Adversary Proceedings and the Estate are too "attenuated" to be "core." For example, the litigation claims at issue in *In re Cinematronics, Inc.*, 916 F.2d 1444 (9th Cir. 1990) (cited in ABC Tr. Mot. at 14:10-11 and ABC FDIC Mot. at 22:20-23), were between two nondebtors, "and the debtor [wa]s not involved." *See* 916 F.2d at 1450. Similarly, *Bank of the West v. Bradley Chevrolet (In re Britt)*, 2007 WL 4867921 (B.A.P. 9th Cir. Nov. 2007) (cited in ABC Tr. Mot. at 14:8-9 and ABC FDIC Mot. at 11:5-7), involved litigation solely between a bank and an auto dealer; the debtor itself was once again not a party. Such a posture is obviously materially different from the posture here, where the Trustee is a named party to both of the Adversary Proceedings and is the lone plaintiff in the Trustee's Insurance Action.

1757, 1774, 128 L. Ed. 2d 556, 580 (1994) (noting how "obtaining a maximum and equitable distribution for creditors" is among the policies that "the Court has often said are at the core of federal bankruptcy law"); *Straton v. New*, 283 U.S. 318, 320-21, 51 S. Ct. 465, 466, 75 L. Ed. 1060, 1087 (1931) (explaining that the "purpose" of federal bankruptcy law "is to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors").

Third, as was also the case in *County Seat Stores*, it will "be difficult for the Trustee to decide questions relating to the distribution of assets among creditors without a decision in" the Adversary Proceedings, including because "[a]ny attempt to distribute funds from the estate in advance of a resolution of [these Adversary Proceedings] could lead to inequitable distributions later. Hence, the Bankruptcy Court would have great difficulty administering an orderly and equitable distribution of the estate's assets without determining whether this asset was in fact available." 2002 U.S. Dist. LEXIS 1555, at *16; *see also, e.g.*, *In re Boston Reg'l Med. Ctr.*, 285 B.R. at 97 (describing similar difficulties with ensuring equitable distributions from insurance proceeds and estate assets). As noted above, the difficulties associated with marshalling the insurance proceeds to ensure fair and equitable distributions from the Estate are unaffected by the exact moment at which D&O Insurance coverage arises. Even if the Trustee does not receive all the *proceeds* directly, the payment and application of those proceeds is something that directly impacts the value and administration of the Estate. Thus, unless and until the precise nature and scope of Bancorp's interests are determined, it will be extraordinarily difficult for the Trustee or the Bankruptcy Court to make distributions from the Estate, including, without limitation, with respect to the D&O Defendants' pending indemnity claims.[10]

---

[10] Although the Insurers suggest otherwise, the law is clear that the Trustee, as the fiduciary responsible for the Bancorp Estate (and successor to the purchaser of the policies), has standing as a plaintiff to ensure that the insurance policies for which Bancorp paid millions of dollars are interpreted correctly. *See, e.g.*, *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co.*, 873 F.2d 229, 230-32 (9th Cir. 1989) (holding that savings and loan association had the ability to pursue declaratory relief with

*(Footnote continued on next page)*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1    The direct threats that a possible lack of D&O Insurance coverage presented to

2    core bankruptcy functions in *County Seat Stores* rendered coverage litigation in that

3    matter "core" and militated against withdrawal of the reference. *See id.* at *17; *accord*

4    28 U.S.C. § 157(b)(2)(A) & (O).[11]  The ability of the Bankruptcy Court and the

5    Trustee to administer this Estate is equally affected by the availability of insurance

6    coverage *vel non* under the contracts for which Bancorp paid millions of dollars.

7    Thus, just as in *County Seat Stores*, the Trustee's Insurance Action is a "core"

8    proceeding, and the materially overlapping FDIC's Insurance Action is similarly core.

### 3.    This Litigation Implicates The Automatic Stay.

10    The Trustee maintains that certain Insurers' filing of competing declaratory

11    judgment actions in courts other than the Bankruptcy Court violated the automatic

12    stay associated with the Bancorp case insofar as the plaintiffs in those actions were

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

respect to scope of D&O Insurance it purchased, including because that determination could assist with settlement efforts); *accord Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273-75 (10th Cir. 1989); *Rubins Contractors, Inc. v. Lumbermens Mut. Ins. Co.*, 821 F.2d 671, 673-74 (D.C. Cir. 1987); *ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 822-23 (3d Cir. 1981).

