1  BEN H. LOGAN (S.B. #71711)
   blogan@omm.com
2  STEPHEN H. WARREN (S.B. #136895)
   swarren@omm.com
3  JUSTINE M. DANIELS (S.B. #241180)
   jdaniels@omm.com
4  O'MELVENY & MYERS LLP
   400 South Hope Street
5  Los Angeles, California 90071
   Telephone:  (213) 430-6000
6  Facsimile:   (213) 430-6407

7  Attorneys for Defendants
   Those Certain Underwriters At Lloyd's, London and
8  Catlin Insurance Company (UK) Ltd., Twin City Fire
   Insurance Company, and Continental Casualty Company
9
   (Additional counsel listed on next page)
10
                **UNITED STATES DISTRICT COURT**
11
                **CENTRAL DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| 13  In re | Case No. 11-CV-2600 |
| 14  INDYMAC BANCORP, INC., a Delaware corporation, | Bankr. Case No. 2:08-bk-21752-BB |
| 15  ———————— Debtor. | Adv. Pro. Nos.: 2:11-ap-01443-BB |
| 16  ALFRED H. SIEGEL, solely as Chapter 7 Trustee for Debtor INDYMAC BANCORP, INC., | **CONSOLIDATED REPLY IN SUPPORT OF MOTIONS OF ABC CARRIERS TO WITHDRAW THE BANKRUPTCY REFERENCE** |
| 17  Plaintiff, | |
| 18  v. | |
| 19  CERTAIN UNDERWRITERS AT LLOYDS OF LONDON, an unincorporated association; ZURICH AMERICAN INSURANCE CO., a corporation; TWIN CITY FIRE INSURANCE COMPANY, a corporation; CONTINENTAL CASUALTY COMPANY, a corporation; XL SPECIALTY INSURANCE COMPANY, a corporation; ARCH INSURANCE COMPANY, a corporation; ACE AMERICAN INSURANCE COMPANY, a corporation; AXIS REINSURANCE COMPANY, a corporation, | Date:         May 9, 2011 Time:         10:00 a.m. |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27  ———————— Defendants. | |
| 28 | |

1    THEODORE A. BOUNDAS (admitted Pro Hac Vice)
     tboundas@bswb.com
2    JEFFREY T. SHAW (admitted Pro Hac Vice)
     jshaw@bswb.com
3    W. JOEL VANDER VLIET (admitted Pro Hac Vice)
     wvandervliet@bswb.com
4    BOUNDAS, SKARZYNSKI, WALSH & BLACK, LLC
     200 East Randolph Drive, Suite 7200
5    Chicago, Illinois 60601
     Telephone:  (312) 946-4200
6    Facsimile:   (312) 946-4272

7    Attorneys for Those Certain Underwriters At
     Lloyd's, London and Catlin Insurance Company
8    (UK) Ltd., Subscribing to Policy No. QA011608

9    MICHAEL R. DELHAGEN (admitted Pro Hac Vice)
     mdelhagen@tresslerllp.com
10   TRESSLER LLP
     One Penn Plaza
11   Suite 4701
     New York, New York 10119
12   Telephone:  (646) 833-0900
     Facsimile:   (646) 833-0877
13
     Attorneys for Twin City Fire Insurance Company
14
     WILLIAM E. SMITH (admitted Pro Hac Vice)
15   wsmith@wileyrein.com
     JOHN HOWELL (admitted Pro Hac Vice)
16   jhowell@wileyrein.com
     WILEY REIN LLP
17   1776 K Street NW
     Washington, D.C. 20006
18   Telephone:  (202) 719-7000
     Facsimile:   (202) 719-7049
19
     Attorneys for Continental Casualty Company
20
     BRIAN HARRISON (S.B. #157123)
21   brian.harrison@sdma.com
     ROBERT S. GEBHARD (S.B. #158125)
22   robert.gebhard@sdma.com
     VEENA A. MITCHELL (S.B. #161153
23   veena.mitchell@sdma.com
     SEDGWICK LLP
24   One Market Plaza
     Steuart Tower, 8th Floor
25   San Francisco, California 94105
     Telephone:  (415) 781-7900
26   Facsimile:   (415) 781-2635

27   Attorneys for Zurich American Insurance Co.

28

# TABLE OF CONTENTS

**Page**

I.     KEY PRINCIPLES ..................................................................................... 1

II.    THESE STATE LAW COVERAGE ACTIONS ARE NOT WITHIN THE BANKRUPTCY COURT'S CORE JURISDICTION ........................... 4

     A.     The Potential to Increase the Bankruptcy Estate's Pool of Assets Does Not Make the Coverage Actions Core ........................................ 5

     B.     The Trustee's Assertions that the Coverage Actions Require a Determination of What Is Property of the Estate Is Just Phraseology Designed to Avoid Marathon. ........................................ 10

III.   THERE IS NO REQUIREMENT THAT THE BANKRUPTCY COURT—AS OPPOSED TO THIS COURT—DETERMINE WHETHER THE COVERAGE ACTIONS ARE CORE ............................. 11

IV.   THE BANKRUPTCY COURT CANNOT EXERCISE JURISDICTION OVER THE SIDE A ONLY POLICIES OR THE SIDE A COVERAGE ACTION ................................................................. 12

V.    THE BANKRUPTCY COURT HAS NOT ADDRESSED THE COVERAGE ISSUES OR ANY OF THE OTHER UNDERLYING LITIGATIONS ........................................................................................ 14

VI.   DEFERRING WITHDRAWAL OF THE REFERENCE WILL CONFUSE JURISDICTIONAL ISSUES, COMPLICATE ADJUDICATION OF THE MERITS, AND RESULT IN NEEDLESS DE NOVO REVIEW ................................................................................ 18

VII.   CONCLUSION ...................................................................................... 20

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Addison v. U.S. Dept. of Educ.,*
    240 B.R. 47 (C.D. Cal. 1999) .................................................12, 18, 19

5

*Cohen v. Nat'l Union Fire Ins., Co. (In re Cnty. Seat Stores),*
    2002 U.S. Dist. LEXIS 1555 (S.D.N.Y. Jan. 25, 2002) ..........................passim

6

*Daewoo Motor Am., Inc. v. Gulf Ins. Co. (In re Daewoo Motor Am., Inc.),*
    302 B.R. 308 (C.D. Cal. 2003) ....................................................8, 12, 15

7

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ...............................................................14

8

9

*Halper v. Halper,*
    164 F.3d 830 n.7 (3d Cir. 1999) ..................................................7

10

*Holloway v. Dane,*
    316 B.R. 876 (S.D. Miss. 2004) ..................................................13

11

*In re Addison,*
    240 B.R. 47 (Bankr. C.D. Cal. 1999) ...........................................2

12

13

*In re Allied Digital Tech. Corp.,*
    306 B.R. 505 (Bankr. D. Del. 2004) ...........................................6

14

*In Re Boston Reg'l Med. Ctr., Inc.,*
    285 B.R. 87 (Bankr. D. Mass. 2002) ...........................................7, 9

15

16

*In re Castlerock Properties,*
    781 F.2d 159 (9th Cir. 1986) .....................................................6

17

*In re Coupon Clearing House,*
    113 F. 3d 1091 (9th Cir. 1997) .................................................12

18

*In re Daisy Sys. Sec. Litig.,*
    132 B.R. 752 (N.D. Cal. 1991) ................................................13

19

*In re Don's Making Money, LLP.,*
    2007 US Dist. LEXIS 32972 (D. Ariz. May 1, 2007) ...........................12

20

21

*In re Dunmore Homes,*
    2009 US Dist. LEXIS 29083 (E.D. Cal. Apr. 1, 2009) .........................12

22

*In re Fleming Packaging Corp.,*
    2007 WL 4556981, at *3 (Bkrtcy. C.D. Ill. Dec. 20, 2007)...................14

23

*In re G-I Holdings,*
    278 BR 376 (D. N.J. 2002) ......................................................8