[11] The Insurers attempt to cut sections 157(b)(2)(A) and 157(b)(2)(O) out of the Judicial Code on a wholesale basis, relying on *In re Castlerock Properties*, 781 F.2d 159 (9th Cir. 1986), as their primary authority.  *See* ABC Tr. Mot. at 14:2-15:7; A-Side Tr. Mot. at 8:7-9:5; ABC FDIC Mot. at 10:1-11:4; A-Side FDIC Mot. at 10:3-11:1.  What the Insurers do not tell the Court, however, is that the Ninth Circuit has subsequently explained and clarified the *Castlerock* holding, expressly *rejecting* a "broad" reading of that decision and noting how "it certainly does not entirely eliminate subsections (A) and (O) of the statute from ever providing core proceeding jurisdiction to bankruptcy courts over state law contract claims." *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 740 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 3413 (2010).  Here, as in *Harris*, the Adversary Proceedings do not "arguably" fall into the scope of these provisions, but are directly captured because the lawsuits affect how the Bancorp Estate will be administered for the reasons explained in *County Seat Stores*.  *See id.*  Similarly, the Insurers are unable to articulate any compelling Article III concern with the Bankruptcy Court adjudicating this matter.  Thus, as in *Harris*, "*Castlerock* does not apply," and the Court can comfortably find the Adversary Proceedings to be core under either section 157(b)(2)(A) or section 157(b)(2)(O).  *See id.* at 739-41.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1   attempting to exercise control over property of the Estate, which is forbidden by the

2   stay.  *See* 11 U.S.C. § 362(a)(3); Barash Decl. Exs. "Y" & "Z."  Actions to enforce or

3   modify the stay are core proceedings.  *See* 28 U.S.C. § 157(b)(2)(A) & (G).

4   Moreover, the automatic stay is one of the most fundamental protections offered to

5   debtors in bankruptcy cases.  *See, e.g.*, *Boucher v. Shaw*, 572 F.3d 1087, 1092 (9th

6   Cir. 2009) ("The automatic stay is fundamental to bankruptcy law.").  As a result,

7   matters relating to the automatic stay are, more so than other proceedings, arguably

8   among the most "core."  *See, e.g.*, *In re TM Carlton House Partners*, 93 B.R. 859, 872

9   (Bankr. E.D. Pa. 1988) (concluding that "a proceeding to enforce the automatic stay

10  . . . is incontestably core").  The Bankruptcy Court is plainly in the best position to

11  resolve this issue in connection with its comprehensive consideration and resolution of

12  both of the instant Adversary Proceedings and, therefore, the reference to that court

13  should not be withdrawn.

14      In multiple respects, the Adversary Proceedings implicate issues at the "core"

15  of the Bankruptcy Court's delegated powers and function.  Both actions involve the

16  interpretation of protective contracts that Bancorp paid millions of dollars to acquire.

17  The availability of proceeds under those policies will be of tremendous significance to

18  the administration of the Estate.  The Insurers are well aware of this, which is why

19  they have gone to such lengths to avoid adjudication in the Bankruptcy Court, and

20  have violated the automatic stay in the process.  As a result, the "core" factor strongly

21  weighs in favor of leaving the bankruptcy reference in place.

22      **B.    Withdrawal Of The Reference Would Be Inefficient And Contrary**

23  **To Judicial Economy In Several Different Respects.**

24      The Ninth Circuit has made clear that withdrawal of the reference should be

25  denied when it would result in "an inefficient allocation of judicial resources,"

26  particularly when "the bankruptcy court [i]s more familiar with the facts and issues of

27  the case."  *In re Canter*, 299 F.3d 1150, 1154 (9th Cir. 2002).  After all, a hasty

28  withdrawal could "negatively impact[] bankruptcy administration by needlessly

24

disrupting the bankruptcy court's seamless processing of the case." *Id.* This is not a new rule; the Ninth Circuit long ago recognized a strong policy interest in *consolidating*, rather than *splintering*, related litigation. *See Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979). That policy interest is even stronger in bankruptcy cases, and multiple considerations of judicial economy weigh heavily against the Motions.