24

*In re Harris Pine Mills,*
    44 F.3d 1431 (9th Cir. 1995) ..................................................7

25

26

*In re Int'l Nutronics, Inc.,*
    28 F.3d 965 (9th Cir. 1994) ...................................................12

27

*In re Kincaid,*
    917 F.2d 1162 (9th Cir. 1990) ...............................................10, 11

28

CONSOLIDATED REPLY ISO
MOTS. TO WITHDRAW REFERENCE

# TABLE OF AUTHORITIES
### (continued)

**Page**

*In re Mila, Inc.,*
423 B.R. 537 (9th Cir. BAP 2010) ...................................................7

*In re Nat'l Consumer Mortgage, LLC,*
2009 WL 2985243 (C.D. Cal. Sept. 14, 2009) ..................................4

*In re Phar-Mor v. Coopers & Lybrand,*
22 F.3d 1228 (3d Cir. 1994) ...........................................................8

*In re Pintlar Corp.,*
124 F.3d 1310 (9th Cir. 1997) .......................................................13

*In re R.I. Lithograph Corp.,*
60 B.R. 199 (Bankr. D. R.I. 1986)....................................................8

*In re Spree.com Corp.,*
295 B.R. 762 (Bankr. E.D. Pa. 2003) ............................................14

*In re Tamalpais Bancorp,*
2011 WL 999225 (N.D.Cal. March 21, 2011)......................11, 12, 18

*In re TIG Ins. Co.,*
264 B.R. 661 (Bankr. C.D. Cal. 2001) .......................................4, 13

*In re Transcon Lines,*
121 B.R. 837 (C.D. Cal. 1990) ......................................................18

*In re Wedtech Corp.,*
94 B.R. 293 (SDNY 1988)..............................................................19

*In re Wood,*
825 F.2d 90 (5th Cir. 1987) .............................................................7

*Kenniworth Partners II LP v. Crisman,*
2001 WL 30534 (N.D. Cal. 2001) ...................................................4

*Massok v. Keller Industries, Inc.,*
2005 WL 2108654 (9th Cir. 2005) .................................................20

*Northern Pipeline Constr. Co. v. Marathon Pipeline Co.,*
458 U.S. 50 (1982)..............................................................5, 6, 10, 11

*Pacific Indemnity Co. v. McDonald,*
107 F.2d 446 (9th Cir. 1939) .........................................................20

*Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers,*
124 F.3d 999 (9th Cir. 1997) ......................................................5, 11

*Security Farms,*
124 F.3d at 1007 n.3 ...............................................................15, 19

*State Farm Mut. Auto. Ins. Co. v. Sup.Ct. (Corrick),*
47 Cal. 2d 428 (1956) ....................................................................19

*Waldon v. Nat'l Fire Ins. Co. (In re EbaseOne Corp.),*
2006 Bankr. LEXIS 186 (Bankr. S.D. Tex. June 14, 2006)...............8

*Willms v. Sanderson Cmtys., Inc.,*
2009 U.S. Dist. LEXIS 24990 (E.D. Cal. Mar. 19, 2009)................12

CONSOLIDATED REPLY ISO
MOTS. TO WITHDRAW REFERENCE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
## (continued)

**Page**

## STATUTES

11 U.S.C. § 502(a) .................................................................9

11 U.S.C. § 726 .....................................................................9

28 U.S.C. § 1404(a) .............................................................13

28 U.S.C. § 157(b)(2)(A) .......................................................6

28 U.S.C. § 157(b)(2)(B)-(N) ................................................6

28 U.S.C. § 157(b)(2)(O) .......................................................6

28 U.S.C. § 157(b)(3) ......................................................11, 12

28 U.S.C. § 157(c)(1) .............................................................7

28 U.S.C. § 157(d) ...............................................................11

8 Del. C. § 145(a) ...........................................................9, 14

## OTHER AUTHORITIES

9 Collier on Bankruptcy,
   ¶ 5011.01 [1], at 5011-3 (15th Ed. Rev. 2006) ..................11

## RULES

Fed. R. Civ. Proc. 38(b) .......................................................20

Fed. R. Civ. Proc. 38(b)(2) ..................................................20

Fed. R. Civ. Proc. 81(c)(3) ..................................................20

Fed. R. of Bankr. Proc. 5011(a) ...........................................11

Loc. Bankr. R. 9015-2(b) .....................................................20

Loc. Bankr. R. 9027-1(e) ......................................................20

The ABC Carriers hereby file their consolidated reply in support of their motions to withdraw the reference of the Trustee's Coverage Action and the FDIC Coverage Action.[1]  This is a consolidated reply both in the sense that it deals with these two related motions filed by the ABC Carriers and opposition papers filed by the Trustee, the FDIC on behalf of IndyMac MBS, Inc., and certain of the Individual Defendants (collectively, the "Oppositions").  In addition, the Side A Carriers filed two similar motions to withdraw the reference of the Trustee's and the FDIC Coverage Actions, the first of which is set for hearing on May 2, 2011.  Some of the issues particular to the Side A Carriers are different than those affecting the ABC Carriers, but there are many similarities.

## I.  KEY PRINCIPLES

Before turning to reams of arguments made by the Oppositions, a number of essential principles warrant particular emphasis.

First, the three pending coverage actions should be consolidated before a single court.  On this point all the parties agree.  Thus, the arguments of the FDIC that its coverage action is broader and superior to the other two pending coverage actions misconstrues the relevant question—i.e., what court should decide these three coverage actions.  Similarly, the Trustee's argument that his Coverage Action "is one patch of a multifaceted and interrelated litigation quilt," while true, ignores that the Trustee's Coverage Action is the narrowest of those three coverage actions and the more important point that all the Coverage Actions should be consolidated in a single appropriate forum.  Tr. Op. at 1.

Second, the ABC Carriers did not bring any of the Coverage Actions.  The FDIC's assertion that the Side A Carriers served as a "stalking horse" for the ABC Carriers is pure speculation.  FDIC Op. at 2:1-8.[2]  It is also incorrect.  The ABC

---

[1] Capitalized terms used herein without definition have the meanings set forth in those motions to withdraw the reference.

[2] The Trustee's assertion that the ABC Carriers are "scrambling" to get away from

CONSOLIDATED REPLY ISO
MOT. TO WITHDRAW REFERENCE

1    Carriers are indifferent as to whether the court that decides the coverage issues is a

2    federal district court or a state court.  In their motion to dismiss the Trustee's

3    Coverage Action, the ABC Carriers noted that they would have brought a motion

4    before the Bankruptcy Court to abstain from deciding the Trustee's Coverage

5    Action in favor of the FDIC Coverage Action in state court but for the fact that the

6    Individual Defendants removed that case to the Bankruptcy Court.  Tr. RJN Ex. M

7    at 1, n.1.  The ABC Carriers also stated that they might seek to remand the FDIC

8    Coverage Action to state court or seek to withdraw the reference of the Trustee's

9    and the FDIC Coverage Actions so that they could be coordinated with the Side A

10   Coverage Action pending in federal district court.  *Id.* at 15, n. 19.  The ABC

11   Carriers stand by that contention and suggest that this Court first withdraw the

12   reference so that all coverage actions are pending in a single court and then either

13   decide whether to keep them or allow them to proceed in state court.[3]

14        Third, in contrast, the Trustee, FDIC, and Individual Defendants have done

15   their utmost to force-fit the Coverage Actions into the Bankruptcy Court's

16   jurisdiction.  Not content with allowing the Ace and FDIC Coverage Actions to

17   remain in state court, the Individual Defendants removed both cases to the

18   Bankruptcy Court on the illusory premise that those coverage cases concern

19   ───────────────────────────────────────────────
     the Bankruptcy Court before it has a chance to rule on the motion to dismiss is also
20   a fiction.  The motion to dismiss the Trustee's Coverage Action was filed on March
     21, 2011, the stipulated date to respond under FRBP 7012.  ABC Reply RJN Exs. 4
21   and 5.  The ABC Carriers' motions to withdraw the reference were filed on March
     28 and April 7, respectively, to comply with Section 157(d)'s requirement of a
22   timely motion.  *See In re Addison*, 240 B.R. 47, 49 (Bankr. C.D. Cal. 1999) (finding
     motion to withdraw to be timely where filed within two months of the filing of the
23   complaint).  Most importantly, the parties agreed that it did not make sense to
     adjudicate the motion to dismiss until the jurisdictional matter of what court decides
24   the Coverage Actions is decided.  The ABC Carriers and the Trustee so stipulated,
     and last Thursday, the Bankruptcy Court entered an order deferring further action
25   on this motion to dismiss until this threshold jurisdictional question is determined.
     ABC Reply RJN Exs. 6 and 7.