First, the underlying Trustee Action that would provide the basis for insurance coverage has been pending in the Bankruptcy Court for almost a year and a half. *See* RJN Ex. "U" (ECF docket sheet for the Trustee Action). That time has allowed the Bankruptcy Court to become knowledgeable about the complex facts and legal issues the Trustee Action implicates. The Bankruptcy Court has ruled on three motions to dismiss and one motion (by the FDIC) to intervene. *See id.* The Bankruptcy Court's existing knowledge about the matter will only continue to grow as the Trustee Action proceeds to trial. As a result of this expanding foundation of knowledge and familiarity, there can be no question that the Bankruptcy Court is best situated to resolve other matters related to the claims in the Trustee Action, such as whether those claims implicate insurance coverage under the Second Year Tower.

Bifurcating these obviously related matters into separate proceedings before separate courts and on separate tracks (including for discovery, motion practice, trial, and potential appeals) would be wasteful and inefficient, and would also raise palpable concerns about conflicting or inconsistent rulings. In similar circumstances, numerous courts have declined to withdraw the bankruptcy reference of insurance coverage actions in order to conserve everyone's resources and avoid creating these unnecessary problems. *See, e.g.*, *Centrix Fin. Liquidating Trust v. Nat'l Union Fire Ins. Co. (In re Centrix Fin., LLC)*, No. 09-01542, 2011 U.S. Dist. LEXIS 3247, at *16-19 (D. Colo. Jan. 7, 2011) (declining to withdraw reference of insurance litigation due to efficiencies stemming from the fact that "the Bankruptcy Court is in a better position to oversee the discovery process in this matter, seeing as the basis for plaintiffs' claim for insurance will largely overlap with the facts underlying" another pending proceeding before it);

25

*Travelers Cas. & Sur. Co. v. Skinner Engine Co. (In re Am. Capital Equip., LLC)*, 325 B.R. 372, 378-80 (W.D. Pa. 2005) (same); *Exec. Risk Indem., Inc. v. Brooks (In re Jackson Brook Inst., Inc.)*, 280 B.R. 779, 785-86 (D. Me. 2002) (same); *County Seat Stores*, 2002 U.S. Dist. LEXIS 1555, at *18-20 (same); *EquiMed, Inc. v. Steadfast Ins. Co. (In re EquiMed, Inc.)*, 254 B.R. 347, 351 (D. Md. 2000) (same); *Fed. Ins. Co. v. Sheldon*, 167 B.R. 15, 21 (S.D.N.Y. 1994) (affirmatively referring trustee's D&O insurance coverage litigation to bankruptcy court where "the bankruptcy court is fully familiar with the facts underlying this dispute" and was "in a better position than this Court to assess the issues involving the insurance policy and the extent of its coverage" as a result of the bankruptcy court's presiding over the underlying litigation matter).

On April 7, 2011, District Judge Wu, who is presiding over the only underlying litigation pending in this Court (i.e., the Tripp Litigation and the *Daniels* class action), entered an order declining to accept transfer of any of the insurance coverage actions. *See* RJN Ex. "V." Thus, there would not be similar judicial efficiencies possible in the District Court deciding the coverage matters, as a new District Court Judge would have to familiarize himself or herself with all the underlying litigation, including the complex Trustee Action. Put differently, the Bankruptcy Court is the only court with jurisdiction over all three coverage actions *and* one of the primary underlying matters.

The ABC Carriers try to turn the Bankruptcy Court's familiarity with the underlying Trustee Action into a *bad* thing, bizarrely suggesting that the Bankruptcy Court will be subject to some undefined "subtle influences," which will lead that court to deliberately reach the wrong result. *See* ABC FDIC Mot. at 23:3-27. None of the cited cases – all of which involved *bankruptcy courts* deciding substantive insurance-related disputes on the merits, not district courts suggesting that such decisions must be handled by a court without underlying litigation before it – support this illogical theory. In fact, as the many cases cited just above amply demonstrate, the Bankruptcy Court's familiarity with the underlying Trustee Action is *a significant factor **against*** withdrawal, not an argument for it. The Insurers cannot flip this truth on its head.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1     <u>Second</u>, beyond the underlying Trustee Action against the D&O Defendants, the

2     Bankruptcy Court has also presided over the Bancorp bankruptcy case and multiple

3     other adversary proceedings for nearly three years.  As a result, there are significant

4     economies to be realized by leaving the instant matters in that court.  *See, e.g.*, *Gecker*

5     *v. Marathon Fin. Ins. Co.*, 391 B.R. 613, 615-16 (N.D. Ill. 2008) (denying insurer's

6     motion to withdraw adversary proceeding where the main bankruptcy case "has been

7     pending for more than fifteen months," which gave the bankruptcy court "substantial

8     familiarity with the parties, their counsel, and the background issues of the case" and "a

9     significant base of knowledge from which to manage the next steps of the adversary

10    proceeding"); *Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.)*, 136 B.R.