26   [3] Judge King's Order to Show Cause (the "OSC") recognizes that the resolution of
27   the relevant coverage issues turns entirely on state law.  Tr. RJN Ex T, OSC at 1.
     Judge King's questioning of why a federal court should decide coverage suggests
28   that withdrawal and remand to state court might be the appropriate resolution.

CONSOLIDATED REPLY ISO
MOT. TO WITHDRAW REFERENCE

1    IndyMac's bankruptcy rights and are core "to the same extent" as the Trustee's

2    Coverage Action.  Tr. RJN Ex. P, Notice of Removal; Daniels FDIC Decl. Ex. 10,

3    Notice of Removal.  The FDIC has gone along with this, even though it has always

4    recognized that its Coverage Action is not core.  *Id.* Ex. 11, FDIC Am. Compl.

5    ¶ 10.  Likewise, the Trustee apparently crafted his Coverage Action in the

6    narrowest possible fashion, seeking relief only as to his Underlying Action in order

7    to maximize the prospect that his Coverage Action might fit within the Bankruptcy

8    Court's core jurisdiction.  The Trustee did so even though such a limited

9    determination of coverage is inconsistent with his current theme that the broadest

10   possible determination should be made of these issues.

11          Regardless of how this Court may read the actions and motivations of the

12   parties, the Bankruptcy Court is not an appropriate forum to adjudicate the

13   Coverage Actions:

14          •    The Coverage Actions, which are exclusively governed by state law,

15   are not within the Bankruptcy Court's core jurisdiction.  Neither the FDIC nor the

16   Individual Defendants contest this fact.  Instead, the Trustee's opposition repeatedly

17   conflates the test for core versus non-core claims (i.e., whether a matter arises in or

18   under the Bankruptcy Code) with the test for subject matter jurisdiction (i.e.,

19   whether a matter concerns the property of the estate).  Moreover, the Trustee's

20   primary argument—that the Coverage Actions are core because they may increase

21   the Estate's asset pool—has been rejected in numerous reported decisions, including

22   some on which the Trustee relies.

23          •    The Bankruptcy Court does not have jurisdiction over the Side A

24   Only Policies.  Thus, the Bankruptcy Court cannot provide the comprehensive

25   determination that is the only sensible way of adjudicating this "multifaceted and

26   interrelated litigation quilt," to use the Trustee's parlance.  If the cases are

27   consolidated—as all the parties agree that they should be—consolidation must be

28   before a court that can properly exercise jurisdiction over all the issues.

CONSOLIDATED REPLY ISO
MOT. TO WITHDRAW REFERENCE

1      • The Bankruptcy Court's prior dealings with the Policies have been

2      limited, and it has not made any decisions regarding the coverage issues raised in

3      the Coverage Actions.  Moreover, there are 12 Underlying Litigations, only one of

4      which is before the Bankruptcy Court. The Oppositions argue that familiarity with

5      an underlying action often assists a court to determine coverage.  That may make

6      sense when there is a single underlying action.  But it does not when there are 12

7      pending before multiple courts and there is no principled basis to determine which

8      of the multiple courts that has an Underlying Litigation should also decide coverage.

9      • Because the Coverage Actions are not core proceedings, any order by

10     the Bankruptcy Court will be subject to *de novo* review, complicating and

11     prolonging the litigation.  Additionally, jury demands have already been made in

12     two of the Coverage Actions, and the time to demand a jury has not elapsed in the

13     third.  Sending these cases to a court that can issue final orders and conduct a jury

14     trial now—rather waiting until the eve of trial—avoids delays and complications.

## II.     THESE STATE LAW COVERAGE ACTIONS ARE NOT WITHIN THE BANKRUPTCY COURT'S CORE JURISDICTION.

17     The "core vs. non-core" distinction is the central factor that district courts use

18     in determining whether to withdraw the reference because "it is upon this issue that

19     the questions of efficiency and uniformity will turn."  *In re Nat'l Consumer*

20     *Mortgage, LLC*, 2009 WL 2985243, at *2 (C.D. Cal. Sept. 14, 2009).[4]

21     Accordingly, courts regularly hold that withdrawal of non-core matters does not

22     encourage forum shopping or disrupt the uniformity of bankruptcy administration,

23     but does conserve court and party resources by eliminating the need for *de novo*

24     review.  *See, e.g.*, ABC Tr. Mot. at 23:11-25:2 (citing *inter alia Sec. Farms v. Int'l*

25

26     _____
[4] It is also the most important factor considered when remanding to state court or abstaining in favor of a state court proceeding.  *See, e.g.*, *In re TIG Ins. Co.*, 264

27     B.R. 661 (Bankr. C.D. Cal. 2001) (finding an insurance coverage action non-core and remanding the same); *Kennilworth Partners II LP v. Crisman*, 2001 WL 30534

28     (N.D. Cal. 2001) (holding same for motion to abstain).

- 4 -

CONSOLIDATED REPLY ISO
MOT. TO WITHDRAW REFERENCE

1   *Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1009 (9th

2   Cir. 1997)).

3        The opposition filed by the FDIC—like its Amended Complaint—concedes

4   that its Coverage Action is a non-core proceeding.  FDIC Op. at 3:9-12; Daniels

5   FDIC Decl. Ex. 11, FDIC Am. Compl. ¶ 10.  Similarly, the Individual Defendants

6   fail to argue that the FDIC or the Trustee's Coverage Actions are core.

7        The Trustee stands alone in his contention that the Coverage Actions are core

8   proceedings and, accordingly, belong before the Bankruptcy Court.  To try to

9   distinguish the overwhelming body of contrary authority, the Trustee relies on

10   several layers of misdirection.

11      **A.**    **The Potential to Increase the Bankruptcy Estate's Pool of
12               Assets Does Not Make the Coverage Actions Core.**

13        In support of his position, the Trustee returns to his mantra that no matter

14   how tenuous or speculative, the possibility that the Estate might receive some of the

15   proceeds of the Policies—either as plaintiff in the Trustee's Underlying Action or

16   under the Side B indemnification coverage—makes the Policies and their proceeds

17   property of the bankruptcy Estate.  Tr. Op. at 18:12-21:9.[5]  Even accepting the

18   Trustee's contention *arguendo* would at most mean that the Coverage Actions—

19   other than actions with respect to the Side A Only Policies—fit in the broad ambit

20   of "related to" jurisdiction.  But jumping to the conclusion that a state law coverage

21   claim is core violates the rulings of the Supreme Court that are the very foundation

22   of the core/non-core distinction.  In *Marathon*, the Supreme Court held that the

23   mere fact that a case may concern the property of an estate and might increase the

24   assets available to distribute to creditors was not sufficient to imbue a non-Article

25
26   [5] The majority of cases the Trustee cites in support of his argument that the
     Coverage Actions are core do not even address the core versus non-core distinction.
     Instead, they mainly concern whether certain policies and proceeds are property of
27   the estate, which is not relevant to determining whether the reference should be
     withdrawn.  *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50,
28   71-72 (1982)

CONSOLIDATED REPLY ISO
MOT. TO WITHDRAW REFERENCE

1    III court with the power to make a final decision. *Marathon*, 458 U.S. at 71-72

2    (Chapter 11 debtor's "right to recover contract damages to augment its estate is

3    'one of private right, that is, of the liability of one individual to another under the

4    [state] law as defined.'").  Since *Marathon*, courts have regularly rejected the

5    Trustee's argument that merely affecting "the pool" of an estate's assets is

6    sufficient to make a matter core.[6]  Particularly in the context of insurance coverage

7    actions, a multitude of cases hold that state law insurance coverage disputes are not

8    within a bankruptcy court's core jurisdiction.  *See* ABC FDIC Mot. at 9, n.7.  The

9    Trustee never addresses or distinguishes the nearly 20 cases the ABC Carriers cite

10   for this proposition.  *See* Tr. Op. at 18:12-18, 21:10-23:8.