11    59, 61-62 (S.D.N.Y. 1992) (similarly denying insurer's motion to withdraw insurance

12    coverage litigation because "[g]iven [Bankruptcy] Judge Brozman's familiarity with the

13    bankruptcy case involving Kenai, she is in the best position to monitor all the

14    proceedings related to that bankruptcy, including this adversary proceeding").  Indeed,

15    continued referral of this action to the Bankruptcy Court is consistent with Congress'

16    intent "to centralize disputes about a debtor's assets and legal obligations in the

17    bankruptcy courts."  *Phillips v. Congelton, L.L.C. (In re White Mt. Mining Co., L.L.C.)*,

18    403 F.3d 164, 169 (4th Cir. 2005); *see also, e.g.*, *In re Mercury Masonry Corp.*, 114

19    B.R. 35, 39 (Bankr. S.D.N.Y. 1990) (describing "the public's interest in centralizing

20    bankruptcy proceedings in the bankruptcy court where the case is pending").

21    <u>Third</u>, the Bankruptcy Court also has prior experience *specifically related to the*

22    *relevant insurance policies*.  The Bankruptcy Court had to consider the terms of those

23    policies in some detail as part of the efforts by Bancorp's former directors and officers

24    to access the related proceeds notwithstanding the automatic stay.  The Bankruptcy

25    Court has subsequently exercised extensive supervisory control over the disbursement

26    of millions of dollars from the policies.  Accordingly, the Bankruptcy Court is fully "up

27    to speed" on the terms of the different policies, which should foster quicker resolution

28    of both of the Adversary Proceedings in that forum.  Once again, considerations of

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

efficiency undercut the Motions. *Cf. Hawaiian Airlines*, 355 B.R. at 223-24 (finding lack of "cause" for withdrawal of an adversary proceeding where the bankruptcy court was "already familiar with many of the circumstances relevant to the instant case" as a result of actions taken and orders entered in the main bankruptcy case).

Fourth, the parties to both Adversary Proceedings have filed joint status reports indicating that, at this time, they do not believe there are genuine issues of material fact and that these matters can be decided by summary judgment.  RJN Exs. "W" & "X." Given the Bankruptcy Court's prior experience with the parties and the issues, it makes obvious sense to have the Bankruptcy Court make the first ruling on any summary judgment motions.  Even assuming any such ruling will be only a report and recommendation to this Court under Judicial Code section 157(c), this Court will undoubtedly benefit from the Bankruptcy Court's condensing and summarizing the relevant factual issues, the key parts of a large record, and the pertinent authorities. *See, e.g.*, *In re Lissner Corp.*, 115 B.R. 604, 613 (N.D. Ill. 1990) (explaining how, under section 157(c)(1), "the parties enjoy the benefit of having a judge who is most familiar with all aspects of the bankruptcy and who enjoys expertise in questions of bankruptcy law hear the withdrawn matter in the first instance and recommend an appropriate disposition," and therefore, "referral of the withdrawn matter to the bankruptcy judge for a report and recommendation more fully protects the interests of the parties than does the rendering of a decision without the prior counsel of the bankruptcy court").

Fifth, the Bankruptcy Court is the most efficient single forum in which the Trustee's Insurance Action (pending in the Bankruptcy Court), the FDIC's Insurance Action (also pending in the Bankruptcy Court), and the Side A Coverage Action (currently pending in the District Court) should be consolidated and proceed apace. Even the Insurers recognize that it is efficient to consolidate *all* these actions. *See, e.g.*, ABC Tr. Mot. at 22:6-10; A-Side Tr. Mot. at 15:16-16:6; ABC FDIC Mot. at 18:1-10. And, as detailed in the Trustee's motion to refer the Side A Coverage Action, the Bankruptcy Court has *at least* "related to" jurisdiction over all three matters as a result

of their potential to affect the Trustee's affirmative recoveries and/or the viability of the D&O Defendants' indemnity claims, all of which will in turn directly impact administration of the Estate and distributions to creditors.[12]  The Insurers' contrary suggestion to consolidate these actions in this Court puts matters precisely backwards.