11          Instead the Trustee relies primarily on a single district court case from the

12   Second Circuit, *Cohen v. Nat'l Union Fire Ins., Co. (In re Cnty. Seat Stores)*, 2002

13   U.S. Dist. LEXIS 1555 (S.D.N.Y. Jan. 25, 2002) ("*County Seat*").  Based on this

14   case, the Trustee argues that the Coverage Actions are core because the Trustee—as

15   a plaintiff in the Trustee's Underlying Action—might win damages that could be

16   one of the most important sources of payment of creditors of the Estate.  Tr. Op. at

17   18:12-23:8 n.10.[7]  This argument has been rejected by virtually every other court

18   that has considered it.  *See, e.g.*, *In re Allied Digital Tech. Corp.*, 306 B.R. 505, 512

19   (Bankr. D. Del. 2004) ("[W]hen a suit is brought on behalf of the debtor, the courts

20

21   [6] In keeping with *Marathon*, the Ninth Circuit clearly distinguishes between cases
     that arise in or under Title 11, *i.e.*, the core proceedings enumerated by Section
22   157(b)(2)(B)-(N), and those that are merely related, which can arguably be
     squeezed into subsections (A) and (O).  *See In re Castlerock Properties*, 781 F.2d
23   159, 162 (9th Cir. 1986) (holding that "state law contract claims that do not
     specifically fall within the categories of core proceedings enumerated in 28 U.S.C.
24   § 157(b)(2)(B)-(N)" are not core proceedings, "even if they arguably fit within the
     literal wording of the two catch-all provisions, sections § 157(b)(2)(A) and (O),"
25   because "[t]o hold otherwise would allow the bankruptcy court to enter final
     judgments that this court has held unconstitutional").

26   [7] The plaintiff trustee in *County Seat* relied on the same concept, bringing his action
     to secure coverage for "any damages that he might establish in a separate adversary
27   proceeding" he brought against County Seat's directors and officers.  *County Seat*,
     2002 U.S. Dist. LEXIS 1555 at *2.
28

                                          - 6 -                    CONSOLIDATED REPLY ISO
                                                                  MOT. TO WITHDRAW REFERENCE

1    generally hold that the debtor is merely an indirect insured and the proceeds are not
2    property of the estate."); *In re Mila, Inc.*, 423 B.R. 537, 542-45 (9th Cir. BAP
3    2010).  Indeed, one of the key cases on which the Trustee relies, *In Re Boston Reg'l*
4    *Med. Ctr., Inc.*, states "[the estate] can have an interest in the proceeds of the policy
5    only if it has a claim <u>as an insured, not merely as a plaintiff against a defendant who</u>
6    <u>is insured, to coverage under the policy</u>." 285 B.R. 87, 91 (Bankr. D. Mass. 2002)
7    (emphasis supplied).
8         What then is one to make of *County Seat*?  To begin with, *County Seat*
9    represents a minority view that is contrary to Ninth Circuit law.  The Second
10   Circuit takes a much more expansive view of core matters than does virtually any
11   other circuit and considers the impact the outcome of the proceeding will have on
12   the administration of the bankruptcy estate, including the amount available to
13   distribute to creditors.  *See, e.g., County Seat*, 2002 U.S. Dist. LEXIS 1555 at *15-
14   16.  On the other hand, the Third, Fifth Sixth, Seventh, Eighth, Tenth, and—most
15   importantly—the Ninth Circuits follow the far more narrow view first articulated in
16   the *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987). *See, e.g., Halper v. Halper*, 164
17   F.3d 830, n.7 (3d Cir. 1999) (citing cases from those Circuits as following the
18   *Wood* test).  There, the Fifth Circuit held:
19         If the proceeding does not invoke a substantive right created by the
20         federal bankruptcy law and is one that could exist outside of
21         bankruptcy it is not a core proceeding; it may be related to the
22         bankruptcy because of its potential effect, but under section 157(c)(1)
23         it is an "otherwise related" or non-core proceeding.
24   *In re Wood*, 825 F.2d at 96–97.  This test was adopted by the Ninth Circuit in *In re*
25   *Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995) (quoting *In re Wood*, 825
26   F.2d at 96–97).  Based on this distinction, courts in circuits following *Wood* have
27   regularly rejected the Trustee's contention that the mere effect on the pool of assets
28   to be distributed to creditors can support core jurisdiction. *See, e.g., In re G-I*

- 7 -

1  *Holdings*, 278 BR 376, 383 (D. N.J. 2002) (rejecting *County Seat* in a directors and

2  officers insurance coverage case and holding that "[w]hile the outcome of a

3  proceeding may bring significant sums into the estate, that expectation alone cannot

4  define a proceeding as core"); *Daewoo Motor Am., Inc. v. Gulf Ins. Co. (In re*

5  *Daewoo Motor Am., Inc.*), 302 B.R. 308, 313 (C.D. Cal. 2003) (discussing the

6  Second Circuit's standards, but holding that "it is unlikely that this [insurance

7  coverage] case would satisfy the Ninth Circuit's strict construction of the catch-all

8  provisions" and that "resolution of this case will merely augment the assets of the

9  estate rather than having a direct impact on the bankruptcy court's core

10  administrative functions").[8]

11      The Trustee also relies on *County Seat* for the proposition that the Coverage

12  Actions are core because the Estate might need to indemnify the Individual

13  Defendants under the Side B coverage.[9]  This argument is also inconsistent with the

14  majority view and controlling case law. *See, e.g., In re R.I. Lithograph Corp.*, 60

15  B.R. 199, 203–04 (Bankr. D.R.I. 1986) ("[W]e are unable to agree that [the

16  insured's] action against [the insurer] seeking reimbursement and/or

17  indemnification for losses allegedly covered under a contract of insurance is a core

18  _____

19  [8] Although, these cases are all cited in the ABC Carriers' Opening briefs, the
Trustee made no effort to address them.  ABC FDIC Mot. at 9, n.7; *see also*
20  *Waldon v. Nat'l Fire Ins. Co. (In re EbaseOne Corp.)*, 2006 Bankr. LEXIS 186, at
*12 n.7 (Bankr. S.D. Tex. June 14, 2006) (noting that while "the Second Circuit
21  seems to focus primarily on the significance of the impact that the adversary
proceeding will have on the administration of the estate, the Fifth [and the Ninth]
22  Circuit focuses more on whether the adversary proceeding either invokes a
substantive right provided by the Bankruptcy Code or could arise only in the
23  context of a bankruptcy case" and finding directors and officers policy coverage
dispute non-core, because "where the insurance proceeds would only augment the
24  assets of the estate for general distribution, the effect on the administration of the
estate was insufficient to render the proceedings core").

25  [9] Indeed, adopting the Trustee's theory would mean that any case where the debtor
was either a defendant or plaintiff would automatically be core, because the
26  outcome could have an impact on the distribution of the estate's assets to creditors.
That is not the law. *See, e.g., In re Phar-Mor v. Coopers & Lybrand*, 22 F.3d 1228,
27  1239 n.19 (3d Cir. 1994) (explaining that a breach of contract action which may
bring property into the estate "'is precisely the type of proceeding that is non-core
28  and outside the power of the bankruptcy court to adjudicate'").