At day's end, "Congress intended to have bankruptcy proceedings adjudicated in the bankruptcy court unless rebutted by a contravening policy." *Mellon v. Del. & Hudson R.R.* (*In re Del. & Hudson R.R.*), 122 B.R. 887, 896 (D. Del. 1991).  Here, there is no "contravening policy" pulling against the Bankruptcy Court.  To the contrary, leaving this matter in the Bankruptcy Court will be far more efficient given that court's significant role, experience, and specialized knowledge regarding the Trustee Action, the Bancorp bankruptcy case more broadly, and the relevant insurance policies.

## C.    The Motions Are An Effort To Forum Shop.

The Motions should also be denied because they appear driven by forum shopping.  There is no compelling reason for this Court to take jurisdiction at all, let alone unless and until the Adversary Proceedings actually become "trial ready."

As clearly explained in the *Hawaiian Airlines* opinion, withdrawal of the reference should be denied where the request appears to be forum shopping:

---

[12] *See* RJN Ex. "R" at 15:7-21:13 (citing many cases establishing why the Side A Coverage Action is within the scope of "related to" bankruptcy jurisdiction, including *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 868 (9th Cir. 2005); *Safeco Ins. Co. v. Farmland Indus., Inc. (In re Farmland Indus., Inc.)*, 296 B.R. 793, 802-08 (B.A.P. 8th Cir. 2003); *County Seat Stores*, 2002 U.S. Dist. LEXIS 1555, at *13-17; *Am. Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp.*, 198 B.R. 55, 60-62 (S.D.N.Y. 1996); *Fed. Ins. v. Sheldon*, 167 B.R. at 19-20; and *Kolinsky v. Russ (In re Kolinsky)*, 100 B.R. 695, 702-03 (Bankr. S.D.N.Y. 1989)).  Even if the Bankruptcy Court had no jurisdiction under 28 U.S.C. § 1334, it would still have jurisdiction under 28 U.S.C. § 1367(a).  *See, e.g.*, *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1195 (9th Cir. 2005) (holding that bankruptcy courts can exercise supplemental jurisdiction under section 1367(a)).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39th FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1    Prevention of forum shopping may be promoted by declining to withdraw the
2    reference before it is necessary. Courts have cautioned that the discretion to
3    withdraw a reference to the bankruptcy court should be employed judiciously
4    in order to prevent withdrawal from becoming just another litigation tactic for
5    parties eager to find a way out of bankruptcy court.
6    355 B.R. at 224 (citations, quotation marks, and internal alterations omitted).
7        Here, both the Trustee's Insurance Action and the FDIC's Insurance Action
8    were only recently commenced. Nevertheless, the Insurers have already filed motions
9    to dismiss the Trustee's Insurance Action in the Bankruptcy Court. As a second
10   protective "bite at the apple," the Insurers filed the instant Motions. Rather than allow
11   the Bankruptcy Court to resolve the motions they filed there – which could potentially
12   moot two of the Motions – the Insurers are scrambling to get away from that court.
13       Likewise, when the action ACE filed in state court was properly removed to the
14   Bankruptcy Court, ACE immediately dismissed that action, only to join in the re-
15   filing of the nearly identical Side A Coverage Action mere days later. As District
16   Judge King has already suggested in that matter, this is highly suspicious and raises
17   real concerns about forum shopping. *See* RJN "T."
18       The only inference to be drawn is that the Insurers hope to forum shop away
19   from the Bankruptcy Court, including by using reference withdrawal as an early
20   "escape hatch." This is not what Judicial Code section 157(d) was designed for, and
21   "district courts are generally unreceptive to motions to withdraw references where the
22   underlying action is in its preliminary stages and is closely related to proceedings
23   already pending before the bankruptcy court." *Enron Corp. v. Telplexus, Inc. (In re*
24   *Enron Corp.)*, No. 04-7693, 2004 U.S. Dist. LEXIS 25259, at *5 (S.D.N.Y. Dec. 10,
25   2004). In fact, as a check against possible forum shopping, district courts regularly
26   decline to withdraw the reference of litigation that is in its early stages.[13] Ultimately,

27   _____
28   [13]   *See, e.g.*, *In re Centrix Fin., LLC*, 2011 U.S. Dist. LEXIS 3247, at *17 (explaining
     how the fact that the defendant insurers "might *prefer* a different forum is of no
     moment; indeed, discouraging forum shopping is an important factor the Court

*(Footnote continued on next page)*

30

as the Ninth Circuit has clearly instructed, "[o]nly by allowing the bankruptcy court to retain jurisdiction over the action until *trial is actually ready* do we ensure that our bankruptcy system is carried out." *In re Healthcentral.com*, 504 F.3d at 788.