- 8 -

proceeding."). The Trustee relies on *In Re Boston Reg'l Med. Ctr., Inc.,* to suggest that the mere possibility of the Estate having to indemnify the Ds & Os under the Side B Policy render the Coverage Actions core; however, the case held exactly the opposite. There, the court held that the Side B coverage dispute "does not arise under the Bankruptcy Code but under state contract and insurance law; it is not integral to the bankruptcy process or to the adjustment of the debtor-creditor relationship," and therefore is non-core. 285 B.R. at 90. The court in *Boston Reg'l Med. Ctr.* further held that the prospect of satisfying indemnification claims either by direct payments to the plaintiffs (thereby avoiding the directors' and officers' need to seek indemnification from the estate), or by reimbursing the estate under Side B coverage, did not make the coverage dispute core even though all parties agreed that the indemnification claims "were real and valid." *Id.* at 91. It follows, *a fortiori*, that the disputed indemnification claims at issue here (which the Estate is essentially certain never to pay) do not provide a basis for core jurisdiction.

Second, *County Seat* is factually distinguishable from the Coverage Actions. In that case, the directors and officers were actively seeking payment for their defense costs from the estate. 2002 U.S. Dist. LEXIS 1555, at *16. Here, the Directors' proofs of claim were only filed "out of an abundance of caution" and the Insurers have advanced and continue exclusively to advance the insured persons' costs of defense. *See* Daniels FDIC Decl. Ex. 4, Proofs of Claim at 3, 9, 12, 15; Exs. 5-7 (authorizing payments by the insurers). Indeed, the Trustee never disputes that both bankruptcy and state law would prohibit any indemnification payments from the Estate to the Ds & Os in connection with any judgment he might obtain. *See* ABC FDIC Mot. at 14:9-15:23 (citing 11 U.S.C. §§ 502(a), 726 and 8 Del. C. § 145(a)); *see also id.* n.10. The Trustee also ignores the fact that if there was any real prospect for the Estate indemnifying the Directors, it would have been inappropriate to allow the Directors to access Side A of the Policies without first satisfying the $2.5 million retention. ABC Tr. Mot. at 6:13-17,19:13-18. These

CONSOLIDATED REPLY ISO
MOT. TO WITHDRAW REFERENCE

1    issues were apparently never raised in *County Seat*.[10]  The Estate's purported

2    indemnification obligations to the Directors here are illusory; but even if they were

3    real, that would not transform this state law dispute into a core matter.

4         **B.    The Trustee's Assertions that the Coverage Actions Require
                   a Determination of What Is Property of the Estate Is Just**
5              **Phraseology Designed to Avoid *Marathon*.**

6         The Trustee asserts that the question of whether the Policies and proceeds are

7    property of the Estate is a "central" question to be resolved in the Coverage

8    Actions.  TR. Op. at 16:3.  Yet, this issue was not raised in any of the three

9    Coverage Action Complaints.  *See* Daniels FDIC Decl. Exs. 8 and 11-12, Coverage

10   Action Complaints.  Rather, the Coverage Actions concern only whether the

11   Underlying Litigations are covered pursuant to the terms, conditions, and

12   exclusions of the insurance policies, which turn solely on the application of state

13   law.  *See id.*; ABC FDIC Mot. at 8:24-9-14.

14        *In re Kincaid*—a case the Trustee cites for the principle that determination of

15   scope of estate property is core—makes this distinction clear.  917 F.2d 1162 (9th

16   Cir. 1990).  There, the Ninth Circuit found the trustee's action to obtain the interest

17   in the deferred salary plan to be a turnover proceeding, subject to the bankruptcy

18   court's core jurisdiction, and thus was distinguishable from cases, like *Marathon*

19   and the Coverage Actions,

20        where the trustees were not seeking to obtain *property of* the debtor

21        but were instead seeking to obtain *property owed to* the debtor, but

22        belonging to a third party. Those actions could hardly be characterized

23        as actions to obtain the property owned by the debtor, and were,

24        therefore, not turnover proceedings.

---

25   [10] Additionally, in *County Seat*, the parties seeking to withdraw the reference were
26   making an eleventh-hour effort avoid the bankruptcy court's judgment after it
     indicated it was ready to rule on a summary judgment motion and the parties had
27   participated in litigation of the coverage issue before that court for an extended
     period of time. *County Seat*, 2002 U.S. Dist. LEXIS 1555, at *18-19.  As discussed
28   above, no such gamesmanship is present here.

CONSOLIDATED REPLY ISO
MOT. TO WITHDRAW REFERENCE

1   *Id.* at 1165 (citing *Marathon,* 458 U.S. at 71-72).  Even assuming the Coverage

2   Actions did seek a determination of ownership, that would not per se make them

3   core proceedings.  *See, e.g.*, *In re Tamalpais Bancorp.* 2011 WL 999225, at *4-5

4   (N.D. Cal. March 21, 2011) (in withdrawing reference, court concluded that

5   trustee's action seeking  declaratory judgment regarding ownership of tax refunds

6   "merely seeks to determine ownership of certain funds pursuant to a contract and

7   thus fits *Sec. Farms*' definition of non-core proceedings.").

8   **III.   THERE IS NO REQUIREMENT THAT THE BANKRUPTCY
          COURT—AS OPPOSED TO THIS COURT—DETERMINE**
9   **       WHETHER THE COVERAGE ACTIONS ARE CORE.**

10          The Trustee argues that Section 157(b)(3) of the Judicial Code requires this

11  Court defer to the Bankruptcy Court to make the core/non-core decision.  While

12  Section 157(b)(3) authorizes a bankruptcy court to decide this jurisdictional

13  question when it hears a matter,  the Judicial Code does not state that the

14  bankruptcy court is the <u>exclusive</u> court to make this determination.  The Trustee's

15  interpretation of 28 U.S.C. § 157(b)(3) is inconsistent with 28 U.S.C. § 157(d),

16  which explicitly authorizes a district court to withdraw any proceeding from the

17  Bankruptcy Court.  *See* 9 Collier on Bankruptcy, ¶ 5011.01 [1], at 5011-3 (15th Ed.

18  Rev. 2006) ("28 U.S.C. § 157(d) provides the authority . . . to withdraw the

19  reference of the case or proceeding.").[11] Congress determined that the district court,

20  not the bankruptcy court, is to decide whether to withdraw the reference.  28 U.S.C.

21  § 157(d).

22          While there are some courts that have come to the contrary view, that is not

23  the law in the Ninth Circuit.  *In re Dunmore Homes*—which the Trustee cites for

24  the proposition that Section 157(b)(3) requires the Bankruptcy Court to make these

25  _____

26  [11] *See also* Fed. Rule of Bankr. Proc. 5011(a) ("A motion for withdrawal of a case
    or proceeding shall be heard by a district judge."); *see also id.* Advisory Committee
27  Note ("[5011(a)] makes it clear that the bankruptcy judge will not conduct hearings
    on a withdrawal motion. The withdrawal decision is committed exclusively to the
28  district court.").

CONSOLIDATED REPLY ISO
MOT. TO WITHDRAW REFERENCE

1   determinations in the first instance—recognized exactly the opposite.  2009 US

2   Dist. LEXIS 29083, *13-14 (E.D. Cal. Apr. 1, 2009) (finding that law in the Ninth

3   Circuit, unlike the Third Circuit, does <u>not</u> require that the Bankruptcy Court must

4   make the core/noncore determination before the district court considers a motion to

5   withdraw the reference).[12]  Other decisions in this Circuit are in accord and reject

6   the Trustee's argument.  *See, e.g.*, *In re Don's Making Money, LLP.*, 2007 US Dist.