In the final analysis, even assuming discretionary withdrawal of the reference were potentially appropriate here, the Insurers' hasty and premature Motions bear hallmarks of forum shopping. There is no exigency or other reason for the Court to withdraw the reference *now*. Rather, at the very most, the Court should follow the sensible path laid in this District and reconsider reference withdrawal when the matter is actually ready for trial, not at this early stage. *See, e.g.*, *GTS 900 F, LLC v. Corus Constr. Venture, LLC (In re GTS 900 F, LLC)*, No. 10-06693, 2010 U.S. Dist. LEXIS 129112, at *19-20 (C.D. Cal. Nov. 23, 2010) ("The Court will divest jurisdiction from the Bankruptcy Court when this action is ready for trial and no sooner.").

### D. The Remaining Factors Also Weigh Against Permissive Withdrawal.

Unsurprisingly, the Insurers make only a perfunctory effort to discuss the remaining "cause" factors; they essentially revert to their faulty conclusions regarding the core/non-core element. *See* ABC Tr. Mot. at 23:11-25:2; A-Side Tr. Mot. at 16:9-19:8; ABC FDIC Mot. at 24:1-20; A-Side FDIC Mot. at 16:19-20:5. Unfortunately for the Insurers, the remaining factors tilt even more against withdrawal.

***Withdrawal of the Reference Would Result in Significant Delay and Impose Additional Costs on the Parties.*** It is readily apparent that withdrawal would result in

---

weighs"); *Official Comm. of Unsecured Creditors v. Lay (In re Enron Corp.)*, 295 B.R. 21, 28 (S.D.N.Y. 2003) ("Courts have also recognized that it serves the interests of judicial economy and efficiency to keep an action in Bankruptcy Court for the resolution of pre-trial, managerial matters, even if the action will ultimately be transferred to a district court for trial."); *Trs. of UMW Combined Benefit Fund v. Westmoreland Coal Co. (In re Westmoreland Coal Co.)*, 221 B.R. 512, 515 (D. Colo. 1998) (rejecting the concept "that parties to bankruptcy proceedings should be entitled to circumvent the bankruptcy court and proceed directly to appeal where they anticipate an unfavorable result from the bankruptcy court"); *In re Hardesty*, 190 B.R. 653, 656-57 (D. Kan. 1995) ("Allowing the pretrial matters of the adversary case to proceed in bankruptcy court discourages forum shopping.").

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

1  additional delay and costs for all parties.  Rather than proceeding in a single forum that

2  is familiar with all of the issues, the Trustee would need to divide his efforts and limited

3  Estate resources among multiple forums, which naturally carries greater expense.

4  Similarly, bifurcation of the Trustee Action and these Adversary Proceedings could

5  create significant procedural complexities and delays if, for example, multiple appeals

6  are taken at different times in separate proceedings.  It is clearly more economical and

7  expedient for the limited Bancorp Estate and all parties to consolidate and resolve their

8  related matters together.  This is precisely why withdrawal of the reference is "a narrow

9  exception" to the general rule that all bankruptcy-related matters will be resolved in

10  bankruptcy courts.  *See Ponce Marine Farm v. Browner (In re Ponce Marine Farm)*,

11  172 B.R. 722, 724 (D.P.R. 1994).  Neither the Trustee's Insurance Action nor the

12  FDIC's Insurance Action is one of the "limited number of circumstances" where

13  permissive withdrawal is appropriate; granting the Motions would fail "to insure that

14  the exception does not swallow the rule" and gut the Judicial Code.  *See id.* at 724 n.2.