7   LEXIS 32972, at *4 (D. Ariz. May 1, 2007) (holding that Section 157(b)(3) "does

8   not prohibit the district court from determining whether a proceeding is core or non-

9   core where . . . there has been no prior determination.").  Consistent with the Ninth

10   Circuit's interpretation of the law, numerous courts, including this District Court,

11   have regularly determined whether proceedings are core or non-core in deciding

12   whether to withdraw the reference.[13]

### IV.  THE BANKRUPTCY COURT CANNOT EXERCISE JURISDICTION OVER THE SIDE A ONLY POLICIES OR THE SIDE A COVERAGE ACTION.

15      The parties agree that all the Coverage Actions should be consolidated.

---

[12] In *In re Dunmore Homes* the District Court noted that it is generally preferable for the bankruptcy judge to initially determine whether a claim is properly characterized as core or non-core under Section 157(b)(3).  *See* 2009 US Dist. LEXIS 29083, at *14-15 (citing cases).  However, this statement is dicta because the court concluded that even if the matter was not core, the court should not withdraw the reference.  *Id.* at *15-16.  The other cases the Trustee relies on likewise do not support his erroneous argument as they were not decided in the context of a motion to withdraw the reference.  *See In re Coupon Clearing House*, 113 F. 3d 1091, 1097 (9th Cir. 1997) (noting that bankruptcy court should determine whether case is core when it is otherwise adjudicating an adversary proceeding); *In re Int'l Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994) (same); *Willms v. Sanderson Cmtys., Inc.*, 2009 U.S. Dist. LEXIS 24990, at *5 (E.D. Cal. Mar. 19, 2009) (ruling on motion to refer, not a motion to withdraw the reference).

[13] *See, e.g.*, *Addison v. U.S. Dept. of Educ.*, 240 B.R. at 49 (finding dispute non-core, without any deference to the Bankruptcy Court, and granting defendant's motion to withdraw the reference); *In re Tamalpais Bancorp*, 2011 WL 999225, at *4-5 (N.D. Cal. Mar. 21, 2011) (granting FDIC's motion to withdraw the reference of trustee's action against FDIC because it was a non-core proceeding"); *In re Daewoo Motor America*, 302 B.R. at 310-13 (engaging in an extensive analysis of whether the proceeding was core or non-core, and surveying the law in the Ninth Circuit and contrasting it to the law in other circuits, without suggesting that such matters should have been determined in the first instance by the Bankruptcy Court).

CONSOLIDATED REPLY ISO
MOT. TO WITHDRAW REFERENCE

1    Thus, any court that hears them must be able to exercise jurisdiction over all the

2    parties and cases.[14]  ABC FDIC Mot. at 19:2-20:26.  The Bankruptcy Court,

3    however, cannot do so.  *Id.*  The Side A Only Policies provide coverage solely to

4    the Ds & Os only after the ABC policies have been exhausted and the Estate has

5    failed to indemnify them.  *See* Daniels FDIC Decl. Ex. 2, XL Specialty Policy,

6    § IV(B)(1).  The Side A Only Policies cannot provide a benefit to the Estate.  The

7    Side A Only coverage does not include reimbursing the Estate (if the Estate actually

8    indemnified a Director or Officer) and is available to the Ds & Os only if the Estate

9    does not indemnify them.  In other words, this coverage cannot substitute payment

10   by Side A Carriers for an indemnification claim that otherwise would fall on the

11   Estate.

12         Indeed, Bankruptcy Judge Bluebond apparently recognized that "there is no

13   property of the estate argument" with respect to the Side A Only Policies because

14   "neither the subsidiary nor the Debtor is an insured under this New Side A group of

15   Policies."[15]  *Id.* Ex. 3, Oct. 28 Hrg. Trans. at 55:5-8.  This is consistent with Ninth

16   Circuit law which holds that Side A Only policies are not property of the estate.  *In*

17   *re Pintlar Corp.*, 124 F.3d 1310, 1311 (9th Cir. 1997); *In re Daisy Sys. Sec. Litig.*,

18   132 B.R. 752, 755 (N.D. Cal. 1991).  Indeed, bankruptcy courts regularly hold that

19   they have no jurisdiction over Side A Only disputes.  *See, e.g., Holloway v. Dane*,

20   316 B.R. 876, 882 (S.D. Miss. 2004) (finding no bankruptcy jurisdiction where "the

21   policy at issue provides no direct coverage for the corporation and instead, covers

22

23   [14] The FDIC's argument that all the Coverage Cases should be consolidated in the
     Bankruptcy Court because the Trustee's Coverage Action is purportedly the first-
     filed case is irrelevant. FDIC Op. at 12:5-21.  Any transfer of venue requires that

24   the transferee court be able to properly exercise jurisdiction. *See* 28 U.S.C. §
     1404(a) (transfer only appropriate "to any other district or division where [the

25   action] might have been brought").

26   [15] This is consistent with her decision in *In re TIG Insurance Co*, where she found
     that the prospect that an underlying action might give rise to indemnification claims

27   against the debtor did not provide even "related to" non-core jurisdiction. 264 B.R.
     at 664–65 (C.D. 2001) (remanding a removed action for declaratory relief on

28   insurance policies).

CONSOLIDATED REPLY ISO
MOT. TO WITHDRAW REFERENCE

1    only the former [debtor's] officers and directors").[16]

2         The Oppositions attempt to obscure this point by conflating the Side A Only

3    Policies with the ABC Policies, despite the fact that those policies are very

4    different.  ABC FDIC Mot. at 3:23-4:18.  Those briefs assert that the Side A

5    Coverage Action is within the Bankruptcy Court's "related to" jurisdiction because

6    it seeks determination of issues that are also germane to the other Coverage

7    Actions.  Tr. Op. at 25:21-29:11; FDIC Op. at 9:2-10; ID Op. at 3:16-23.

8    Accepting that argument would mean that most of the Underlying Litigations

9    would also be within the Bankruptcy Court's "related to" jurisdiction since they

10   allege wrongful conduct that could serve as the basis to deny coverage either under

11   the terms of the policy or relevant state law.  *See* Daniels FDIC Decl. Exs. 1-2,

12   Policies (including fraud exclusions); 8 Del. Code § 145(a).  This approach would

13   make a bankruptcy court's jurisdiction boundless.[17]

14   **V.    THE BANKRUPTCY COURT HAS NOT ADDRESSED THE**
15   **COVERAGE ISSUES OR ANY OF THE OTHER UNDERLYING**
     **LITIGATIONS.**

16        The Trustee, FDIC, and Individual Defendants attempt to create an

17   impression that the Bankruptcy Court has dealt extensively with the issues to be

18   decided in the Coverage Actions.  Tr. Op. at 24:22-29:11; FDIC Op. at 9:11-12:26;

19   ID Op. at 2:18-3:23.  Even if true, the supposed involvement of the Bankruptcy

20

21   [16] *See also In re Fleming Packaging Corp.*, 2007 WL 4556981, at *3 (Bankr. C.D.
     Ill. Dec. 20, 2007) ("A bankruptcy court does not have subject matter jurisdiction,
22   even 'related to' jurisdiction, to hear a dispute between a non-debtor third party and
     that party's insurance company."); *In re Spree.com Corp.*, 295 B.R. 762 (Bankr.
23   E.D. Pa. 2003) (finding no "related to" bankruptcy jurisdiction over coverage
     dispute initiated by debtor's director against insurer that had issued directors' and
24   officers' liability policy).

25   [17] Supplemental jurisdiction is not applicable here because the Trustee and the
     FDIC have no protectable interest in, and thus no standing to pursue, the Side A
26   Only Policies and their proceeds.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S.
     332, 351-52 (2006) (holding that supplemental jurisdiction cannot apply to "a claim
27   that does not itself satisfy those elements of the Article III inquiry, such as
     constitutional standing, that 'serv[e] to identify those disputes which are
28   appropriately resolved through the judicial process'" (internal citation omitted)).