15  ***Withdrawal of the Reference Would Interfere With Uniformity of Bankruptcy***

16  ***Administration.***  As detailed above, the resolution of these insurance coverage actions

17  will affect the bankruptcy process and the payment of Bancorp's creditors.  This not

18  only renders the Adversary Proceedings "core," but also highlights the importance of

19  allowing the Bankruptcy Court to maintain control over the litigation.  In addition, the

20  legal issues raised by the Adversary Proceedings, including the nature and scope of

21  Bancorp's interests in the insurance policies, arise in other bankruptcy cases.  *See, e.g.*,

22  *In re Metro. Mortg. & Sec. Co.*, 325 B.R. 851 (bankruptcy court considering similar

23  insurance ownership issues); *Cohen v. Nat'l Union Fire Ins. Co. (In re Cnty. Seat*

24  *Stores, Inc.)*, 280 B.R. 319 (Bankr. S.D.N.Y. 2002) (bankruptcy court analyzing

25  meaning of contractual insurance coverage exclusion in connection with bankruptcy

26  trustee's litigation against the debtor's directors and officers).  Once again, the

27  Bankruptcy Court is the court best situated to consider all these issues with a broader

28  view toward the uniform articulation and application of bankruptcy law in this Circuit.

32

1      *The Hypothetical Existence of Jury Trial Rights Does Not Warrant Immediate*

2 *Withdrawal.*  Certain of the Insurers suggest that a jury trial may be necessary in one or

3 more of the pending insurance coverage actions. *See, e.g.*, ABC FDIC Mot. at 21:1-

4 22:23.  As with whether the proceedings are "core," this is an appropriate issue for the

5 Bankruptcy Court to address in the first instance. *See, e.g.*, *In re GTS 900 F*, 2010 U.S.

6 Dist. LEXIS 129112, at *19-20 (deferring ruling on "request for a jury trial so that the

7 Bankruptcy Court can decide on that issue" and denying motion to withdraw reference).

8 Even assuming *arguendo* that a jury trial right exists here, all such a fact means is that

9 the reference may *eventually* need to be withdrawn.  Indeed, the Ninth Circuit Court of

10 Appeals has made clear that "requiring that an action be immediately transferred to

11 district court simply because of a *jury trial right* would run counter to our bankruptcy

12 system." *In re Healthcentral.com*, 504 F.3d at 787 (collecting cases "[u]niversally"

13 reaching this conclusion).  Thus, "a Seventh Amendment jury trial right does not mean

14 the bankruptcy court must instantly give up jurisdiction and that the case must be

15 transferred to the district court." *Id.* at 787-88 (expressly holding that "the bankruptcy

16 court may retain jurisdiction over the action for pre-trial matters" even where there is a

17 valid right to a jury trial in the district court).  Accordingly, courts in this District and

18 elsewhere regularly defer withdrawal of the reference on jury trial grounds unless and

19 until the matter is actually "trial ready." *See, e.g.*, *In re GunnAllen Fin.*, 2011 U.S. Dist.

20 LEXIS 14997, at *12-13; *In re Centrix Fin.*, 2011 U.S. Dist. LEXIS 3247, at *10-12; *In*

21 *re GTS 900 F*, 2010 U.S. Dist. LEXIS 129112, at *19-20; *In re Dunmore Homes*, 2009

22 U.S. Dist. LEXIS 29083, at *8-12; *Hawaiian Airlines*, 355 B.R. at 224-25; *In re Enron*

23 *Corp.*, 295 B.R. at 27-28.  There is no reason for this Court to depart from this long line

24 of case law.  Indeed, the parties to both the FDIC's Insurance Action and the Trustee's

25 Insurance Action have reported to the Bankruptcy Court that, at this time, the parties

26 believe that there are not likely to be significant factual disputes in those cases and that

27 they likely can be decided by summary judgment. *See* RJN Exs. "W" at p. 4 § F.1. &

28 "X" at p. 4 § F.2.  Thus, a jury trial seems unlikely at this point.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000

## IV.   CONCLUSION

For the foregoing reasons, there is no basis or "cause" for withdrawal of the reference, and all four Motions should be denied in their entirety and with prejudice. Alternatively, all the Motions should be denied as premature and the cases should be remanded (1) so the Bankruptcy Court can make the determination required by Judicial Code section 157(b)(3), and (2) until the Adversary Proceedings are truly "trial ready."

Dated: April 18, 2011                    KLEE, TUCHIN, BOGDANOFF & STERN LLP

By:_____
                    David M. Stern
        *Attorneys for Alfred H. Siegel,*
        *Solely as Chapter 7 Trustee*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049
TELEPHONE: (310) 407-4000