CONSOLIDATED REPLY ISO
MOT. TO WITHDRAW REFERENCE

1   Court in the relevant issues would not overcome that court's jurisdictional

2   impediments to deciding the coverage issues.  In actuality, the Bankruptcy Court

3   has not addressed any of the substantive coverage issues raised by the Coverage

4   Actions.

5          The Oppositions make much of the fact that over two years ago the

6   Bankruptcy Court held a brief hearing at which the court expressed some tentative

7   conclusions that relief from the automatic stay was needed for the Ds & Os to be

8   paid costs of defense under the ABC Policies (but not the Side A Only Policies).

9   Those issues were then resolved via mediation and stipulation.  Daniels FDIC Decl.

10  Ex. 5, Stipulation ¶¶ B, E.  The Bankruptcy Court's brush with the Policies in 2008

11  did not involve the determination of any of the coverage issues raised in the instant

12  Coverage Actions.[18]  *Compare* Tr. RJN Ex. E, Nov. 8, 2008 Order *with* Daniels

13  FDIC Decl. Exs. 8, 11-12, Coverage Action Complaints and FDIC Op. 5:19-27.

14  Since then the Bankruptcy Court has been presented with consensual stipulations

15  increasing the dollar amounts available for advancement to the Ds & Os for costs of

16

17  _____

    [18] The ABC Motions are distinguishable from cases like *In re Daewoo Motor Am.,*

18  *Inc.* and the other cases cited in the Oppositions for the proposition that not
    withdrawing the reference promotes efficiency.  302 B.R. 308.  For example, in *In*

19  *re Daewoo*, the bankruptcy court had previously analyzed the main question raised
    by the coverage action, i.e., whether the sale of certain cars was appropriate.  *Id.* at

20  314.  Here, the Bankruptcy Court has not analyzed the policy terms that will be at
    issue in the Coverage Actions or the state law relating to the same.  *See* Tr. RJN

21  Exs. C and D, Motions to Lift the Stay.  Instead, the Bankruptcy Court's analysis
    focused on whether the Policies were property of the Estate.  *Id.* Ex. E, November

22  2008 Order.

23  The mere fact that the Bankruptcy Court has presided over the Bankruptcy Case for
    several years is not sufficient to make it the proper forum to adjudicate a non-core

24  state law proceeding.  Indeed, no party contends that an expertise in bankruptcy law
    is necessary to resolve the Coverage Actions.  This is yet another point that

25  distinguishes this matter from *County Seat*.  In *County Seat*, the main question to be
    resolved was whether an the insured vs. insured exclusion applied and "whether the

26  Trustee is better viewed as representing the Company [an insured] or its creditors in
    the Underlying Action."  *County Seat*, 2002 U.S. Dist. LEXIS 1555, at *16.  No

27  bankruptcy expertise is required to hear the Coverage Actions, a fact which weighs
    in favor of withdrawing the reference.  Where, as here, "non-core issues

28  predominate," judicial efficiency is enhanced by withdrawing the reference.  *Sec.*
    *Farms*, 124 F.3d at 1008.

1    defense and expanding the universe of those to whom advancement could be made.

2    <u>None</u> of these stipulations required argument or a hearing and <u>none</u> of them

3    addressed any substantive insurance coverage issues. *See, e.g.,* Tr. Exs. G-I,

4    Stipulations and Orders (approving same).

5          Additionally, the Trustee's and FDIC's opposition briefs try to leave the

6    impression that the Bankruptcy Court initiated and oversaw the recent mediation

7    before Judge Weinstein. Tr. Op. at 10:1-8; FDIC Op. at 11:5-19. In fact, the

8    mediation was initiated by the parties in mid-2009, almost a year before the

9    Bankruptcy Court issued its August 2010 order regarding the mediation. *See*

10   Declaration of Theodore A. Boundas ¶ 2. That order, of course, could only compel

11   the Trustee, FDIC, and Individual Defendants to attend; however, the mediation

12   involved parties from almost all the Underlying Litigations. *Compare id.* ¶ 3;

13   Declaration of R. Stacy Lane ("Lane Decl.") ¶¶ 2-3 *with* Tr. RJN Ex. K, Aug. 2010

14   Order. Nor was the Bankruptcy Court's order unique. As the Trustee

15   acknowledges, the other Underlying Litigations have generally been stayed during

16   mediation. Tr. Op. at 7:7-9.[19]

17         The Individual Defendants also tout the prominence of the Bankruptcy Court

18   by asserting that the Trustee's Underlying Action is the "main" underlying action.

19   ID Op. at 2:25-3:23. In reality, the Trustee's Underlying Action is merely one of

20   12 Underlying Litigations for which parties seek coverage. It is hardly the "main"

21   action. Similarly, the Trustee and the FDIC assert that the Bankruptcy Court's

22   experience with the Trustee's Underlying Action makes it the proper forum for

23   hearing the Coverage Actions. Tr. Op. at 25:6-26:28; FDIC Op. at 11:5-19. These

24

25   [19] The Trustee's assertion that the mediation failed because of the Insurer's position
     is wholly improper and not germane to whether or not the reference should be
26   withdrawn. Lane Decl. ¶ 4. Without disclosing details of the mediation, which the
     insurers believe would be improper under the mediation's confidentiality
27   restrictions, suffice it to say that the ABC Carriers disagree strongly with the
     Trustee's characterization of events, which was obviously intended to attempt to
28   prejudice them before this Court. *Id.*

CONSOLIDATED REPLY ISO
MOT. TO WITHDRAW REFERENCE

1  assertions are not supported by evidence or argument.  In fact, neither the scope of
2  the policies nor the availability of coverage is at issue in the Trustee's Underlying
3  Action.  *See* Daniels Tr. Decl. Ex. 1 attaching Ex. J, Trustee's Underlying
4  Complaint.  Moreover, when deciding the FDIC's motion to intervene—the only
5  motion to even remotely address the Policies in the Trustee's Underlying Action—
6  Judge Bluebond declined to analyze the Policies and stated flatly that "the terms of
7  the insurance policy . . . has no bearing on this."  ABC Reply RJN Ex. 1, Feb. 2
8  Hrg. Trans. at 4:12-13.[20]

9         Moreover, because Underlying Litigations are pending before different
10  courts, the fact that the Bankruptcy Court will try one of these cases—the Trustee's
11  Underlying Action—is irrelevant.[21]  When there is a multiplicity of underlying
12  actions pending before numerous state and federal courts, it does not make sense
13  for any court hearing just <u>one</u> of the Underlying Litigations to determine whether
14  there is coverage available for all of the other actions.  The Oppositions take
15  umbrage with this argument, but never attempt to explain why it is wrong.  Instead,
16  they incorrectly assume that familiarity with <u>one</u> of the Underlying Litigations
17  situates the Bankruptcy Court to determine separate insurance coverage issues for
18  <u>all 12</u>.  By that logic all the plaintiffs in the Underlying Litigations should be heard
19  on which court decides coverage and no consolidated coverage action would make
20  sense.

21

22  [20] Judge Bluebond also observed that if this tenuous nexus to the possibility of
23  having a judgment satisfied from insurance were sufficient to satisfy jurisdiction,
    each plaintiff in each action against a defendant with insurance could intervene in
    each other's litigations.  ABC Reply RJN Ex. 1 Feb. 2 Hrg. Trans. at 4:13-5:19.
24  Apparently recognizing that coverage concerns are not relevant to the Trustee's
    Underlying Action, the issue which Judge Bluebond and this Court grappled with
25  was whether the Trustee's claims overlapped or usurped the FDIC's claims in its
    capacity as receiver.  ABC Reply RJN Exs. 2 and 3.

26  [21] None of the cases cited in the Oppositions for the proposition that the same court
27  should hear both the underlying action and the coverage action address a situation
    where, as here, there are multiple underlying actions that may be subject to
28  coverage.

CONSOLIDATED REPLY ISO
MOT. TO WITHDRAW REFERENCE

1    Simply put, if handling an Underlying Litigation is the key determinant of

2    what court should also determine coverage, there is no principled basis to select any

3    one of the multiple courts handling these matters.

4  **VI.   DEFERRING WITHDRAWAL OF THE REFERENCE WILL
          CONFUSE JURISDICTIONAL ISSUES, COMPLICATE**
5        **ADJUDICATION OF THE MERITS, AND RESULT IN NEEDLESS**
          ***DE NOVO* REVIEW.**
6

7    The Oppositions also argue that even if this Court finds that withdrawal of

8    the reference is appropriate, it should nonetheless leave the Coverage Actions with

9    the Bankruptcy Court for pretrial proceedings.  Tr. Op. at 33:1-28; FDIC Op. at

10   12:27-15:20; ID Op. at 4:13-5:5.  That would be highly inefficient and wasteful.

11   The parties have all agreed that once it is determined which court will hear

12   these matters, the parties will proceed to cross-motions for summary judgment prior

13   to conducting discovery or other pretrial proceedings.[22]  Any rulings by Judge

14   Bluebond on dispositive motions would be subject to *de novo* review by this Court

15   adding a duplicative level of judicial review.  This is not efficient for the judicial

16   system or the parties.  *See In re Tamalpais Bancorp*, 2011 WL 999225, at *4-5.

17   Judicial review would also be unnecessarily complicated because this Court would

18   either need to hear a series of interlocutory issues up to the eve of trial or defer

19   those issues until trial, with the risk of sending the parties back to the drawing

20   board.  This point was made by this Court in *In re Addison*, where the court

21   observed "if withdrawal is denied [now], this Court may be forced to revisit this

22   very [dispositive] motion in the form of the findings of fact and conclusions of law

23   of the bankruptcy judge . . . [T]he interest of judicial economy dictates . . .

24   permissive withdrawal and adjudicat[ing] this matter now, rather than awaiting the

25   determination of the bankruptcy court."  240 B.R. at 50; *see also, In re Transcon*

26   *Lines*, 121 B.R. 837, 838-39 (C.D. Cal. 1990) ("Although it is conceivably true that

27   _____
     [22] Of course, factual issues may prove relevant and the ABC Carriers reserve their
28   rights with respect thereto.

1    the trustee's action may never come to trial, this Court is of the opinion that proper

2    jurisdiction and administration over this adversary proceeding at this time lies in the

3    District Court and not in the bankruptcy court.").[23]

4         The Opposition's argument that withdrawal of the reference should be

5    deferred to the eve of trial is also inconsistent with the Judicial Code, which

6    provides that a District Court may withdraw the reference only on a "timely motion

7    of any party."  28 U.S.C. § 157(d).  This requirement that a withdrawal motion be

8    <u>timely</u> is designed to ensure that the parties do not wait until the eve of trial to file a

9    motion to withdraw the reference, for such delay would put the District Court in the

10   untenable position (advocated by the opposition parties here) of potentially

11   delaying a case that has been brought to the brink of trial.  Thus, the Ninth Circuit

12   and other courts have interpreted the statute to require a movant to bring a motion

13   to withdraw the reference at a reasonably early stage of an adversary proceeding.

14   *See, e.g., Sec. Farms*, 124 F.3d at 1007 n.3 ("a motion to withdraw is timely 'if it

15   was made as promptly as possible in light of the developments in the bankruptcy

16   proceeding'"); *Addison*, 240 B.R. at 49 n.1 (rejecting trustee's objection to timing

17   of defendant's motion to withdraw the reference, when defendant made the motion

18   "within two months of the filing of Plaintiff's complaint and before any

19   developments occurred in the adverse bankruptcy proceeding.").

20        In addition, if factual issues prevent the Coverage Actions from being

21   resolved by dispositive motion, the parties will be entitled to a jury trial.  *See, e.g.,*

22   *State Farm Mut. Auto. Ins. Co. v. Sup.Ct. (Corrick)*, 47 Cal. 2d 428, 431 (1956)

23   ("[I]f the issues of fact arising would have been triable by a jury as of right in an

24

---

25   [23] Some courts that have accepted the Oppositions' arguments with respect to
     pretrial matters recognize that the reference should be withdrawn when dispositive

26   motions have been filed. *See, e.g., In re Wedtech Corp.*, 94 B.R. 293, 297
     (S.D.N.Y. 1988) (the case will remain with the Bankruptcy Court until "the matter

27   is ready for trial or <u>dispositive motions.</u>").  The parties agree that determination of
     the coverage issues likely will not require discovery and expect that the Coverage

28   Actions can be resolved by dispositive motions.

CONSOLIDATED REPLY ISO
MOT. TO WITHDRAW REFERENCE

action which might have been substituted for the declaratory judgment action by either party, then there is a right to jury trial on such issues."); *Pacific Indemnity Co. v. McDonald,* 107 F.2d 446, 448 (9th Cir. 1939).  Both the FDIC and A Side Carriers made jury demands in their respective Complaints.  The Oppositions assert that the right to a jury trial has been waived in the FDIC Coverage Action.  That is not a correct statement of the law or facts.[24]  But, in any event, it does not matter because a jury demand has been made in the Side A Coverage Action and the time to make a jury demand has not elapsed in the Trustee's Coverage Action.

## VII.   CONCLUSION

Sensible adjudication of these three Coverage Actions demands a consolidated approach.  Leaving all, or any, of the Coverage Actions in Bankruptcy Court invites piecemeal adjudication and inherently would result in an irreconcilable jurisdictional morass.  For these and the other reasons set forth herein and in the motion to withdraw the reference, the ABC Carriers respectfully request that the motions be granted.

---

[24] The Oppositions contend that the jury demand in the FDIC Coverage Action is ineffective since only the jury demand box on the civil coversheet was checked. The cases cited in the Oppositions, which discuss <u>federal</u> requirements, are inapposite.  In removal cases, a jury demand is sufficient if it complies with <u>state law</u> and FDIC's jury demand satisfies California's requirements. *See. e.g.* Fed. R. Civ. Proc. 81(c)(3); *Massok v. Keller Industries, Inc.*, 2005 WL 2108654 (9th Cir. 2005) (holding that the plaintiff "made a valid jury demand when he submitted his "Civil Case Cover Sheet Addendum Certificate of Grounds for Assignment to Court Location.").  The Oppositions also attempt to obscure this issue by contending that the ABC Carriers waived their right to make a jury demand. The argument is based on a misreading of Local Bankruptcy Rule 9027-1(e), which applies to parties who had not yet made a jury demand at the time of removal. Local Bankruptcy Rule 9015-2(b) requires compliance with Federal Rule of Civil Procedure 38(b), which—logically—does not require a jury demand to be made until at least the filing of the answer, which are not yet due. *See* Fed. R. Civ. Proc. 38(b)(2) (requiring a jury demand "no later than 14 days after the last pleading directed to the issue is served").

CONSOLIDATED REPLY ISO
MOT. TO WITHDRAW REFERENCE

1    Dated:  April 25, 2011

2

3                                                    BEN H. LOGAN
                                                     STEPHEN H. WARREN
4                                                    JUSTINE DANIELS
                                                     O'MELVENY & MYERS LLP

5

6                                                    By:  /s/ Ben H. Logan
                                                          Ben H. Logan
7                                                         Attorneys for Those Certain
                                                          Underwriters At Lloyd's, London
8                                                         and Catlin Insurance Company
                                                          (UK) Ltd., Twin City Fire
9                                                         Insurance Company, and
                                                          Continental Casualty Company
10

11   Dated:  April 25, 2011

12

13                                                   BRIAN D. HARRISON
                                                     ROBERT S. GEBHARD
14                                                   VEENA A. MITCHELL
                                                     SEDGWICK LLP

15

16                                                   By:  /s/ Robert S. Gebhard
                                                          Robert S. Gebhard
17                                                        Attorneys for Zurich American
                                                          Insurance Co.
18

19

20

21

22

23

24

25

26

27

28

                                          - 21 -              CONSOLIDATED REPLY ISO
                                                             MOT. TO WITHDRAW REFERENCE